IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|                                          |                              |
|------------------------------------------|------------------------------|
| ROGER L. SCOTT,                          |                              |
|     Plaintiff,       |                              |
| v.                                       | No. 08cv3911                 |
| XEROX CAPITAL SERVICES LLC,              | Judge Coar                   |
|                                          | Magistrate Judge Brown       |
|     Defendant.       |                              |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## I.    PRELIMINARY STATEMENT

Plaintiff is a former employee of Defendant Xerox Capital Services LLC. (Plaintiff's Complaint[1].) On May 20, 2008, Plaintiff filed a pro se Complaint in the Circuit Court of Cook County, alleging that he was harassed, discriminated against, and terminated in retaliation for filing internal complaints all in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA"). The Complaint was served on June 11, 2008, and Defendant removed the case to federal court on July 10, 2008.

Having agreed to submit any such employment-related claims to Xerox Capital Services' dispute resolution process, RESOLVE, Plaintiff cannot pursue his claims in this forum. Thus, Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

---

[1] Plaintiff's Complaint does not enumerate paragraphs.

## II.  **FACTS**

On or about June 2000, General Electric Capital Corporation ("GE") introduced RESOLVE, which was designed by GE to be a comprehensive scheme for resolving employments disputes out of court.  (Feinstein Dec. ¶ 5[2].)  Around November 2001, Xerox Corporation and GE established a joint venture called Xerox Capital Services LLC ("XCS"). (Feinstein Dec. ¶ 3[3].)  XCS adopted RESOLVE after the joint venture.  (Feinstein Dec. ¶ 5.)

For the employees' ease, there is a RESOLVE Handbook, which is a summary of RESOLVE and RESOLVE Guidelines, containing the full details of all RESOLVE provisions. Both are made available to XCS employees electronically via GE's website and in a hard copy form by HR.  (Feinstein Dec. ¶ 7.)

Under RESOLVE, all employees hired on or after June 1, 2000 must submit their employment-related disputes to the RESOLVE process in lieu of filing a lawsuit.  (Feinstein Dec. ¶ 5, Ex. 1 p.17, Ex 6, p. 5.)  RESOLVE is a sequential four-step process, with arbitration as the last step.  (Feinstein Dec. ¶ 5, Ex. 1, p.6, Ex 6, p.3.)  Under the RESOLVE Handbook and Guidelines, covered claims include "[e]mployment discrimination and harassment claims" and "[r]etaliation claims for legally protected activity."  (Feinstein Dec. ¶ 5, Ex. 1, p.22, Ex 6, p.7.)

Plaintiff began his employment at Xerox Corporation in April 1999.  (Feinstein Dec. ¶ 8.) On November 26, 2001, Plaintiff was offered employment with XCS.  (Feinstein Dec. ¶ 9.)  At the time of the offer, Plaintiff was given a copy of the RESOLVE Handbook and was asked to

---

[2]  Since its promulgation in 2000, RESOLVE has been revised two times -- in accordance with § II.D. of the agreement.  (Feinstein Dec. ¶ 12, Ex. 6, p.4.)  Plaintiff was timely notified of the modifications and did not object to them.  (Feinstein Dec. ¶ 16.)  For clarity, references to RESOLVE are to the most recent version (September 2007), which is attached as Exhibit 6 to the Feinstein Declaration.

[3]  The Declaration (with exhibits) of Caryn Feinstein, Human Resources Generalist and RESOLVE Administrator, is attached as Exhibit A.

sign an attached acknowledgment form. (Feinstein Dec. ¶ 10.) He signed the acknowledgment form on December 11, 2001, thereby agreeing to the RESOLVE program terms. (Feinstein Dec. ¶ 11, Ex. 4.) Plaintiff started working for XCS in May 2002 and continued working for the company until October 7, 2007, when he was terminated. (Plaintiff's Complaint.) (Feinstein Dec. ¶ 9.) After his termination, Plaintiff filed this lawsuit in Illinois state court, which XCS removed to this Court.

## III.   STANDARD FOR MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss an action for lack of subject matter jurisdiction. When the parties have an enforceable arbitration agreement, courts treat this as if they are deprived of subject matter jurisdiction during the course of arbitration. *Safranek v. Copart, Inc.*, 379 F. Supp. 2d 927, 928 (N.D. Ill. 2005). Accordingly, when considering a motion under Rule 12(b)(1), the Court must accept as true the facts alleged in the Complaint. *Alicea-Hernandez v. Catholic Bishop of Chicago*, 320 F.3d 698, 701 (7th Cir. 2003) (citation omitted). Nonetheless, the "court may look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* Because this Court lacks subject matter jurisdiction over this Complaint, it is ripe for dismissal.

## IV.   ARGUMENT

### A.   An Enforceable Agreement to Arbitrate Exists Between the Parties

The Federal Arbitration Act requires enforcement of valid, written arbitration agreements. 9 U.S.C. § 2; *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002). Courts look to state contract law to determine if an arbitration agreement is enforceable. *Id.* A valid contract in Illinois requires an offer, an acceptance and consideration. *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 109 (Ill. 2006). Here, all three elements are present.

- 3 -

Plaintiff was "offered" the arbitration agreement when XCS presented it to him. *See Id.* (mailing dispute resolution agreement to plaintiff constituted an "offer"). He accepted the offer when he signed the RESOLVE agreement and continued his employment. *See Id.* (continued employment constituted acceptance of the dispute resolution agreement). Further, Plaintiff's continued employment is consideration for his agreement to submit employment-related disputes to RESOLVE. *See Id.* (continued employment is sufficient consideration for enforcement of dispute resolution agreements).

To be sure, numerous courts have enforced agreements to arbitrate pursuant to RESOLVE. *See, e.g., Washek v. Union Fidelity Life Ins. Co., d/b/a GE Financial Assurance,* Case No. 04C7706, 2005 WL 1563225, at *3-4 (N.D. Ill. June 30, 2005) (attached as Exhibit B); *Santos v. GE Capital,* 397 F. Supp. 2d 350, 354, 356 (D. Conn. 2005). In short, RESOLVE is an enforceable, binding contract under Illinois law.

**B.    Plaintiff's Claims Fall Within the Scope of RESOLVE**

In his Complaint, Plaintiff alleges harassment, retaliation and discrimination in violation of Title VII and the FMLA. RESOLVE includes within its definition of "covered claims," "[e]mployment discrimination and harassment claims" and "[r]etaliation claims for legally protected activity," the very type of claims Plaintiff asserts. Because Plaintiff's claims fall within the scope of RESOLVE and Plaintiff has agreed to be bound by its terms, he has specifically agreed to submit the claims asserted in his Complaint to RESOLVE rather than in litigation.

## III.    CONCLUSION

For all of the foregoing reasons, Defendant XEROX CAPITAL SERVICES LLC respectfully requests this Court to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. Pro. 12(b)(1).

- 4 -

Respectfully submitted,

XEROX CAPITAL SERVICES LLC


By: s/ Timothy J. Tommaso
                One of Its Attorneys

Edward C. Jepson, Jr.
Aaron R. Gelb
Timothy J. Tommaso
Vedder Price P.C.
222 North LaSalle Street
Suite 2600
Chicago, IL  60601-1003
(312) 609-7500

Dated: July 16, 2008

- 5 -

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing *Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss Plaintiff's Complaint* was served on:

>       Roger L. Scott
>       7201 S. Paxton
>       Chicago, IL 60649

by depositing the same in the U.S. Mail, first-class postage prepaid, at 222 North LaSalle Street, Chicago, Illinois 60601-1003 on July 16, 2008.

s/ Timothy J. Tommaso

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROGER L. SCOTT,

          Plaintiff,

v.

XEROX CAPITAL SERVICES LLC,

          Defendant.

No. 08cv3911

Judge Coar
Magistrate Judge Brown

### DECLARATION OF CARYN FEINSTEIN

1.    My name is Caryn Feinstein. I am the Human Resources Generalist and RESOLVE Administrator for Xerox Capital Services, a position I have held since approximately May 2002. Prior to that I was employed by Xerox Corporation since 1980.

2.    I am over 18 years of age and I have personal knowledge of the facts set forth in this Declaration.

3.    In or about November 2001, Xerox Corporation and General Electric Capital Corporation ("GE") established a joint venture called Xerox Capital Services LLC.

4.    Part of my responsibilities as HR Generalist and RESOLVE Administrator is to assist in maintaining the personnel files of each Xerox Capital Services employee.

5.    On or about June 2000, GE introduced a program known as RESOLVE, an employee dispute resolution program ("RESOLVE"). It describes a comprehensive scheme for resolving employment disputes out of court. In or about May 2002, after the joint venture, Xerox Capital Services adopted and implemented the RESOLVE program. A true and correct

Exhibit A

copy of the June 2000 RESOLVE Handbook and Guidelines are attached as Exhibit 1 and 2 respectively.

6.    I am the person responsible at Xerox Capital Services for administering the RESOLVE process.

7.    The RESOLVE Handbook is a summary of the RESOLVE dispute resolution procedure. The RESOLVE Guidelines contain the full details of all provisions of the RESOLVE procedure. Both are made available to Xerox Capital Services employees via GE's website and in hard copy from Human Resources.

8.    In April 1999, Roger L. Scott began his employment at Xerox Corporation.

9.    On November 26, 2001, Mr. Scott was offered employment at Xerox Capital Services. He started working at Xerox Capital Services in May 2002. A true and correct copy of Mr. Scott's offer of employment with Xerox Capital Services, which was maintained in his personnel file in the ordinary course of business, is attached as Exhibit 3.

10.    At the time of his offer with Xerox Capital Services, Mr. Scott was given a copy of the June 2000 RESOLVE Handbook and requested to sign an attached acknowledgment form consenting to the resolution of all employment disputes with Xerox Capital Services in accordance with its terms.

11.    On December 11, 2001, Mr. Scott complied with Xerox Capital Services' request and signed an acknowledgment consenting to the use of RESOLVE. A true and correct copy of Mr. Scott's acknowledgment form, which was maintained in his personnel file in the ordinary course of business, is attached as Exhibit 4.

12.     Since its promulgation in 2000, the RESOLVE Guidelines has been revised twice in accordance with section II.D. of the RESOLVE Guidelines.  The first revision occurred on February 1, 2005.  A true and correct copy of the February 2005 version is attached as Exhibit 5.

13.     The February 2005 revisions were made available to all Xerox Capital Services employees via GE's website and in hard copy from Human Resources.

14.     The second revision to the RESOLVE Guidelines occurred on September 16, 2007.  A true and correct copy of the September 2007 version is attached as Exhibit 6.

15.     Mr. Scott was notified of the September 2007 version via electronic mail in or about August 2007.  The September 2007 revisions were also made available to all Xerox Capital Services employees via GE's website and in hard copy from Human Resources.

16.     Mr. Scott did not submit any objection – written or oral – to any of the RESOLVE revisions.

- 3 -

I declare under penalty of perjury that the foregoing is true and correct.  Executed on July

16, 2008.

Caryn Feinstein



GE Capital

# RESOLVE





Employee Issue
Resolution Program

*RESOLVE Program Handbook for U.S.-Based*
*Employees of GE Capital and its Subsidiaries*

Exhibit 1

## *Important Points About This Handbook*

 This handbook provides a summary of the RESOLVE dispute resolution procedure for employees of GE Capital and its subsidiaries (hereafter, "the Company"). While every attempt has been made to make this handbook as accurate as possible, full details of all provisions of RESOLVE are contained in the RESOLVE Guidelines. The Guidelines are available electronically through the RESOLVE Web Site, from your Human Resources Representative or your RESOLVE Administrator. If a provision described in this handbook differs from the provision of the Guidelines, the Guidelines prevail. Similarly, any oral or written representations by an employee, representative or agent concerning RESOLVE should not be relied on to override, reverse or supplement the provisions of the Guidelines. The Company reserves the right to amend or terminate the RESOLVE procedure. RESOLVE can only be amended or terminated through written communication signed by the Senior Vice President of Human Resources. This handbook does not change the employment-at-will relationship between the Company and its employees.

This RESOLVE procedure is effective June 1, 2000.

# *Contents*

*Understanding the RESOLVE Guidelines* ............................... 4
   Background
   Informal Problem Solving
   Roles in Informal Problem Solving
   The RESOLVE Model

*How the RESOLVE Model Works* ............................... 7
   Level One — Immediate Manager ............................... 7
   Roles at Level One
   Submitting a Concern
   The Meeting
   The Result
   Level Two — Higher-Level Manager ............................... 9
   Roles at Level Two
   Submitting a Concern
   The Meeting
   The Result
   Level Three — Mediation ............................... 10
   Roles at Level Three
   Requesting Mediation
   Time Limits
   The Meeting
   The Result
   Costs and Fees
   Level Four — Arbitration ............................... 13
   Roles at Level Four
   Requesting Arbitration
   The Meeting
   The Result
   Costs and Fees
   Employees Covered by RESOLVE ............................... 16
   Benefits of RESOLVE ............................... 16
   Where to Go for More Information ............................... 16

*Answers to Common Questions About RESOLVE* ..................... 17

*Glossary of Terms* ............................... 21

# *Understanding the RESOLVE Guidelines*



### Background

Companies across the United States have found that when problems go unresolved they negatively impact day-to-day operations and can result in lawsuits, which are time-consuming and costly for both employees and companies. In recent years, employees have looked to courts to settle certain unresolved work-related conflicts. However, employees involved in lawsuits are often disappointed in the result. It takes years to bring a case to trial. Careers are disrupted, the process generates stress and worry, and once the case is resolved, employees often find a large part of what they recover, if anything, goes to their lawyer.

And the results are no better for the companies involved. In addition to the cost of litigation, businesses expend tremendous financial and human resources to solve problems that usually involve only a few employees. These are resources that could be used for future investment in the company's business.

One alternative that many companies and GE businesses are turning to is a dispute resolution program that focuses on settling conflicts internally and, if necessary, with the assistance of external dispute resolution experts. The companies that have adopted dispute resolution programs have found that they are very effective in resolving workplace disputes quickly, privately and with less cost to employees and companies.

4

Based on the feedback from the employees and the best practices from other companies, the RESOLVE Guidelines were developed. This RESOLVE procedure is effective June 1, 2000.

*Dispute resolution programs are very effective in resolving workplace disputes quickly, privately and with less cost to employees and companies.*

### Informal Problem Solving

Almost everyone has encountered a problem or concern at work. In the large majority of cases, the concern can be quickly cleared up by talking with a manager or the co-worker(s) who are directly involved. Working out problems when they are small and with those who are directly involved usually prevents the misunderstandings that occur when communication breaks down. However, if a concern is not addressed early, it can grow out of proportion, and a small concern can become a major problem.

The Company offers several resources to help employees solve work-related problems or issues. Employees are encouraged to discuss any workplace concern directly with their manager and involve others in the management chain, their human resources representative or ombudsperson, as necessary. These informal resources focus on helping employees solve problems quickly and successfully and on preventing a small problem from developing into a major issue.

Informal problem solving may be used at any time and for any type of work-related concern. Fundamentally, the best place for an employee to resolve an issue is one-on-one with his or her manager.

However, in the event that an employee is not able to address his or her concern using informal methods, RESOLVE provides a four-level procedure for quickly settling disputes that arise from an individual's employment. Nevertheless, RESOLVE is a supplement to current informal channels of addressing concerns and not a substitute for them.

### Roles in Informal Problem Solving

| Manager | Human Resources Representative | Other Higher-Level Managers | Ombudsperson |
|---|---|---|---|
| Listens to an employee's concern, investigates it and provides the employee with a response. | Listens to an employee's concern, ensures investigation is prompt and complete and facilitates resolution. | Available to help resolve a concern if it cannot be resolved directly between the employee and manager/human resources representative. | Acts as an independent resource for reporting integrity concerns and assisting with integrity related questions. |

*RESOLVE is a supplement to current informal channels of addressing concerns, and not a substitute for them.*

### The RESOLVE Model

For concerns that are not resolved through Informal Problem Solving, RESOLVE offers a more structured internal review with up to four levels. When the situation involves certain legally protected rights known as *covered claims* and is not settled at Levels One or Two, RESOLVE provides for *mediation* (Level Three) and, if necessary, *arbitration* (Level Four) through the nonprofit organization, the *American Arbitration Association* or other mutually agreed upon professional ADR organization.

# How the RESOLVE Model Works

## 1 Level One — Immediate Manager

Occasionally, a concern cannot be settled through informal means. In an effort to resolve the concern, an employee may choose to submit it to RESOLVE and have the concern formally addressed. To activate the process, the employee submits his or her concern in writing to the RESOLVE Administrator with copies to his or her manager and/or a human resources representative. In some cases, by mutual agreement, Level One may be waived.

### Roles at Level One

| Employee | Manager | Human Resources Representative* | Resolve Administrator |
|---|---|---|---|
| Completes RESOLVE form, explaining concern and describing what he or she believes should be done to address concern. Participates in dialogue in effort to reach resolution. | Reviews form, meets to listen to employee's concern, investigates it and provides employee with a written response. | Listens to employee's concern, ensures investigation is prompt and complete and facilitates resolution.<br><br>*Participates at the request of employee or manager.* | Handles the logistics of RESOLVE and logs the concern as part of the RESOLVE procedure. |

### Submitting a Concern

The employee submits the concern on a RESOLVE Submission Form, which may be obtained from the RESOLVE Administrator, the RESOLVE Home Page or a human resources representative. The employee provides a detailed explanation of his or her concern(s), individuals involved and what he or she believes is necessary to resolve the concern(s).

### The Meeting

Within 14 calendar days *(if the last day of a time limitation is a weekend or holiday, the deadline extends to the next business day)* of receiving the written concern, the employee's immediate manager has a meeting with the employee to formally discuss and seek a solution to the concern. At the request of either the employee or manager, a human resources representative may participate in the Level One meeting. In this meeting, the employee and his or her manager discuss the concern, exchange information and actively attempt to settle the concern to the satisfaction of both the employee and his or her manager.

### The Result

Within 14 calendar days of the Level One meeting, the manager provides the employee with a written response to his or her concern.

# 2   Level Two — Higher-Level Management

If the concern is not settled to the employee's satisfaction at Level One, the employee may choose to meet with a higher-level functional manager and human resources representative to discuss the problem.

### Roles at Level Two

| Employee | Higher-Level Manager | Human Resources Representative* | Management Representative |
|---|---|---|---|
| Completes RESOLVE form, explaining concern and what he or she believes should be done to address it. Explains why he or she disagrees with the Company's Level One response. Participates in dialogue in effort to reach resolution. | Reviews form, meets to listen to employee's concern, investigates it, or revisits the investigation and provides employee with a written response. | Listens to employee's concern, revisits investigation and facilitates resolution.<br><br>* Participates at the request of employee or manager | May be involved, depending on the nature of the concern. |

### Submitting a Concern

In order to proceed to Level Two of RESOLVE, the employee again submits the concern on a RESOLVE Submission Form to the RESOLVE Administrator within 7 calendar days of receiving the manager's written response at Level One. The request should provide any additional information regarding his or her concern(s) including information that conflicts with the manager's stated reason for not settling the employee's concern at Level One.

### The Meeting

Within 14 calendar days *(if the last day of a time limitation is a weekend or holiday, the deadline extends to the next business day)* of the RESOLVE Administrator's receipt of the written concern, a meeting is held by the higher-level functional manager (or designee), employee, and, if requested, human resources

representative, to formally discuss and seek a solution to the problem. At the Level Two meeting, the employee, his or her higher-level functional manager and human resources representative discuss the concern, exchange information and actively attempt to settle the concern to the satisfaction of both the employee and the Company.

**The Result**

Within 14 calendar days of the Level Two meeting, the higher-level manager will provide the employee with a written response to the concern.

If the concern remains unresolved and it is a covered claim, the employee may proceed to mediation. For *excluded claims* involving concerns not covered by law or certain other types of claims, RESOLVE ends at Level Two.

# 3 Level Three — Mediation

Mediation is one of the most straightforward and effective ways of settling disputes. It is a meeting in which a *mediator* helps the employee and the Company reach a mutually acceptable agreement, based on the needs and interests of both parties. Mediation allows the employee and the Company to tell their side of the story. It promotes creative discussions and offers the opportunity to create win/win solutions.

The mediator acts as a neutral facilitator and is not empowered to render a decision. He or she may offer suggestions, but the employee and the Company are responsible for settling the dispute to their mutual satisfaction.

*Mediation is one of the most straightforward and effective ways of settling disputes.*

10

### Roles at Level Three

| Employee* | Management* | RESOLVE Administrator | Mediator |
|---|---|---|---|
| Completes RESOLVE form, explaining concern and why he or she disagrees with Company's previous responses. Participates in dialogue to reach resolution. | Reviews form and previous results. Meets to listen to employee's claim. Represents Company during mediation and participates in dialogue to reach resolution. Provides written response. | Handles all logistics associated with the mediation. | Facilitates the meeting to help both parties reach agreement. He or she is a neutral third party, provided by the American Arbitration Association or other mutually agreed upon professional ADR organization. |

*May choose to be represented by legal counsel at mediation.

### Requesting Mediation

The employee may request mediation if the concern involves certain legally protected rights known as covered claims. Examples include claims of employment discrimination or harassment based on age, race, sex, and religion, national origin or other characteristics protected by law. (For a complete listing of covered claims, refer to the glossary or the RESOLVE Guidelines).

To request mediation, the employee must submit his or her covered claim on the RESOLVE Level Three Submission Form to the RESOLVE Administrator within 7 calendar days of receiving the Company's written response at Level Two. The employee and the Company are both involved in the selection of a mediator.

### Time Limits

In order for a concern to proceed to Level Three of the process, the concern must be a covered claim and must have been submitted to Level One before the *statute of limitations* (the legally determined time limit) for that claim had expired.

Employees shall be solely responsible for determining the correct statutes of limitations and/or administrative agency deadlines and

for filing claims in the appropriate jurisdictions. However, if an employee has not completed all four levels of RESOLVE, the Company may ask the agency or court to defer processing until all four levels are completed.

### The Meeting

Within 14 calendar days of receiving the employee's written request for mediation, the RESOLVE Administrator will determine if the claim is a covered claim.

Once the employee and the Company have agreed on a mediator, a meeting will take place within 30 calendar days of his or her appointment. The employee, the Company representative and, if they choose, their attorneys will present their respective side of the issue, calling witnesses and experts to support their position and questioning the other party's witnesses. The mediator will make suggestions to help both parties agree to a solution that satisfies them both.

### The Result

If agreement is reached during mediation, both parties will sign a settlement agreement. If no agreement is reached, the Company will provide a written response to the employee within 7 calendar days of the mediation meeting.

Employees with a continuous service date prior to June 1, 2000, have a choice as to how they wish to proceed if mediation fails to settle their dispute. They can elect to submit their claim/concern to binding arbitration — Level Four of RESOLVE. If so, the arbitrator's award will be final and binding. Alternatively, current employees can elect to take their concern/claim to court.

Employees with a continuous service date of June 1, 2000 or after are required to submit all covered claims to binding arbitration — to the extent permitted by applicable law. The arbitrator's award will be final and binding.

Arbitration is also mandatory for employees transferring to the Company who (a) have a date of hire with any GE business on or after June 1, 2000, or (b) have an earlier service date, but are already covered by an existing agreement to accept arbitration. Other transferring employees have the same option that current employees have — either to arbitrate or use litigation.

### Cost and Fees

The Company will pay for all administrative fees associated with mediation. The employee and the Company will pay their own experts' and/or attorneys fees. However, if the dispute is settled during mediation, the Company will reimburse the employee up to $2,500 for experts' and/or attorneys' fees incurred for mediation.

 **Level Four — Arbitration**

Arbitration is a dispute resolution process in which the employee and the Company present their positions concerning the employee's covered claim(s) to an *arbitrator* who determines the merits of the claim(s).

### Roles at Level Four

| Employee* | Company Representatives† | RESOLVE Administrator | Arbitrator |
|---|---|---|---|
| Completes the RESOLVE form. Presents the case to the arbitrator. The employee's attorney may make this presentation on his or her behalf. | Present the Company's case to arbitrator. Legal counsel leads the presentation if the company has chosen to be represented by legal counsel. | Handles all logistics associated with the arbitration. | Presides over the arbitration hearing, considers all evidence presented and renders decision. He or she is a neutral third party, provided by the American Arbitration Association or other mutually agreed upon professional ADR organization. |
| *May choose to be represented by legal counsel at mediation. | | | |

### Requesting Arbitration

In order to request arbitration, an employee must submit his or her covered claim on the RESOLVE Submission Form to the RESOLVE Administrator within 7 calendar days of receiving the Company's written response at Level Three. The formal request for arbitration that follows includes information about the covered claim, the amount of damages claimed, if any, and the remedy sought. The employee and the Company are both involved in the selection of an arbitrator.

### The Meeting

Unless otherwise agreed to by both parties, the arbitrator will schedule the *arbitration hearing* within 45 days of his or her appointment.

An arbitration hearing resembles a court proceeding in certain ways. Both parties have the opportunity to be represented by an attorney, to make opening statements, to present testimony and introduce exhibits through witnesses, to cross-examine the other party's witnesses and to make closing statements.

### The Result

Arbitration differs from mediation in that the arbitrator decides the merits of the employee's claim(s) and renders a written opinion, usually within 30 calendar days of the hearing. The opinion contains the arbitrator's decision in connection with each claim and describes the remedy, if any, to be awarded to the employee.

The arbitrator's decision is final and binding on the employee and the Company. It is based on the arbitrator's interpretation and application of the applicable law(s). The arbitrator may grant any monetary award that would have been available if the claim had been asserted in a court.

This is the final level of the RESOLVE procedure. No further recourse to the courts is available.

### Costs and Fees

Except for a $50 initiation fee that must be paid by the employee, the Company will pay for all administrative fees associated with arbitration. The employee and the Company will pay their own experts' and/or attorneys' fees. If the arbitrator decides in favor of the employee, the arbitrator may require the Company to pay the employee's attorneys' fees and costs, if applicable law permits.

15

### Employees Covered by RESOLVE

RESOLVE covers all employees of GE Capital and its subsidiaries who are not represented by a union and are assigned to U.S.-based offices.

### Special Note: Registered Employees

For regulatory reasons, registered employees have different options available to them for resolving claims past the mediation stage. Registered employees are bound by the rules of the NASD, as described in the U-4 agreement. This agreement states that all claims must be brought to mandatory arbitration before the NASD. However, as of January 1, 1999, registered employees are not required to take discrimination or harassment claims to mandatory binding NASD arbitration — therefore, these claims should be handled through RESOLVE.

### Benefits of RESOLVE

- Allows for greater opportunity to bring together individuals closest to the issue to quickly resolve disputes
- Provides a forum to formally raise concerns and disputes that an employee is unable to resolve through informal channels
- Settles disputes quickly and helps avoid years of costly, frustrating and often disappointing court battles
- Facilitates private resolution of issues
- Provides (if appropriate) an experienced neutral third party to help settle a dispute
- Allows the employee to receive any monetary award he or she might otherwise be awarded through a court of law

### Where to Go for More Information

For answers to other questions regarding RESOLVE, contact your human resources representative or RESOLVE Administrator.

The RESOLVE Home Page can be found on the Employee Services Web Site which is currently located at:

http://web.capital.ge.com/hrweb/es/resolve/

# Answers to Common Questions About RESOLVE

**Q. Should an employee use RESOLVE to solve any problem that happens at work?**

A. No. The majority of work-related concerns should be settled in the normal course of the workday, through one-on-one discussion. As always, employees should meet with their manager and/or human resources representative to discuss any problem they may have at work. In the small percentage of instances when an employee is not able to settle the problem through informal channels, he or she may submit the concern in writing and begin the RESOLVE procedure.

**Q. Does RESOLVE require that an employee go through each level completely before proceeding to the next one?**

A. Yes. RESOLVE is arranged in a logical sequence, and an employee must complete each level, in order, before proceeding to the next. In some cases, by mutual agreement of the employee and the Company, Level One may be waived.

**Q. Does RESOLVE take away an employee's right to take his or her dispute to a court of law?**

A. If an employee has completed the first three levels of RESOLVE and was hired into GE Capital before June 1, 2000, he or she may still file a lawsuit. An employee transferring into GE Capital from another GE business or component may also file a lawsuit if he or she has a Company continuity of service date earlier than June 1, 2000, and is not covered by an existing agreement requiring arbitration. However, it is hoped that all disputes handled through RESOLVE will be settled at the third or fourth level of the procedure.

For other transferring employees, and for employees hired on or after June 1, 2000, arbitration is mandatory. In all instances, arbitration is final and binding on both the employee and the Company. The arbitration process at Level Four of RESOLVE is in lieu of litigating the matter in court.

17

All employees should review the details of the procedure as described in the RESOLVE Procedure Guidelines for GE Capital Employees.

**Q. How can the employee be sure that the mediator and arbitrator are neutral and will be fair?**

A. Mediators and arbitrators are provided by a mutually agreed upon professional Alternative Dispute Resolution (ADR) organization. Professional ADR organizations offer dispute resolution services to private individuals, businesses, associations and all levels of government.

When the employee requests mediation or arbitration, the ADR organization will provide a list of professional mediators or arbitrators who work in the local area. A profile of each mediator or arbitrator will be provided for the employee's and the Company's consideration. Both the employee and the Company will be involved in the selection of the mediator and/or arbitrator.

**Q. What happens if an employee files a lawsuit against the Company for a legally protected right?**

A. If a new employee hired on or after June 1, 2000, files a lawsuit before completing all four levels of RESOLVE, the Company will ask the court to dismiss the case and refer it to RESOLVE. The Company will make the same request in lawsuits filed by employees who transfer to GE Capital and are either covered by existing agreements to arbitrate, or have continuity of service dates on or after June 1, 2000.

If a current employee (hired prior to June 1, 2000) files a lawsuit prior to completing the first three levels of RESOLVE (through mediation), the Company will ask the court to defer or dismiss the case. After completing mediation, if the concern of a current employee remains unresolved, the employee may file a lawsuit, provided he or she has not previously elected to take the dispute to binding arbitration.

**Q.  Does RESOLVE prevent an employee from going to the Equal Employment Opportunity Commission (EEOC)?**

A.  No. RESOLVE does not prevent employees from seeking the assistance of any government agency, including but not limited to the EEOC, or state equal employment opportunity agencies. However, if an employee has not completed all four levels of RESOLVE, the Company may ask the agency to defer processing any charge until all four levels are completed.

Employees shall be solely responsible for determining the correct statutes of limitations and/or administrative agency deadlines and for filing claims in the appropriate jurisdictions.

**Q.  What happens if an employee is terminated or laid off? Does RESOLVE still apply to that person?**

A.  If an employee is terminated or laid off from GE Capital after June 1, 2000, he or she will be required to submit all covered claims that person may have against the Company through RESOLVE, which will apply based on the employee's hire date.

**Q.  What role does an attorney play in RESOLVE?**

A.  An employee may consult with an attorney at any point during RESOLVE. However, an attorney may participate in RESOLVE only during Levels Three and Four, mediation and arbitration. The Company will not reimburse employees for attorneys' fees at Levels One and Two, and outside attorneys may not participate in meetings at these levels. The Company will reimburse the employee up to $2,500 for attorneys' fees incurred for mediation, provided that a complete settlement of all claims is reached at mediation. If the claim goes to arbitration and the arbitrator decides in the employee's favor, the arbitrator may include the employee's attorney fees in the award, if permitted by law.

**Q.  Who covers the costs of mediation and arbitration?**

A.  Except for a $50 initiation fee payable by the employee at Level Four (Arbitration), the Company will cover administrative costs associated with mediation and arbitration. The Company pays the fees directly to the ADR organization, which then pays the mediator or arbitrator.

Q. *What are the roles of the Ombudsperson and the RESOLVE Administrator?*

A. The Ombudsperson acts as an independent resource for receiving reports of integrity concerns and assisting with integrity related questions.

The RESOLVE Administrator handles the administration of RESOLVE and will help the employee request and schedule mediation and/or arbitration hearing.

Q. *How does RESOLVE affect the other appeals procedures that are currently in place?*

A. RESOLVE supplements current internal appeals procedures.

Q. *What is the difference between mediation and arbitration?*

A. Both mediators and arbitrators are neutral third parties provided by the American Arbitration Association or mutually agreed upon professional ADR organization. The mediator's job is to open up the lines of communication between the employee and the Company and help them to reach a mutually acceptable agreement. A mediator does not make a decision; he or she facilitates discussions and helps the parties reach a decision together.

An arbitrator's job is to listen to the arguments presented by the employee and the Company in the dispute, reach a decision and provide it to the employee and Company as the resolution. An arbitrator can make the same type of monetary awards that are given in a court of law.

## Glossary of Terms

**Alternative Dispute Resolution (ADR):** A term referring to procedures for settling disputes by means other than litigation. Such procedures, which are usually less costly and more expeditious, are increasingly being used in labor disputes as well as other disputes that would likely otherwise involve court litigation.

**American Arbitration Association (AAA):** A non-profit organization that offers a wide range of dispute resolution services to private individuals, businesses, associations and all levels of government. It handles approximately 60,000 cases each year and has access to more than 5,000 neutral experts.

**Arbitration:** A dispute resolution process in which the employee and the employer present their respective positions concerning the employee's claim to an impartial third-party arbitrator who makes a decision regarding the claim. Arbitration is different from mediation in that the arbitrator decides the merits of the employee's claim.

**Arbitration Hearing:** A formal hearing that resembles a court proceeding. Both the employee and the employer have the opportunity to be represented by an attorney, to make opening statements, to present testimony and introduce exhibits through witnesses, to cross-examine the other party's witnesses and to make closing statements.

**Arbitrator:** A neutral third party provided by a mutually agreed upon, professional ADR organization to preside over the arbitration. The arbitrator is a licensed attorney or former judge with a minimum of five years of experience in the practice of employment law or in the arbitration of employment law claims. The arbitrator interprets and applies federal and/or state laws and may grant any monetary remedy or relief that would have been available in a court of law.

**Continuity of Service Date:** As applied to these Guidelines, generally refers to the date an employee begins working for the Company. It would not include any period of time awarded to employees of an acquired company where pre-acquisition service had been awarded for Continuity of Service purposes under various benefit plans.

***Covered Claims:*** Employment-related claims against the Company or individual managers acting within the scope of their GE employment that a court in the local jurisdiction (location) would have the authority to decide under applicable municipal, state or federal statue, regulation or law. Covered claims include personal employment concerns such as:

- Claims relating to compensation, leaves of absence, and layoffs and/or plant closings;
- Claims relating to involuntary terminations, such as layoffs and discharges (including constructive discharges);
- Employment discrimination and harassment claims, based on, for example, age, race, sex, religion, national origin, veteran status, citizenship, handicap/disability, or other characteristic protected by law;
- Retaliation claims for legally protected activity, and/or for whistleblowing;
- Claims of breach of contract or covenant (express or implied) and/or promissory estoppel;
- Tort claims (such as intentional torts, negligence, defamation, invasion of privacy, infliction of emotional distress, etc.);
- Claims of violation of public policy;
- Claims of violation of this procedure, except for violation of the confidentiality requirements of this procedure; and/or
- Claims that the Company, at its sole discretion, determines are covered claims.

***Excluded Claims:*** Claims that are not covered by RESOLVE, including:

- Concerns that do not involve legally protected rights;
- Most 20.10 (Working with Government Agencies) allegations, as these are more appropriately handled through the Office of the Ombudsperson;
- Claims for benefits under a Company benefit plan covered by the Employment Retirement Income Security Act of 1974 (ERISA) or any other claim covered by ERISA;
- Any claim for workers' compensation or unemployment compensation benefits;

- Any claim related to GE's "Employee Innovation and Proprietary Information Agreement" and alleged breach of an employee's non-competition, non-solicitation, fiduciary or confidentiality obligations;
- Any patent, trademark or intellectual property claim or dispute;
- Any claim under the National Labor Relations Act;
- Any claim that seeks to establish or modify a business policy, procedure or rule; and/or
- Any personal claims against a GE Company manager that do not involve conduct within the scope of employment of the manager.

**Covered Employees:** All employees of GE Capital and its subsidiaries who are not represented by a union and are assigned to U.S.-based GE Capital offices.

**Mediation:** A problem-solving and dispute-resolution process in which the employee and the employer discuss the dispute with an impartial third party who assists them in reaching a settlement. Mediation is a process that seeks to find common ground for the voluntary settlement of disputes.

**Mediator:** A neutral third-party facilitator who helps the employee and the employer settle their dispute by giving both parties the opportunity to explain the dispute, including the reasons that support their position, and to work together to reach a settlement. The mediator is a licensed attorney or former judge with a minimum of five years of experience in the practice of employment law or in the mediation of employment law claims. The mediator's role is advisory. He or she may offer suggestions, but resolution of the dispute rests with the employee and the employer.

**RESOLVE Administrator:** Handles the administration of RESOLVE. The RESOLVE Administrator answers question about the procedure, facilitates the selection and scheduling of mediators and arbitrators and maintains records of all disputes. Employees should direct to the RESOLVE Administrator requests for information, all requests for reimbursable attorneys' fees and all written documents and notices required by RESOLVE.

**Statute of Limitations:** A time limit determined by law for submitting a claim to a court of law or administrative agency. The statue of limitations varies by the nature of the claim and is determined by the applicable state and/or federal law.

# RESOLVE

## Guidelines for U.S.-Based Employees of

## GE Capital And Its Subsidiaries

**Issue Date:**      June 1, 2000

**Issued By:**       Marc J. Saperstein – Senior Vice President Human Resources

**Revision Date:**   June 1, 2000

1

Exhibit 2

## SPECIAL NOTICE TO ALL COVERED EMPLOYEES
## OF GE CAPITAL AND ITS SUBSIDIARIES

THIS PROCEDURE IS A WRITTEN AGREEMENT FOR THE RESOLUTION OF EMPLOYMENT DISPUTES, PURSUANT TO THE FEDERAL ARBITRATION ACT, 9 U.S.C.A. SECTIONS 1-14.

### CURRENT EMPLOYEES OF GE CAPITAL AND ITS SUBSIDIARIES

BY CONTINUING EMPLOYMENT WITH GE CAPITAL OR ONE OF ITS SUBSIDIARY COMPANIES, ("THE COMPANY"), INCLUDING ALL FUNCTIONS, OPERATIONS AND BUSINESSES ON OR AFTER THE EFFECTIVE DATE OF THIS PROCEDURE, ALL COVERED EMPLOYEES ASSIGNED TO THE COMPANY AT A U.S.BASED OFFICE, WHOSE CONTINUITY OF SERVICE DATE WAS BEFORE THE EFFECTIVE DATE OF THIS PROCEDURE (6/1/2000), AGREE AS A CONDITION OF EMPLOYMENT TO ATTEMPT TO RESOLVE THEIR DISPUTES USING THE FIRST THREE LEVELS (THROUGH MEDIATION) OF THE COMPANY'S RESOLVE PROCEDURE. IF THE DISPUTE REMAINS UNRESOLVED FOLLOWING MEDIATION, THE EMPLOYEE WILL HAVE THE OPTION OF PURSUING HIS OR HER CLAIM THROUGH BINDING ARBITRATION OR PURSUING THE MATTER IN COURT.

### NEW EMPLOYEES OF GE CAPITAL AND ITS SUBSIDIARIES

BY ACCEPTING AN OFFER OF EMPLOYMENT ON OR AFTER THE EFFECTIVE DATE OF THIS PROCEDURE (6/1/2000) ALL COVERED EMPLOYEES ASSIGNED TO THE COMPANY AT A U.S. BASED OFFICE, AGREE, AS A CONDITION OF EMPLOYMENT, TO WAIVE THE RIGHT TO PURSUE COVERED CLAIMS IN COURT AND TO ACCEPT AN ARBITRATOR'S AWARD AS THE FINAL, BINDING, AND EXCLUSIVE DETERMINATION OF ALL COVERED CLAIMS.

### EMPLOYEES TRANSFERRING TO GE CAPITAL OR ITS SUBSIDIARIES

A. BY TRANSFERRING TO A U.S. BASED OFFICE OF GE CAPITAL OR ONE OF ITS SUBSIDIARIES AFTER THE EFFECTIVE DATE (6/1/2000), THE FOLLOWING TWO CATEGORIES OF COVERED EMPLOYEES AGREE, AS A CONDITION OF EMPLOYMENT, TO WAIVE THE RIGHT TO PURSUE COVERED CLAIMS IN COURT AND TO ACCEPT AN ARBITRATOR'S AWARD AS THE FINAL, BINDING, AND EXCLUSIVE DETERMINATION OF ALL COVERED CLAIMS.  THE TWO CATEGORIES ARE:

    1. ANY EMPLOYEE WHOSE DATE OF HIRE (CONTINUITY OF SERVICE DATE) WITH ANY GE BUSINESS OR COMPONENT OR SUBSIDIARY IS ON OR AFTER THE EFFECTIVE DATE (6/1/2000); AND

2. ANY  EMPLOYEE, REGARDLESS OF DATE OF HIRE, WHO IS COVERED BY AN EXISTING AGREEMENT TO ACCEPT AN ARBITRATOR'S AWARD AS THE FINAL, BINDING AND EXCLUSIVE DETERMINATION OF ALL COVERED CLAIMS, AND TO WAIVE THE RIGHT TO PURSUE COVERED CLAIMS IN COURT.

B. BY TRANSFERRING TO A U.S.-BASED OFFICE OF GE CAPITAL OR ONE OF ITS SUBSIDIARIES AFTER THE EFFECTIVE DATE (6/1/2000), EVERY EMPLOYEE WHO HAS A DATE OF HIRE BEFORE THE EFFECTIVE DATE AND WHO IS NOT COVERED BY AN AGREEMENT TO ACCEPT ARBITRATION AND WAIVE LITIGATION AGREES, AS A CONDITION OF EMPLOYMENT, TO ATTEMPT TO RESOLVE HIS OR HER DISPUTES USING THE FIRST THREE LEVELS (THROUGH MEDIATION) OF THE COMPANY'S RESOLVE PROCEDURE.  IF THE DISPUTE REMAINS UNRESOLVED FOLLOWING MEDIATION, THE EMPLOYEE WILL HAVE THE OPTION OF PURSUING HIS OR HER CLAIM THROUGH BINDING ARBITRATION OR PURSUING THE MATTER IN COURT.

THIS PROCEDURE IS THE SOLE AND COMPLETE AGREEMENT BETWEEN THE COMPANY AND COVERED COMPANY EMPLOYEES IN U.S. BASED OFFICES FOR THE RESOLUTION OF EMPLOYEE DISPUTES.  THIS PROCEDURE, HOWEVER, DOES NOT CHANGE THE EMPLOYMENT-AT-WILL RELATIONSHIP BETWEEN THE COMPANY AND ITS EMPLOYEES.  THE COMPANY RESERVES THE RIGHT TO AMEND OR TERMINATE THIS PROCEDURE.

## I. PURPOSE

The dispute resolution procedure ("RESOLVE") provides the Company and its non-represented Company employees based in the U.S. a process to resolve concerns/claims arising out of their employment.

## II. GENERAL

### A. Summary of the RESOLVE Procedure

Employees are encouraged to resolve disputes informally, either through discussions with their immediate manager, others in the management chain, a human resources (HR) representative or an ombudsperson. However, occasionally informal efforts do not resolve an employee's concern/claim, and in such cases an employee may submit his or her concern/claim to RESOLVE.

RESOLVE is a structured dispute resolution procedure that consists of two internal levels of review followed, if the concern is a covered claim (see II.L.), by outside mediation (Level Three) and if necessary, arbitration (Level Four). The levels of RESOLVE are in a logical sequence and employees must complete each level of

the process before proceeding to the next level. However, if the Company agrees, the employee may submit his or her concern/claim initially to RESOLVE at Level Two and skip Level One.

At internal Levels One and Two, an employee and the company representative meet in an attempt to resolve the employee's concern/claim. If an employee is not satisfied with the outcome of Levels One and Two, and the concern is a covered claim (see II.L.), the employee may submit the claim to Level Three. At Level Three an outside mediator helps the employee and the Company open lines of communication in an attempt to facilitate resolution. If an employee and the Company do not reach resolution at Level Three, then:

- Current Company employees (who began their employment with a GE company (Continuity of Service Date) prior to June 1, 2000) have a choice. They may either submit the matter to binding arbitration or pursue the matter in court.

- Company employees who began their employment with one of the GE Capital companies on or after June 1, 2000 must submit their claims to binding arbitration.

- GE Employees who transfer into a GE Capital company after June 1, 2000 and who (i) have a GE continuity of service date on or after June 1, 2000 or (ii) who have agreed to binding arbitration under the "RESOLVE" or similar program of another GE business or component, must also submit their claims to binding arbitration.

- Other transferring Employees have the same choice as current Company employees.

At Level Four an outside arbitrator provides the employee and the Company with a ruling on the merits of the employee's covered claim(s). Both mediation and arbitration will be administered by the mutually agreed upon professional ADR organization.

## B. RESOLVE'S Relationship to Other Appeal Procedures

Employees are encouraged to use informal means of resolving an issue before formally submitting their concerns/claims to RESOLVE. In addition to casual day-to-day discussions between employees and their managers, Company employees may contact the Ombuds office. RESOLVE is not intended to substitute for reporting compliance concerns (as contrasted with personal claims or issues) to the Ombuds office.

If an employee does not resolve his or her concerns/claims with the Company by using these informal procedures, or if the employee elects not to use these other procedures, the employee may formally submit his or her concerns/claims to RESOLVE. However, an employee may not use these other procedures for the same claim after submitting his or her concerns/claims to RESOLVE.

## C. Covered Employees.

All U.S. based Company employees not represented by a union.

Special Note: Registered Employees
For regulatory reasons, registered employees have different options available to them for resolving claims past the mediation stage. Registered employees are bound by the rules of the NASD, as described in the U-4 agreement. This agreement states that all claims must be brought to mandatory arbitration before the NASD. However, as of January 1, 1999, registered employees are not required to take discrimination or harassment claims to mandatory binding NASD arbitration – therefore, these claims should be handled under RESOLVE.

## D. Duration and Modification

The Company may at its sole discretion modify or discontinue RESOLVE at any time by giving employees 30-calendar days notice. If there are conflicts between the requirements of this procedure and other Company publications or statements by Company representative(s), the requirements of this procedure are controlling. This procedure constitutes the sole agreement between the Company and its employees concerning the requirements of RESOLVE and may not be modified by written or oral statements of any the Company or Company representative, except by a written statement signed by the Company's Senior Vice President of Human Resources. An employee shall complete the processing of any concern/claim pending in RESOLVE at the time of an announced change, under the terms of the procedure as it existed when the concern/claim was initially submitted to RESOLVE.

## E.    Current Employees

For the purpose of this procedure, "current employees" are covered employees before the date of this procedure (6/1/2000) and who continue their employment with the Company.

Current employees whose employment terminates on or after the effective date of this procedure continue their status as current employees solely for purposes of this procedure. **By virtue of their continuing their employment with the Company on or after the effective date of this procedure (6/1/2000), current employees are deemed to have accepted the requirement to complete at least the first three levels of the RESOLVE Program (through mediation).** If the issue remains unresolved following mediation, current employees have the option of submitting the matter to binding arbitration, pursuing the matter in court, or withdrawing their claim from RESOLVE.

## F. New Employees

For the purpose of this procedure, new Company employees are employees hired or rehired by the Company at any U.S. based office, on or after the effective date of this procedure (6/1/2000). However, "rehired" employees with a Continuity of Service Date earlier than 6/1/2000 are considered to be "current employees."

New employees agree, as a condition of employment, to participate in RESOLVE as the exclusive alternative to filing covered claims in court. New employees who have not resolved their covered claims with the Company before the arbitration level of RESOLVE must proceed to arbitration and the arbitrator's decision shall be the final, binding, and exclusive determination of all covered claims. New employees whose employment terminates on or after the effective date of this procedure continue their status as new employees solely for purposes of this procedure.

## G. Transferred Employees

For the purpose of this procedure, "Transferred Employees" are employees of General Electric Company or any of its subsidiaries other than the Company, who transfer to the Company on or after the Effective Date of this procedure (6/1/2000). Transferring Employees who accept a transfer to GE Capital Corporate or a Company business agree by virtue of this acceptance to be bound by the RESOLVE procedure in accordance with its terms in respect of all claims which arise while working as a Company employee following their transfer.

Transferring Employees with Company Continuity of Service Dates before the Effective Date of this Procedure are deemed to have accepted the requirement to complete at least the first three levels of the RESOLVE Program (through mediation). If the issue remains unresolved following mediation, these transferring employees have the option of submitting the matter to binding arbitration, pursuing the matter in court, or withdrawing their claim from RESOLVE.

Transferring employees with continuity of service dates on or after 6/1/2000, or who are covered by an existing agreement with a GE business or component to accept binding arbitration, must proceed to arbitration and the arbitrator's decision shall be the final, binding and exclusive determination of all covered claims.

## H. Former Employees

For the purpose of this procedure, former employees are individuals who were assigned to the Company at a U.S. based office and who were no longer employed by the Company on the effective date of this procedure (6/1/2000).

Former employees may request the Company's agreement to resolve covered claims through RESOLVE. The Company reserves the right to accept or reject, for any reason, the request of any former employee to submit his/her covered claims to RESOLVE. The

Company will consider accepting for RESOLVE only the covered claims of former employees which are based on actions that occurred while these individuals were employed by the Company.

A condition of the Company's acceptance of a former employee's request to use RESOLVE to resolve covered claims shall be the former employee's waiver of the right to pursue such covered claims in court and agreement to accept the arbitrator's award as the final, binding, and exclusive determination of such covered claims.

## I. Filing Charges with Government Agencies

Nothing in this procedure is intended to discourage or interfere with the legally protected rights of employees to file administrative claims or charges with government agencies. Such agencies include, but are not limited to, the Equal Employment Opportunity Commission (EEOC), the Office of Federal Contract Compliance Programs (OFCCP), various state agencies responsible for Equal Employment Opportunity, and the National Labor Relations Board (NLRB).

For example, the Company recognizes the exclusive jurisdiction of the National Labor Relations Board concerning issues that arise under the National Labor Relations Act. This procedure does not apply to charges under the National Labor Relations Act and does not prevent employees from filing unfair labor practice charges with the NLRB.

**However, if an employee files a charge with the EEOC, OFCCP, or with state or municipal agencies, the Company may request the agency to defer its processing of the charge until the employee and the Company have completed the RESOLVE procedure.**

## J. RESOLVE Administrator

The RESOLVE Administrator will:

- Coordinate the receipt of employees' concerns/claims with managers and with HR representatives;
- Answer questions about RESOLVE;
- Monitor the Company's and employee's compliance with all time requirements;
- Schedule mediation meetings and arbitration hearings at Levels Three and Four;
- Schedule training sessions for management;
- Process requests for production of information;
- Schedule the Company's participation in pre-arbitration communications with arbitrators and with employees regarding specific discovery issues;
- Work with Company representatives, employees, their attorneys, and the ADR organization to select and schedule mediators and arbitrators;
- Process requests for reimbursement of experts' and attorneys' fees;

- Function as the Company's administrative liaison with the professional ADR organization; and
- Process requests for extensions of the procedure's deadlines.

## K. The Ombuds Office

The Company's Ombuds Offices can provide information to employees about the Company's policies, practices, and procedures, including RESOLVE. However, the Ombudsperson is an informal resource to employees and does not participate in formal RESOLVE proceedings.

## L. Covered Claims

While employees may submit to the appropriate Company representatives any employment-related concern/claim at internal Levels One and Two, only covered claims will be accepted and processed at Levels Three and Four. Covered claims are personal, employment-related claims against the Company or individual managers acting within the scope of their employment that a court in the jurisdiction in question would have the authority to decide under any municipal, state, or federal statute, regulation, or application of common law. Covered claims do not include excluded claims described below.

Covered claims that allege the violation of certain legally protected rights, in a jurisdiction which recognizes such rights, and include, but are not limited to the following:

- Claims relating to compensation, leaves of absence, and layoffs and/or plant closings;
- Claims relating to involuntary terminations, such as layoffs and discharges (including constructive discharges);
- Employment discrimination and harassment claims, based on, for example, age, race, sex, religion, national origin, veteran status, citizenship, handicap/disability, or other characteristic protected by law;
- Retaliation claims for legally protected activity, and/or for whistleblowing;
- Claims of breach of contract or covenant (express or implied) and/or promissory estoppel;
- Tort claims (such as intentional torts, negligence, defamation, invasion of privacy, infliction of emotional distress, etc.);
- Claims of violation of public policy;
- Claims of violation of this procedure, except for violation of the confidentiality requirements of this procedure; and/or
- Claims that the Company at its sole discretion determines are covered claims.

## M. Excluded Claims

8

Excluded claims are claims which allege concerns such as the following. These claims are excluded from Levels Three and Four of RESOLVE:

- Claims which do not allege legally protected or enforceable rights in the jurisdiction in question;
- Claims based on alleged violations of GE Policy 20.10 (Working with Government Agencies), including, but not limited to, alleged violations of the federal False Claims Act (except retaliation claims) or federal procurement laws or regulations (These should be reported to an Ombudsperson.);
- Claims for benefits under a Company benefit plan covered by the Employment Retirement Income Security Act of 1974 (ERISA), or any other claims covered by ERISA;
- Claims for workers' compensation or unemployment compensation benefits;
- Claims related to GE's "Employee Innovation and Proprietary Information Agreement," or an alleged breach of an employee's non-competition, non-solicitation, fiduciary or confidentiality obligations;
- Claims involving patents, trademarks, or intellectual property;
- Claims under the National Labor Relations Act;
- Claims against individual managers which do not involve conduct within the scope of the managers' employment; and/or
- Claims which seek to establish or modify the Company's policies or procedures.

The exclusion of Company benefit plans above precludes a claim alleging a violation of such plans but does not prevent an arbitrator from including in an award, in connection with a covered claim, the monetary value of lost Company benefits caused by a wrongful termination of employment or other violation of law.

## N. Exhaustion of Resolution Levels

Current Company employees and the Company must satisfy the requirements at each level, through Level Three, except (if the parties agree) Level One, before proceeding to the next level. New Company employees and transferring employees are similarly required to seek resolution at all levels, except Level One if the parties agree, before proceeding to the next and are required to proceed through Level Four, Arbitration. For example, no employee may proceed to mediation at Level Three before completing internal Level Two, nor can an employee proceed to arbitration at Level Four before completing mediation (Level Three). Of course, the parties may complete RESOLVE by resolving concerns/claims at any level.

While the Company encourages employees to attempt to resolve disputes at Level One, the Company recognizes that there may be appropriate situations where employees would prefer to initiate their concerns/claims at Level Two. When an employee submits a concern/claim initially to RESOLVE, the employee may request on the **submission form** (Appendix A –Form LV1A) to skip Level One. The RESOLVE Administrator will advise the employee before the first scheduled meeting whether the Company agrees to discuss the concern/claim initially at Level Two. In all appropriate cases, however, employees will be encouraged by the RESOLVE Administrator to engage in initial discussions with his or her direct manager prior to engaging in Level One or Level Two proceedings.

An employee's failure to submit covered claims at all levels of RESOLVE within the deadlines established by this procedure constitutes a failure to complete RESOLVE, unless the parties agree to an extension of deadlines or the arbitrator rules that such failure was the result of excusable delay. **Failure of a current employee to complete Level One (unless waived), Level Two and Level Three of RESOLVE prohibits the employee from filing covered claims in court.**

## O. Statutes of Limitations and Administrative Agency Filing Deadlines

In order to submit covered claims to Level Three of RESOLVE, employees must have submitted such claims to Level One (Level Two if Level One is waived) before the expiration of the applicable statutes of limitations and administrative agency filing deadlines for such covered claims. However, employees may process concerns/claims through Levels One and Two without regard to whether or not applicable statutes of limitations and administrative agency filing deadlines have expired.

The Company's failure to reject a covered claim which an employee has submitted to Level Three of RESOLVE after the expiration of the applicable statutes of limitations or administrative agency deadlines, shall not waive the Company's right to assert as a defense at a later time the untimeliness of a covered claim.

A statute of limitations is the time period within which a person must file a claim in court. The length of the applicable statute of limitations is determined by the legal nature of the claim. Different statutes of limitations apply to different claims. Courts do not have authority to decide claims or grant relief with respect to claims filed after the expiration of applicable statutes of limitations. The time period for filing a claim in court normally begins with the occurrence of the event or conduct which is the basis of a person's claim. The time period for filing the claim in court ends upon the expiration of the time period established by the applicable statute of limitations.

Administrative agency filing deadlines can affect an employee's legal rights in different ways. For example, some statutes require individuals to file administrative claims with government agencies (e.g., EEOC) as a prerequisite for filing such claims in court. In this context, administrative agency filing deadlines are the time periods within which individuals must file administrative claims with federal, state, or local agencies. Such deadlines may also apply to the time period for filing a claim in court after a government agency has discontinued its investigation of the claim.

An employee's initial submission of a covered claim to RESOLVE before the expiration of the applicable statute of limitations or agency administrative filing deadlines will stop the further running of the statute of limitations and the administrative agency filing deadlines. Consequently, the time required to complete RESOLVE will not be included in the running of the applicable statute of limitations or administrative agency filing deadline, if a current employee subsequently elects to file a covered claim in court after completing Level Three of RESOLVE. However, on the seventh day after the date of the Company's written response at Level Three, if the current employee has not elected to pursue the matter through binding arbitration, the applicable unexpired statutes of limitations and administrative agency filing deadlines shall restart and continue to run.

Employees shall be solely responsible for determining the correct statutes of limitations and/or administrative agency deadlines and for filing claims in the appropriate jurisdictions.  However, if an employee has not completed all four levels of RESOLVE, the Company may ask the agency or court to defer processing until all four levels are completed.

## P. Deadlines Established by this Procedure

This procedure establishes deadlines for certain actions. Examples include, but are not limited to, deadlines for submitting concerns/claims to different levels of RESOLVE, the Company's issuance of written responses, and completion of discovery at the arbitration level. Deadlines are established by this procedure rather than by law and are distinct from statutes of limitations.

Both parties will make a good-faith effort to comply with the deadlines in this procedure. The Company's failure to respond at any level of this procedure to the employee's submission of a concern/claim before expiration of the applicable deadline shall constitute a denial of the concern/claim from the date of the deadline and enable the employee to submit his/her concern/claim at the next level. An employee may not exceed the deadlines in this procedure, unless the employee obtains the written agreement of the RESOLVE Administrator or unless the employee can show good and sufficient cause why an arbitrator should excuse such delay.

The arbitrator shall have the exclusive authority to decide any dispute raised at Level Four between the employee and the Company concerning the employee's compliance with the deadlines of this procedure. The arbitrator's authority includes, but is not limited to, deciding whether to excuse an employee's failure to comply with any of the deadlines in this procedure, if the Company raises such failure as a defense to the employee's claims at Level Four.

## Q. Severability

If any term, condition or provision of this procedure is found by a court of competent jurisdiction to be invalid, void or unenforceable in any jurisdiction, such term, condition or provision shall, as to such jurisdiction, be ineffective only to the extent of such invalidity or unenforceability, without invalidating (i) the remaining provisions of this procedure, which shall remain in full force and effect, and shall in no way be affected, impaired or invalidated, or (ii) the validity or enforceability of such term, condition or provision in any other jurisdiction.

## R. Agreement to Arbitrate in Interstate Commerce

This procedure is an agreement to arbitrate pursuant to the Federal Arbitration Act, 9 U.S.C.A. Sections 1-14, or if that Act is held to be inapplicable for any reason, the arbitration law in the state in which the arbitration hearing is held. The parties acknowledge that the Company is engaged in transactions involving interstate commerce and that the employees eligible to participate in RESOLVE are not employed by the Company as seamen, railroad employees, or other class of worker engaged in foreign or interstate commerce.

## S. Retaliation is Prohibited

Company employees at all levels are prohibited from retaliating against anyone for submitting a concern/claim to or otherwise participating in RESOLVE.

## T. Consolidation of Additional Covered Claims by the Same Employee

The employee is solely responsible for including in the RESOLVE submission forms all covered claims which arise from same set of facts. Consequently, if an employee wants to raise, or raises in any manner at any time during the RESOLVE process, new covered claims or new facts which give rise to new covered claims, the employee shall include such claims and/or facts in a new **submission form** (**Appendix A – Form LV1A**) at Level One. The Company at its sole discretion may consolidate new covered claims at the level of the employee's pending claims, or may elect to address the new covered claims at Level One. The addition of a new covered claim does not alter the requirement that the new covered claim must be submitted initially to RESOLVE by the employee within the statute of limitations for such claim.

## U. Consolidation of Similar Covered Claims by Different Employees

If different employees submit covered claims that the Company believes present common facts and legal issues, the Company at its sole discretion may consolidate two or more such covered claims at Level Three (mediation) or Level Four (arbitration). The Company's consolidation of covered claims at these levels of RESOLVE does not alter the requirement that each employee must meet the applicable statutes of limitations for his/her covered claims.

## V. Prohibition against Employees' Obtaining Information Outside Formal RESOLVE Process

Employees and their attorneys must obtain the written consent of the Company's attorney before attempting to question or otherwise obtain from other Company employees documents or other information to support their concerns/claims. Employees or their attorneys who wish to obtain access to Company documents and/or access to other employees must submit a written request to the RESOLVE Administrator.

The request should explain in detail the relevance of the request to the employee's concerns/claims. The RESOLVE Administrator will refer such request to the Company's attorney for evaluation and will respond in writing to the employee. If there is a dispute over the employee's access to Company documents and/or other employees as witnesses, the employee may seek a ruling from the arbitrator after the arbitrator has been appointed.

Any employee who is questioned by another employee or by someone else on behalf of another employee concerning another employee's concern/claim, shall not respond to such questioning or provide information or documents to such individual but should direct the individual to the RESOLVE Administrator. Under no circumstances shall employees directly or indirectly attempt to obtain copies of the Company's proprietary documents, to which they do not have access in the ordinary course of their employment, except as permitted by this procedure.

## W. Claims/Concerns before Effective Date of the Procedure

Current employees are required to use this procedure (through Level Three, Mediation) before litigation and new employees must use this procedure as the exclusive alternative to litigation for covered claims based on events which occurred on or after the effective date of this procedure (6/1/2000).

However, current employees with covered claims based on events that occurred before the effective date of this procedure may request the Company's agreement to resolve such covered claims through RESOLVE. The Company reserves the right to accept or reject, for any reason, the request of a current

employee to submit such covered claims to RESOLVE. Such claims shall be limited to covered claims and the employee must submit such covered claims to RESOLVE before the expiration of the statutes of limitation applicable to such covered claims. A condition of the Company's acceptance of an employee's request to use RESOLVE to resolve such covered claims shall be the employee's waiver of the right to pursue such covered claims in court and agreement to accept the arbitrator's award as the final, binding, and exclusive determination of such covered claims.

## III. PROCEDURE AND RESPONSIBILITY

**Preliminary note**: In all appropriate instances employees are encouraged to first discuss their concern/claim with their direct managers before submitting a concern/claim to RESOLVE. Such discussions should normally take place prior to filing at Level One.

### A. Level One

1. Submission of Concerns/Claims – Using the **Level One – Submission Form** (Appendix A - Form LV1A), the employee shall submit his/her concerns/claims to the RESOLVE Administrator and may provide copies to his/her manager and/or to his/her HR representative (or manager or designee). Upon receipt of the employee's concern/claim, the RESOLVE Administrator will confirm receipt of the concern/claim with the employee's immediate manager. The employee should keep a copy of the completed Appendix A (Form LV1A) and keep a record of the date and names of the individuals to whom Appendix A is submitted.

   Appendix A (Form LV1A) requires an employee to provide a detailed explanation of his or her concerns/claims, the individuals involved, and what the employee believes is necessary to resolve the concerns/claims.

2. Statutes of Limitations for Submission of Claims —There are no time limits for employees' submission of concerns/claims at Levels One (or if Level One is skipped, then at Level Two). However, the Company shall not accept covered claims at Level Three, unless the employee has submitted his/her covered claims at Level One before the expiration of the statutes of limitations applicable to such claims.

3. Scheduling of Level One Meeting within 14 Days —The  RESOLVE Administrator will confirm the manager has scheduled a meeting with the employee at Level One on a date not later than 14 calendar days after the Company's receipt of the employee's written submission.

4. Attendees at Level One Meeting – The employee meets with his/her manager. Either the employee or manager may require the attendance of the employee's HR representative (or designee) at the Level One meeting. If there is no HR representative on site, HR participation can be by telephone or videoconference.  No one may attend the meeting other than the employee, his/her manager and, if requested by either party, the employee's HR representative (or manager or designee). If the employee's manager was not directly involved with the events which form the basis of the employee's concerns/claims, the appropriate Company representatives who were involved in the events may participate in the meeting. While this procedure is not intended to prevent employees from seeking legal advice regarding the employee's concerns/claims, **attorneys may not attend Level One meetings.**

5. Requests for Documents and Other Information – Employees may obtain from the RESOLVE Administrator documents concerning his/her employment that are by law available to employees from their personnel files and medical files. The RESOLVE Administrator will make such documents available to the employee within 7 calendar days of receipt of the employee's written request.

If the employee believes he/she needs documents or other information, in addition to those which are described above, to present his/her concern/claim to the Company, the employee may request such documents/information in writing from the RESOLVE Administrator, who shall respond to the employee in writing within 7 calendar days of receipt of such request. However, the Company is not required to provide any additional information to the employee other than that which is described above. Employees shall not directly or indirectly attempt to obtain information to support their concerns/claims from other GE employees outside the limitations of this procedure.

6. Meeting Length and Format – Level One will consist of a single meeting not to exceed two hours, unless the employee and manager agree to extend the meeting or to hold additional meetings. At the meeting, the employee shall state the reasons why the Company should resolve the concerns/claims in the employee's favor. In addition to the discussion, the employee may present written information or documents.

7. Recording of the Proceedings -- Neither the employee nor the manager may make a formal record or transcript, or use any electronic recording device at the Level One meeting. However, both the employee and the manager may make handwritten notes during the meeting.

8. Confidentiality and Inadmissibility of Settlement Discussions – Statements by the employee and the Company's representatives in the meeting are

15

understood to be solely for the purpose of reaching a settlement of the employee's concerns/claims and shall be kept confidential by the employee, and conveyed on a need-to-know basis by the Company. However, nothing in this procedure shall restrict the Company's ability to interview witnesses and gather information to evaluate the employee's concerns/claims.

Neither party, unless compelled by law, shall attempt to use statements made by the other party at the meeting in any arbitral, judicial, or other proceeding to impeach the testimony of the other party's witnesses, or as evidence of: (a) views expressed or suggestions made by another party with respect to a possible settlement of the dispute; (b) admissions made by another party in the course of meeting; (c) proposals made or views expressed by the other party; or (d) the fact that the other party had or had not indicated willingness to accept a proposal for settlement.

9.  However, the employee may disclose the contents of the meeting to his/her spouse and attorney, provided they first agree not to disclose such information to others.  The Company may disclose the contents of the meeting to appropriate company representative(s) who have a need to know and or its attorneys.

Notwithstanding this provision or any other confidentiality requirement of this procedure, nothing in this procedure shall prevent employees from communicating or cooperating with any Government investigation into matters which occurred during the RESOLVE procedure or during their employment with the Company.

10. Written Response or Settlement Agreement – Resolution of a concern/claim at Level One will be documented either by the Company's written response or, in certain cases, by a settlement agreement and release. If resolution of the employee's concern/claim includes the payment of money, the awarding of employee benefits, reinstatement or rehire of a terminated employee, a promotion, and/or assignment of any employee to another position, the employee and the Company will enter into a signed settlement agreement and release of all claims against the Company and its representatives related to the employee's employment. In those instances in which the Company asks the employee to sign a settlement agreement and release, the employee should not sign the agreement unless he/she understands and agrees with the terms and conditions of the proposed agreement. If the employee is not satisfied with the Company's written response, or if the employee does not agree with the terms of the proposed settlement agreement, the employee may submit his/her concern/claim to the next level.

11. Company Response within 14 Days – The Company will, subject to the preceding provision (confidentiality, etc.), provide the employee with the Company's written response (Form LV1B) within 14 calendar days of the conclusion of the last Level One meeting.

## B. Level Two

1. Submission of Concerns/Claims – At Level Two, the employee shall use **Level Two – Submission Form** (Appendix A - Form LV2A) to submit his/her concerns/claims to the RESOLVE Administrator. At Level Two Appendix A requires the employee to provide any additional information regarding his/her concerns/claims, including information which conflicts with the manager's (or HR Manager's) stated reasons for not resolving the employee's concerns/claims at Level One. Employees who are permitted by the Company to submit concerns/claims initially at Level Two shall provide the information required at Level One using the Level One – Submission Form. The RESOLVE Administrator shall immediately forward copies of the employee's concerns/claims at Level Two to the appropriate higher-level manager and HR representative (or designee).

2. Statutes of Limitations for Submission of Claims – Same as Level One.

3. 7 Days to Submit Concerns/Claims to Level One – The employee must submit his/her concerns/claims at Level Two within 7 calendar days of the date of the Company's written response to the employee at Level One. Employees, who with the Company's written agreement skip Level One and submit their claims initially at Level Two, may not submit their covered claims to Level Three, unless they submitted such claims to Level Two before the expiration of the statutes of limitations applicable to such covered claims.

4. Scheduling of Level Two Meeting within 14 Days –The RESOLVE Administrator will confirm that the higher-level manager has scheduled a meeting with the employee at Level Two on a date not later than 14 calendar days after the Company's receipt of the employee's written submission.

5. Attendees at Level Two Meeting –The Level Two meeting shall include the employee, a higher-level manager than the manager who attended the Level One meeting (or designee), and the appropriate HR representative (or designee).  If there is no HR representative on site, HR participation can be by telephone or videoconference.  In addition, either the employee or higher-level manager may require the attendance of any Company representative who attended the Level One meeting. The Company may also involve, as necessary, other Company representatives at the Level

Two meeting. No one else may attend the meeting other than those identified in this paragraph. While this procedure is not intended to prevent either party from seeking legal advice concerning the employee's concerns/claims, **attorneys may not attend the Level Two meeting.**

6.  Requests for Documents and Other Information – <u>Same as Level One.</u>

7.  Meeting Length and Format – <u>Same as Level One.</u>

8.  Recording of the Proceedings -- <u>Same as Level One.</u>

9.  Confidentiality and Inadmissibility of Settlement Discussions – <u>Same as Level One.</u>

10.  Written Response or Settlement Agreement – <u>Same as Level One.</u>

11.  Company Response within 14 Days – <u>Same as Level One (Form LV2B).</u>

**C. Level Three -- Mediation/Covered Claims Only**

*Only covered claims shall be processed at Level Three (mediation). Covered claims shall not be processed at Level Three unless the employee submitted such claims to Level One (or Level Two if Level One is waived) before the expiration of statutes of limitations or administrative agency deadlines applicable to such claims.*

1.  Description – Mediation involves an attempt by the parties to resolve their dispute with the aid of a neutral third party not employed by the Company. The mediator's role is advisory. The mediator may offer suggestions but resolution of the dispute rests with the parties themselves. Mediation is a process that seeks to find common ground for the voluntary settlement of covered claims. The structure of the mediation session will be determined by the mediator based on the mediator's judgment of how settlement is most likely to be reached. The Level Three proceedings are confidential and private.

    The mediator may or may not suggest ways of resolving the dispute after listening to both sides, but the mediator may not impose a settlement on the parties. The mediator may also end the mediation whenever, in the judgment of the mediator, further efforts at mediation would not contribute to a resolution of the dispute.

2.  Statutes of Limitations for Submission of Covered Claims –The Company shall not accept covered claims at Level Three, unless the employee submitted his/her covered claims to Level One *(or Level Two if Level One is waived)* before the expiration of the statutes of limitations applicable to

such claims.

3. Submission of Claims to Level Three (Mediation) and Time Limits –The employee shall use **Level Three – Mediation Submission Form** (Appendix A - Form LV3A) to submit his/her covered claims to the RESOLVE Administrator at Level Three, within 7 calendar days of the date of issuance of the Company's written response at Level Two. At Level Three, Appendix A requires the employee to include all legal claims that arise out of the same facts and to include all facts that support the employee's legal claims, including facts which conflict with the Company's stated reasons for denying the employee's claims at Level Two. In addition, employees are asked to include the dates of each alleged legal violation, the names of individuals who have knowledge about each alleged legal violation and the nature of their involvement, and any documents or other evidence which support the employee's claims.

Within 14 calendar days of the RESOLVE Administrator's receipt of the employee's submission at Level Three, the RESOLVE Administrator shall either reject the claim at Level Three as not being a covered claim, or the RESOLVE Administrator and the employee and/or the employee's attorney shall file with the ADR organization two copies of

MedConfAgreement.doc– Form LV3B (See, Appendix B) for jointly requesting mediation of covered claims. The request for mediation shall contain a brief description of the nature of the covered claims and the names, addresses, and telephone numbers of all parties to the dispute and those who will represent them, if any, in the mediation.

4. Selection of a Mediator –The employee and the RESOLVE Administrator may select a mediator by agreement. In the event of agreement, the Company will notify the ADR organization of the name of the selected mediator and the ADR organization will appoint the mediator. If the employee and the RESOLVE Administrator cannot agree to the selection of a mediator before the submission of their joint request for mediation, the parties will include with their joint request for mediation, a request that the ADR organization provide the parties a list of seven mediators from the Association's panel of employment mediators. The list will include, to the extent reasonably available, culturally diverse mediators.

The employee and the RESOLVE Administrator may each strike the names of up to three mediators from the list. The parties shall also independently rank the names of the mediators remaining on the list. The parties shall rank the remaining names in the order of relative acceptance, from most acceptable to least acceptable. The parties shall independently return their respective rankings to the ADR organization within 14 calendar days of the ADR organization's transmittal of the list. If either

party does not return the list within the time specified, all persons on such party's list shall be deemed acceptable to such party. Beginning with the employee's ranking, the ADR organization shall promptly appoint the mediator from those remaining on the list by alternately striking from the list the mediators ranked least acceptable by both parties. The ADR organization shall immediately notify the parties by telephone of the name of the mediator appointed.

If acceptable mediators are unable to serve, or if for any other reason an appointment cannot be made from the initial list, the ADR organization shall submit a second list to the parties. The parties shall repeat the same process of selection. However, if for any reason the ADR organization cannot make an appointment from the second list, the ADR organization shall make the appointment from other members of its panel of employment mediators without the submission of additional lists.

5. Qualifications of Mediators – In addition to not having any financial or personal interest in the result of the mediation, mediators shall be licensed attorneys or former judges with a minimum of five years' experience in the practice of employment law and in the mediation of employment claims. The parties shall direct the ADR organization to provide lists of local mediators to the parties to the extent that local mediators possess the qualifications required by this procedure. However, the parties will accept lists which include mediators that are not local to the jurisdictions in question to the extent that qualified local mediators are not available.

6. Date, Time, and Place of Mediation –The parties may agree on a mediator as well as a date and time for the mediation. However, if the parties fail to agree before the appointment of the mediator, the mediator shall schedule the mediation on a normal business day during normal business hours, no later than 30 calendar days after the date of the mediator's appointment. Unless the parties agree otherwise, or the mediator directs otherwise, the parties shall use the ADR organization office nearest to the employee's work location to mediate the dispute. If the appropriate office is unavailable, the mediator shall select a convenient, neutral site.

7. Length of Mediation -- Either of the parties or the mediator may end the mediation at any point. However, the length of the mediation shall not exceed one 8-hour day, unless both parties and the mediator agree to an extension.

8. Requests for Documents and Other Information – Same as Level One.

9. Identification of Matters in Dispute – At least 14 calendar days prior to the scheduled mediation, each party shall provide the mediator with a brief written summary of the dispute setting forth the party's position concerning all claims.

10. Attendees at Mediation – **Either party may be assisted or represented by counsel**. Company management, with advice from the Company's Legal Operation and the appropriate HR representative, shall determine in each case whether the Company will be represented by an attorney at mediation. If the decision of the Company is to be represented by an attorney at mediation, the Company's Legal Operation will select, or serve, as the Company's attorney.

The mediation shall be a private, confidential meeting of the parties and the mediator. Without the prior written agreement of both parties, no one may attend the mediation except the mediator, the employee, the employee's attorney, a Company management representative and the Company's attorneys. Under no circumstances shall members of the press/media, representatives of special interests groups, or representatives of other employees be permitted to attend the mediation.

11. No Stenographic Record or Electronic Recording – Neither the employee, the Company, nor anyone else may make a formal record or transcript, or use any electronic recording device at the mediation. However, both parties may make notes during the mediation.

12. Confidentiality and Inadmissibility of Mediation Discussions –The mediator shall not divulge to anyone outside the mediation any information disclosed by the parties in the course of the mediation. The mediator shall not be compelled to divulge such records or to testify in regard to the mediation in any other proceeding or judicial forum.

The parties shall maintain the confidentiality of the mediation. On or before the date of the mediation, the mediator and the parties shall sign the Mediation Confidentiality Agreement (Appendix C, Form LV3C) or a similar agreement provided by the mediator. Statements by the parties at the mediation are understood to be solely for the purpose of reaching a settlement of the employee's claims and shall be kept confidential by the employee, and conveyed on a need-to-know basis by the Company.

However, nothing in this procedure shall restrict the Company's ability, as provided in this procedure, to interview witnesses and gather information to evaluate the employee's claims.

Neither party shall, unless compelled by law, attempt to use statements of the other party or the other party's representatives or witnesses in any

arbitral, judicial, or other proceeding to impeach the testimony of the other party's witnesses, or as evidence of: (a) views expressed or suggestions made by another party with respect to a possible settlement of the dispute; (b) admissions made by another party in the course of the mediation proceedings; (c) proposals made or views expressed by the mediator; or (d) the fact that the other party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

However, the employee may disclose the contents of the mediation to his/her spouse and attorney, provided they first agree not to disclose such information to others. The Company may disclose the contents of the meeting to appropriate company representatives who have a legitimate need to know and to its attorneys.

Notwithstanding this provision or any other confidentiality requirement of this procedure, nothing in this procedure shall prevent employees from communicating with or cooperating with any Government investigation into matters that occurred during RESOLVE or during their employment with the Company.

13. Settlement Agreement & Release -- If the parties reach an agreement to resolve the employee's covered claims before the termination of the mediation, they will enter into a signed settlement agreement and release of all claims against the Company and its representatives related to the employee's employment.

14. Costs and Fees –The Company will pay (1) the ADR organization's filing and other administrative fees; (2) the mediator's fee and reasonable travel and living expenses; (3) the expenses of any fact witnesses and the costs of any proofs or expert advice provided such witnesses, proofs or advice, are produced solely at the direct request of the mediator; (4) the cost of renting mediation rooms; and (5) the employee's salary, if still employed by the Company, for the time spent at the mediation.

The Company shall pay the fees and expenses of the mediator by making such payments directly to the ADR organization. The ADR organization shall then pay the mediator without disclosing the source of such payments. To avoid disclosing to the mediator the source of the payment of his/her fees and expenses or other costs of mediation, all references to the "costs and fees" of RESOLVE shall be redacted from copies of this procedure which are provided to the mediator.

The parties shall each pay their own experts' and/or attorneys' fees and the costs to produce their respective witnesses. However, in the event that the parties agree to a settlement at Level Three and execute a settlement agreement and release, the Company will reimburse the employee up to

22

$2,500 for his/her reasonable experts' and/or attorneys' fees directly related to the mediation. The Company will not reimburse employees for experts' or attorneys' fees for Levels One or Two.

15.  Company Response within 7 Days – If the parties are unable to resolve the dispute at mediation, the Company will, subject to paragraph III.C.12 (confidentiality, etc.), attempt to provide the employee with the Company's written response to the employee's covered claims at the conclusion of the mediation, but in no event later than 7 calendar days after the conclusion of the mediation.

## D. Level Four – Arbitration

1.  Description – Arbitration is a dispute-resolution process in which the employee and the Company present their respective positions concerning the employee's claims to an impartial third-party arbitrator who determines the merits of the claims. An arbitration hearing resembles a court proceeding in certain ways. Both parties have the opportunity to be represented by an attorney, to make opening statements, to present the testimony of witnesses and to introduce exhibits through witnesses, to cross-examine the other party's witnesses, and to make closing statements. Arbitration differs from mediation in that the arbitrator decides the merits of the employee's claims and can impose remedies.

2.  Attendees at Arbitration Hearings – **The employee may be assisted or represented by an attorney at Level Four.** The Company may be represented by counsel at the arbitration hearing. the Company's Legal Operation will represent or retain an attorney to represent the Company. Either party may present expert witness testimony to the arbitrator. Neither party may call more than 10 witnesses, including expert witnesses, during the presentation of its case-in-chief, unless both parties agree in advance or the arbitrator grants the request of a party to increase the number for good and sufficient cause shown.

The arbitration hearing shall be a private hearing. Without the written agreement of both parties, no one may attend the arbitration hearing except the arbitrator; an official recorder (if any); the employee, attorneys, experts, and witnesses; and the Company's attorneys, management personnel, experts, and witnesses. Under no circumstances shall members of the press/media, representatives of special interests groups, or representatives of other employees be permitted to attend the arbitration hearing.

At least 30 calendar days before the arbitration hearing, each party shall provide written notice to the other party of the names and addresses of any expert witnesses the party intends to call as a witness at the arbitration hearing, as well as the names and addresses of any attorneys

who will attend the arbitration hearing. Each party shall also communicate in writing to the other party at least 14 calendar days before the arbitration hearing the names of all witnesses other than expert witnesses that the party may call to testify at the arbitration hearing.

3. Confidentiality of Arbitration Hearings –The arbitrator shall maintain the confidentiality of the hearings and shall have the authority to make appropriate rulings to safeguard that confidentiality, unless the law provides to the contrary.

4. Submission of Claims to Level Four (Arbitration) and Time Limits – The employee shall use **Level Four – Arbitration Submission Form** (Appendix A - Form LV4A) to submit his/her covered claims to the RESOLVE Administrator at Level Four, within 7 calendar days of the date of issuance of the Company's written response at Level Three. Appendix A requires the employee to provide at Level Four any additional information regarding the employee's claims, including information that conflicts with the Company's stated reasons for denying the employee's claims at Level Three.

5. Initiation of Arbitration – Within 14 calendar days of the RESOLVE Administrator's receipt of the employee's submission at Level Four, the RESOLVE Administrator and the employee and/or the employee's attorney shall file three copies of a joint request for arbitration with the regional office of the ADR organization pursuant to the arbitration rules. The request for arbitration shall contain a statement setting forth the nature of the covered claims, the amount of damages claimed, if any, and the remedy sought. The RESOLVE Administrator will forward the joint request to the ADR organization Form LV4B (Appendix D) will be used for requesting arbitration.

6. Selection of an Arbitrator – The employee and the RESOLVE Administrator may agree to the selection of an arbitrator. In the event of agreement, the Company will notify the ADR organization of the name of the selected arbitrator and the ADR organization will appoint the arbitrator. However, if the employee and the RESOLVE Administrator cannot agree to the selection of an arbitrator before the submission of their joint request for arbitration, the parties will include with their joint request for arbitration, a request that the ADR organization provide each of the parties separately an identical list of seven arbitrators from the ADR organization's panel of employment arbitrators. The list will include, to the extent reasonably available, culturally diverse arbitrators.

The ADR organization will also provide both parties the professional biographies, qualifications, employment history and professional affiliations and citations to the published awards of each arbitrator on the

24

list. If requested by an employee at Level Four, the ADR organization will identify any arbitrators on the list who have served as arbitrators in RESOLVE disputes between the Company and its employees. Without disclosing the names or otherwise compromising the privacy of employees involved in prior arbitration, the ADR organization will also provide the employee redacted copies of the most recent three awards, if any, of listed arbitrators in the Company cases.

The employee and the RESOLVE Administrator may independently strike the names of up to three arbitrators from the list. The parties shall also independently rank the names of the arbitrators remaining on the list. The parties shall rank the remaining names in the order of relative acceptance, from most acceptable to least acceptable. The parties shall independently return their respective rankings to the ADR organization within 14 calendar days of the ADR organization's transmittal of the list.

If either party does not return the list within the time specified, all persons on such party's list shall be deemed acceptable to such party. Beginning with the employee's ranking, the ADR organization shall promptly appoint the arbitrator from those remaining on the list by alternately striking from the list the arbitrators ranked least acceptable by both parties. The ADR organization shall immediately notify the parties by telephone of the name of the arbitrator appointed.

If acceptable arbitrators are unable to serve, or if for any other reason an appointment cannot be made from the initial list, the ADR organization shall submit a second list to the parties and the parities shall repeat the same selection process. However, if for any reason the ADR organization cannot appoint an arbitrator from the second list, the ADR organization shall make the appointment from other members of its panel of employment arbitrators without the submission of additional lists.

7.  Qualifications of a Neutral Arbitrator – Arbitrators shall be licensed attorneys or former judges with a minimum of five years' experience in the practice of employment law and in the arbitration of employment law claims. The parties shall direct the ADR organization to provide lists of local arbitrators to the parties to the extent that local arbitrators possess the qualifications required by this procedure. However, the parties will accept lists which include arbitrators that are not local to the jurisdictions in question to the extent that qualified local arbitrators are not available.

8.  Date and Time of Arbitration Hearing – The parties may agree on an arbitrator as well as a date and time for the arbitration hearing. However, if the parties fail to agree before the appointment of an arbitrator, the arbitrator shall set the time and date of the arbitration hearing. The ADR organization shall notify the parties of the arbitration hearing date at least

14 calendar days in advance. Unless the parties agree otherwise, the arbitrator shall select a date no later than 45 calendar days after the appointment of the arbitrator by the ADR organization.

9.  Length of Hearing –The arbitrator shall control the duration of the arbitration hearing and shall limit the length of the arbitration hearing to two 8-hour days (16 hours total).

10.  Place of Hearing – Unless the parties agree otherwise, or the arbitrator directs otherwise, the parties shall use the ADR organization office nearest to the employee's work location to arbitrate the covered claims. If the appropriate office is not available on the scheduled arbitration hearing dates, the ADR organization will arrange for the rental of an arbitration hearing room which is mutually convenient.

11.  Discovery – Discovery is the process by which parties to a pending covered claim obtain certain non-privileged information in possession of the other party, which is relevant to the proof or defense of the covered claim, including information concerning the existence, description, nature, custody, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any such matter. Consistent with the expedited nature of arbitration, discovery is subject to certain limitations set forth below, including the requirement that the parties shall complete all discovery no later than 14 calendar days prior to the start of the arbitration hearing.

  • Disclosure of Witnesses and Exhibits – At least 30 calendar days before the arbitration hearing, each party shall provide written notice to the other party of the names and addresses of any expert witnesses the party intends to call at the arbitration hearing, as well as the names and addresses of attorneys who will attend the hearing.

    Each party shall also communicate in writing to the other party at least 10 business days before the arbitration hearing the names of all witnesses other than expert witnesses that the party intends to call to testify at the arbitration hearing.

    Within 14 calendar days before the arbitration hearing, each party shall give to the other a copy of all exhibits it intends to use at the arbitration hearing.

  • Prohibition against Obtaining Information outside Formal Discovery Process – Employees and their attorneys shall restrict their discovery of Company documents, witnesses, and other information to the submission of formal written requests to the

26

RESOLVE Administrator. Employees and their attorneys are prohibited from interviewing or otherwise questioning other Company employees without first obtaining the written consent of the RESOLVE Administrator.

Any employee who is questioned by another employee or by someone else on behalf of another employee concerning another employee's claim, shall not respond to such questioning or provide information or documents to such individual but should direct the inquiring individual to the RESOLVE Administrator. Under no circumstances shall employees directly or indirectly attempt to obtain copies of the Company's proprietary documents, except by written request to the RESOLVE Administrator.

- Protective Orders – The arbitrator may issue protective orders in response to a request by either party or by a third-party witness. Such protective orders may include, but are not limited, to sealing the record of the arbitration hearing, in whole or in part, to protect the privacy, trade secrets, proprietary information, and/or other legal rights of the parties or the witnesses.

- Discovery Disputes –The arbitrator shall have the authority, for good cause shown by either party, to increase the number of discovery requests otherwise permitted by this procedure. In addition, the arbitrator shall decide any discovery disputes concerning depositions, or the production of relevant documents and other information. Neither party shall communicate with the arbitrator unless such communication is in the presence of the other party. If either party wants to bring a discovery dispute to the arbitrator's attention, the party must arrange through the ADR organization for a teleconference with the arbitrator and the other party.

  If the arbitrator is unable to make a ruling at the end of the teleconference, the arbitrator may schedule a meeting with the parties to resolve the discovery dispute. The party seeking discovery must bring the discovery dispute to the attention of the arbitrator. The arbitrator shall make a ruling, which shall be final and binding, not later than 14 calendar days before the date of the arbitration hearing.

- Depositions – Each party may depose up to two individuals for a total deposition time of not more than eight hours. Individuals selected for deposition must be likely to have substantial information about the matter in question.

27

- General Limitations on the Obligation to Produce Documents and Respond to Interrogatories – Subject to the specific limitations below, concerning requests for documents and interrogatories, either party may request information and/or documents from the other party necessary to support the party's case. The parties must make such requests in a single document and send it to the other party at least 30 calendar days in advance of the arbitration hearing.

  Neither party shall be required to provide any information to the other party in response to requests for information received less than 30 calendar days before the arbitration hearing. The parties must respond to timely requests for information within 14 calendar days of the parties' receipt of such request for information. Each party shall be required to provide only as much information and/or documents to the requesting party as the producing party can reasonably locate and assemble within an eight-hour time period.

  If the total time for locating and assembling such information would exceed eight hours, the party that received the request will ask the other party to modify the request to comply with the eight-hour limit. If the requesting party fails to modify its request for information to come within the eight-hour limit, the producing party shall solely determine the nature and amount of the requested information which the producing party will produce subject to the eight-hour limit and shall be relieved of the obligation to provide any additional requested information.

  This procedure does not require either party to provide information to the other party that is proprietary, confidential, privileged, classified, or trade secret information.

- Interrogatories – Each party may submit up to 10 separately numbered written questions that require written answers from the other party. Subparts to questions shall count as separate questions.

- Requests for Documents – Employees may obtain from the RESOLVE Administrator documents concerning his/her employment that are available to employees from their personnel files and medical files. The RESOLVE Administrator will make such documents available to the employee within 7 calendar days of receipt of the employee's written request.

  In addition to documents from the employee's personnel and medical files, each party may submit to the other party a written

28

request for up to five individual documents. Such documents shall be limited to documents which presently exist and do not need to be created by the producing party.

Requested documents may consist of multiple pages, but a single request for the same document, as it relates to multiple employees, is a request for multiple documents, if the document exists separately for each employee. For example, a request for the most recent performance evaluations of all employees in a 25-employee work group is not a request for one document but rather is a request for 25 documents.

12. Recording of the Arbitration Hearing – There shall be no stenographic or electronic record of the arbitration hearing unless one or both parties request the ADR organization to arrange for the preparation of such a record. Either party may request the ADR organization to provide a qualified court reporter to make a stenographic record and transcript of the arbitration hearing. If only one party requests that a record be made, then that party shall pay for the entire cost of the record. If both parties want access to the record, the parties shall share the cost equally.

13. Subpoenas – Each party may subpoena witnesses or documents for the arbitration hearing, pursuant to Section 7 of the Federal Arbitration Act; 9 U.S.C.A. Sections 1-14, or the applicable state arbitration statute.

14. Evidence –The parties may offer such evidence at the hearing as is relevant and material to a determination of a covered claim. The arbitrator shall determine the weight and relevance to be afforded the evidence offered by the parties. This procedure does not require conformity to legal rules of evidence, except for the law applicable to attorney-client privilege, attorney work product, and compromise and offers to compromise. However, the arbitrator shall not receive or consider evidence by affidavit or evidence submitted to the arbitrator after the arbitration hearing, unless the parties agree in writing to the receipt of such evidence.

15. Briefs and Arbitrator's Opinion – Each party will have the opportunity, if desired, to submit a written brief to the arbitrator within 30 calendar days of the close of the arbitration hearing (or receipt of the transcript, if applicable). The parties waive their right to file a brief, unless they notify the arbitrator by the close of the arbitration hearing of their intention to do so. The arbitrator shall be responsible for forwarding a copy of the opposing brief to the other party.

The arbitrator shall issue a written opinion to the parties not more than 30 calendar days after the close of the arbitration hearing, or 30 calendar

days after the arbitrator's receipt of the parties' briefs, whichever is later. The opinion shall be signed by the arbitrator and shall contain: (a) the names of the parties and their representatives; (b) the dates and place of the hearing; (c) a summary of the covered claims arbitrated and decided; (d) the factual and legal reasons for the opinion; and (e) the damages and/or other remedies/relief, if any.

16. Authority of the Arbitrator –The arbitrator shall have the authority to decide discovery disputes, and for good and sufficient cause shown by either party, to increase the number of witnesses and/or the number of discovery requests otherwise permitted by this procedure.

The arbitrator may in connection with the covered claim of a specific employee decide whether the Company has complied with its policies, procedures, rules or practices, and/or whether such policies, procedures, rules, and/or practices are in violation of applicable state or federal law, and in the case of a finding of violation, the arbitrator may, solely with respect to the claimant, order the Company to change the application of its policies, procedures, rules, or practices.

However, the arbitrator shall not change, require the Company to establish, nor diminish the Company's authority to establish or revise its policies, procedures, rules and/or practices. The arbitrator shall decide all covered claims in accordance with the substantive law of the state or the federal circuit, or both, in which the claim arose.  The Arbitrator does not have the authority to decide arbitrability issues – such issues, if necessary, will be decided by the Court.

17. Scope of Award –The arbitrator shall interpret and apply the law of remedies of the state or the federal circuit, or both, in which the claim arose. Except as provided by this procedure above (Authority of the Arbitrator), the arbitrator may grant any remedy or relief that would have been available had the claim been asserted in court.

18. Effect of Arbitrator's Decision – By starting employment with the Company or transferring to the Company on or after the effective date of this procedure (6/1/2000),  Company employees assigned to U.S. facilities, who were hired or rehired by any GE component on or after the effective date of this procedure (6/1/2000), or who are covered by an existing agreement with a GE business or component requiring binding arbitration as the final step of dispute resolution,[2] agree as a condition of employment to waive the right to pursue covered claims in court. They also agree that an arbitrator's award shall be a final, binding, and exclusive determination of their covered claims.

---

[2] Does not include "rehired" employees, who, at the time of filing their claim with RESOLVE, have a Continuity of Service Date earlier than 6/1/2000.

If the Company accepts a former employee's request to resolve his/her covered claims through RESOLVE, the former employee agrees to waive the right to file suit in court against the Company and agrees to accept the arbitrator's award as a final, binding, and exclusive determination of all covered claims.

By continuing to remain employed with the Company or by accepting a transfer to the Company on or after the effective date of this procedure, employees assigned to the Company's U.S. locations who were hired or rehired by any GE business component before the effective date of this procedure, agree to complete RESOLVE, through Level Three, mediation. If the matter is not settled through mediation, current employees will have the option of presenting their claim to either an arbitrator or court. In the event the employee elects arbitration, the arbitrator's award shall be the final, binding and exclusive determination of the claim.

Unless applicable law provides otherwise, the arbitrator's award will not be subject to review or appeal, except as provided by the Federal Arbitration Act, 9 U.S.C.A. Sections 1-14, or by the applicable state arbitration statute.

Neither party shall publish the arbitrator's award, agree to publish the award or arrange for publication of the award. The Company may make internal reports on the success of RESOLVE and the outcome of individual mediations and arbitrations. The award shall have no legal effect on the claims of employees who are not party to the arbitration. Neither party may cite the arbitrator's decision as precedent in any other arbitration, or in any administrative or court proceeding. However, either party may cite the decision to appeal the arbitrator's award and/or to seek dismissal of the same claims in litigation.

19. Costs and Fees –The Company will pay (1) the ADR organization's filing and other administrative fees, except for a $50 initiation fee that shall be paid by the employee; (2) the arbitrator's fee and reasonable travel and living expenses; (3) the expenses of any fact witnesses and the costs of any proofs or expert advice, provided they are produced solely at the direct request of the arbitrator; (4) the cost of renting an arbitration hearing room; and (5) the employee's salary or wages, if still employed by the Company, for the time spent at the arbitration hearing.

The Company shall pay the fees and expenses of the arbitrator by making such payments directly to the ADR organization. The ADR organization shall then pay the arbitrator without disclosing the source of such payments. To avoid disclosing to the arbitrator the source of the payment of his/her fees and expenses or other costs of arbitration, all references to

the "costs and fees" of the RESOLVE procedure shall be redacted from copies of this procedure which are provided to the arbitrator.

Each party shall pay its experts' and/or attorneys' fees, unless the arbitrator awards reasonable experts' and/or attorneys' fees to the employee as a "prevailing party" under applicable law.

20. Settlement Agreement & Release – If the parties reach an agreement to resolve the employee's claims prior to the issuance of the arbitrator's decision, the parties will, within 30 calendar days of such agreement, enter into a signed settlement agreement and release of all claims against the Company and its representatives related to the employee's employment.

## IV.  For More Information Contact:

- **The RESOLVE Web Site found on GE Capital's Employee Services page.**
- **Your Human Resource Representative**
- **Your Manager**

**Appendix Information**

Appendix A - RESOLVE Program Submission Forms

- Level One  (Forms LV1A, LV1B)
- Level Two  (Forms LV2A, LV2B)
- Level Three  (Forms LV3A)
- Level Four  (LV4A)

Appendix B-  Submission to Mediation (Form LV3B)
Appendix C -  Mediation Confidentiality Agreement (Form LV3C)
Appendix D -  Submission to Arbitration (Form LV4B)

**You may obtain copies of the appendices from**:

- The GE Capital RESOLVE Web Site:

    http://web.capital.ge.com/hrweb/es/resolve/

- Your HR Representative



**GE Capital Services**



November 26, 2001

_ROGER SCOTT_
7201 S. PAXTON
CHICAGO, IL 60649

Dear ROGER:

Xerox Capital Services ("XCS"), a joint venture established between Xerox Corporation and General Electric Capital Corporation, is pleased to offer you the Collections/Receivables position, reporting to James Sorci at a gross annual salary of $28,091. This position is considered an Associate and your office will be located in PARK RIDGE, IL. As an employee of XCS, you will also be eligible to participate in the General Electric Company's comprehensive set of benefit plans. Your Xerox service credit, as of 12/31/01 will be carried over to XCS for participation and vesting in GE Benefits. Your start date is planned for January 1, 2002.

This offer is contingent upon certain conditions described in the "Acknowledgement – Conditions of Employment", which was sent separately. Please indicate your acceptance by signing and returning it with acceptance of your offer. Your acceptance or rejection of this offer will constitute your voluntary resignation from Xerox Corp. effective the day before your XCS employment would begin.

This offer is also contingent upon the closing of the transactions contemplated by that certain Framework Agreement dated September 11, 2001 between Xerox Corporation and General Electric Capital Corporation. The closing of such transactions is subject to completion of due diligence, negotiation, execution and delivery of definitive documents and satisfaction of conditions precedent.

If you are on Xerox approved Short-term disability (STD), Family Medical Leave (FMLA) or Personal Leave of Absence less than 90 days (LOA) and if you return to work on or before 5/31/02, your first day of XCS employment will be the day following your return to and termination from Xerox. This offer of employment will be void and you will not become an XCS employee if you are not employed and active at Xerox Corporation on 12/31/01 for any reason, including retirement or resignation (other than STD, FMLA or LOA as described above).

I look forward to having you as a member of the XCS organization and believe that this position will provide you with the kind of challenge and career growth you are seeking.

Please indicate you acceptance of this position by returning the signed original and other required documents to Caryn Feinstein at 4058-B2 by December 17, 2001.

Sincerely,

Kenny R. Baugher
President
Xerox Capital Services

Attachments

Exhibit 3

Acknowledgment - Conditions of Employment (*Action and Signature Required*)
Employee Proprietary Agreement  (*Action and Signature Required*)
Integrity: Spirit & Letter Handbook (sent under separate cover)
RESOLVE Handbook  (sent under separate cover)

Please signify your acceptance or rejection of this offer letter:

_Roger J. Scott_          _12/11/01_
Signature    I accept this offer        Date

_____          _____
Signature     I reject this offer        Date

## ACKNOWLEDGMENT
## CONDITIONS OF EMPLOYMENT

**Instructions:** please read the contents of this **ACKNOWLEDGMENT** and the documents it references carefully. This offer of employment is contingent upon your acceptance of the conditions of employment described below. If you accept these conditions, please sign in the space provided at the bottom of this form, and return it with the signed offer letter to the Human Resources Manager indicated in your offer letter.

1. I acknowledge that the offer of employment made to me is contingent upon meeting all employment requirements, including but not limited to the following:

   - My review and agreement to the enclosed Employee Innovation and Proprietary Information Agreement (Form FN 348-C), which must be signed and returned with my signed offer letter.

   - I have received the guide to GE policies, "Integrity: The Spirit & Letter of Our Commitment." I understand that every employee is required to comply with the policies described in the guide. When I have a concern about a possible violation of GE policy, I will report the concern to a manager, a compliance resource within my business, company legal counsel, an ombudsperson or another contact listed in the guide.

   - I have received and reviewed a copy of the "RESOLVE Program Handbook." I agree to resolve disputes in accordance with the terms of the "RESOLVE Guidelines" for Employees of GE Capital and its subsidiaries. THUS, I AGREE, AS A CONDITION OF EMPLOYMENT, TO WAIVE THE RIGHT TO PURSUE COVERED CLAIMS (AS DEFINED IN THE GLOSSARY IN THE RESOLVE GUIDELINES AND HANDBOOK) IN COURT AND TO ACCEPT AN ARBITRATOR'S AWARD AS THE FINAL, BINDING, AND EXCLUSIVE DETERMINATION OF ALL COVERED CLAIMS.

2. I acknowledge that the statement of an annual salary in the confirmation letter is for convenience of computation only and does not imply a guarantee of employment for any specific period, all employment with XCS is at will.

3. I agree to reimburse XCS for any outstanding monies owed XCS that have not been repaid by the time employment is terminated. I further authorize the XCS, to the extent permitted by law, to deduct and offset any payments, including but not limited to payments for wages, bonuses, expenses, or vacation pay, otherwise owed to me upon termination of employment. If these deductions are insufficient, I agree to reimburse the XCS for the balance.

I accept the conditions of employment described above:

Signature: _Roger Scott_    Date: _12/11/01_

Exhibit 4

# RESOLVE

## Guidelines for U.S.-Based Employees of

## GE Commercial Finance And Its Subsidiaries

**Issue Date:**     June 1, 2000

**Issued By:**     Carol Anderson – Senior Vice President Human Resources

**Revision Date:**     February 1, 2005

Exhibit 5

## SPECIAL NOTICE TO ALL COVERED EMPLOYEES
## OF GE CAPITAL AND ITS SUBSIDIARIES

THIS PROCEDURE IS A WRITTEN AGREEMENT FOR THE RESOLUTION OF EMPLOYMENT DISPUTES, PURSUANT TO THE FEDERAL ARBITRATION ACT, 9 U.S.C.A. SECTIONS 1-14.

### CURRENT EMPLOYEES OF GE CAPITAL AND ITS SUBSIDIARIES

BY CONTINUING EMPLOYMENT WITH GE CAPITAL OR ONE OF ITS SUBSIDIARY COMPANIES, ("THE COMPANY"), INCLUDING ALL FUNCTIONS, OPERATIONS AND BUSINESSES ON OR AFTER THE EFFECTIVE DATE OF THIS PROCEDURE, ALL COVERED EMPLOYEES ASSIGNED TO THE COMPANY AT A U.S.BASED OFFICE, WHOSE CONTINUITY OF SERVICE DATE WAS BEFORE THE EFFECTIVE DATE OF THIS PROCEDURE (6/1/2000), AGREE AS A CONDITION OF EMPLOYMENT TO ATTEMPT TO RESOLVE THEIR DISPUTES USING THE FIRST THREE LEVELS (THROUGH MEDIATION) OF THE COMPANY'S RESOLVE PROCEDURE. IF THE DISPUTE REMAINS UNRESOLVED FOLLOWING MEDIATION, THE EMPLOYEE WILL HAVE THE OPTION OF PURSUING HIS OR HER CLAIM THROUGH BINDING ARBITRATION OR PURSUING THE MATTER IN COURT.

### NEW EMPLOYEES OF GE CAPITAL AND ITS SUBSIDIARIES

BY ACCEPTING AN OFFER OF EMPLOYMENT ON OR AFTER THE EFFECTIVE DATE OF THIS PROCEDURE (6/1/2000) ALL COVERED EMPLOYEES ASSIGNED TO THE COMPANY AT A U.S. BASED OFFICE, AGREE, AS A CONDITION OF EMPLOYMENT, TO WAIVE THE RIGHT TO PURSUE COVERED CLAIMS IN COURT on an individual or class action basis, AND TO ACCEPT AN ARBITRATOR'S AWARD AS THE FINAL, BINDING, AND EXCLUSIVE DETERMINATION OF the employee's personal COVERED CLAIMS.

### EMPLOYEES TRANSFERRING TO GE CAPITAL OR ITS SUBSIDIARIES

A. BY TRANSFERRING TO A U.S. BASED OFFICE OF GE CAPITAL OR ONE OF ITS SUBSIDIARIES AFTER THE EFFECTIVE DATE (6/1/2000), THE FOLLOWING TWO CATEGORIES OF COVERED EMPLOYEES AGREE, AS A CONDITION OF EMPLOYMENT, TO WAIVE THE RIGHT TO PURSUE COVERED CLAIMS IN COURT AND TO ACCEPT AN ARBITRATOR'S AWARD AS THE FINAL, BINDING, AND EXCLUSIVE DETERMINATION OF ALL COVERED CLAIMS. THE TWO CATEGORIES ARE:

1. ANY EMPLOYEE WHOSE DATE OF HIRE (CONTINUITY OF SERVICE DATE) WITH ANY GE BUSINESS OR COMPONENT OR SUBSIDIARY IS ON OR AFTER THE EFFECTIVE DATE (6/1/2000); AND

2

2. ANY EMPLOYEE, REGARDLESS OF DATE OF HIRE, WHO IS COVERED BY AN EXISTING AGREEMENT TO ACCEPT AN ARBITRATOR'S AWARD AS THE FINAL, BINDING AND EXCLUSIVE DETERMINATION OF ALL COVERED CLAIMS, AND TO WAIVE THE RIGHT TO PURSUE COVERED CLAIMS IN COURT.

B. BY TRANSFERRING TO A U.S.-BASED OFFICE OF GE CAPITAL OR ONE OF ITS SUBSIDIARIES AFTER THE EFFECTIVE DATE (6/1/2000), EVERY EMPLOYEE WHO HAS A DATE OF HIRE BEFORE THE EFFECTIVE DATE AND WHO IS NOT COVERED BY AN AGREEMENT TO ACCEPT ARBITRATION AND WAIVE LITIGATION AGREES, AS A CONDITION OF EMPLOYMENT, TO ATTEMPT TO RESOLVE HIS OR HER DISPUTES USING THE FIRST THREE LEVELS (THROUGH MEDIATION) OF THE COMPANY'S RESOLVE PROCEDURE. IF THE DISPUTE REMAINS UNRESOLVED FOLLOWING MEDIATION, THE EMPLOYEE WILL HAVE THE OPTION OF PURSUING HIS OR HER CLAIM THROUGH BINDING ARBITRATION OR PURSUING THE MATTER IN COURT.

THIS PROCEDURE IS THE SOLE AND COMPLETE AGREEMENT BETWEEN THE COMPANY AND COVERED COMPANY EMPLOYEES IN U.S. BASED OFFICES FOR THE RESOLUTION OF EMPLOYEE DISPUTES. THIS PROCEDURE, HOWEVER, DOES NOT CHANGE THE EMPLOYMENT-AT-WILL RELATIONSHIP BETWEEN THE COMPANY AND ITS EMPLOYEES. THE COMPANY RESERVES THE RIGHT TO AMEND OR TERMINATE THIS PROCEDURE.

## I. PURPOSE

The dispute resolution procedure ("RESOLVE") provides the Company and its non-represented Company employees based in the U.S. a process to resolve concerns/claims arising out of their employment.

## II. GENERAL

### A. Summary of the RESOLVE Procedure

Employees are encouraged[1] to resolve disputes informally, either through discussions with their immediate manager, others in the management chain, a human resources (HR) representative or an ombudsperson. However, occasionally informal efforts do not resolve an employee's concern/claim, and in such cases an employee may submit his or her concern/claim to RESOLVE.

---

[1] The phrasing adopted in this procedure addresses use of Resolve by employees as, predominately, employment disputes involve employees bringing claims against their employer. This procedure, however, is expressly intended to also cover claims the Company may seek to bring against an employee, consistent with the limitations set forth respecting both "covered claims" and "excluded claims".

RESOLVE is a structured dispute resolution procedure that consists of two internal levels of review followed, if the concern is a covered claim (see II.L.), by outside mediation (Level Three) and if necessary, arbitration (Level Four). The levels of RESOLVE are in a logical sequence and employees must complete each level of the process before proceeding to the next level. However, if the Company agrees, the employee may submit his or her concern/claim initially to RESOLVE at Level Two and skip Level One.

At internal Levels One and Two, an employee and the company representative meet in an attempt to resolve the employee's concern/claim. If an employee is not satisfied with the outcome of Levels One and Two, and the concern is a covered claim (see II.L.), the employee may submit the claim to Level Three.  At Level Three an outside mediator helps the employee and the Company open lines of communication in an attempt to facilitate resolution. If an employee and the Company do not reach resolution at Level Three, then:

- Current Company employees (who began their employment with a GE company (Continuity of Service Date) prior to June 1, 2000) have a choice. They may either submit the matter to binding arbitration or pursue the matter in court.

- Company employees who began their employment with one of the GE Capital companies on or after June 1, 2000 must submit their claims to binding arbitration.

- GE Employees who transfer into a GE Capital company after June 1, 2000 and who (i) have a GE continuity of service date on or after June 1, 2000 or (ii) who have agreed to binding arbitration under the "RESOLVE", or similar program of another GE business or component, must also submit their claims to binding arbitration.

- Other transferring Employees have the same choice as current Company employees.

At Level Four an outside arbitrator provides the employee and the Company with a ruling on the merits of the employee's covered claim(s). Both mediation and arbitration will be administered by the mutually agreed upon professional ADR organization.[2]

## B. RESOLVE'S Relationship to Other Appeal Procedures

Employees are encouraged[3] to use informal means of resolving an issue before formally submitting their concerns/claims to RESOLVE. In addition to casual day-to-day

---

[2] All references made to the "AAA" or "Association" may be taken to mean any alternate dispute resolution service otherwise acceptable to the Company and employee.
[3] See Footnote in Section IIA.

discussions between employees and their managers, Company employees may contact the Ombuds office. RESOLVE is not intended to substitute for reporting compliance concerns (as contrasted with personal claims or issues) to the Ombuds office.

If an employee does not resolve his or her concerns/claims with the Company by using these informal procedures, or if the employee elects not to use these other procedures, the employee may formally submit his or her concerns/claims to RESOLVE. However, an employee may not use these other procedures for the same claim after submitting his or her concerns/claims to RESOLVE.

## C.  Covered Employees.

All U.S. based Company employees not represented by a union.

Special Note: Registered Employees
For regulatory reasons, registered employees have different options available to them for resolving claims past the mediation stage.  Registered employees are bound by the rules of the NASD, as described in the U-4 agreement.  This agreement states that all claims must be brought to mandatory arbitration before the NASD.  However, as of January 1, 1999, registered employees are not required to take discrimination or harassment claims to mandatory binding NASD arbitration -- therefore, these claims should be handled under RESOLVE.

## D. Duration and Modification

The Company may at its sole discretion modify or discontinue RESOLVE at any time by giving employees 30-calendar days notice[4]. If there are conflicts between the requirements of this procedure and other Company publications or statements by Company representative(s), the requirements of this procedure are controlling. This procedure constitutes the sole agreement between the Company and its employees concerning the requirements of RESOLVE and may not be modified by written or oral statements of any the Company or Company representative, except by a written statement signed by the Company's Senior Vice President of Human Resources. An employee shall complete the processing of any concern/claim pending in RESOLVE at the time of an announced change, under the terms of the procedure as it existed when the concern/claim was initially submitted to RESOLVE.

## E.     Current Employees

For the purpose of this procedure, "current employees" are covered employees before the date of this procedure (6/1/2000) and who continue their employment with the Company.

---

[4] Any deadline that falls on a weekend or holiday will be extended to the next business day.

5

Current employees whose employment terminates on or after the effective date of this procedure continue their status as current employees solely for purposes of this procedure. **By virtue of their continuing their employment with the Company on or after the effective date of this procedure (6/1/2000), current employees are deemed to have accepted the requirement to complete at least the first three levels of the RESOLVE Program (through mediation).** If the issue remains unresolved following mediation, current employees have the option of submitting the matter to binding arbitration, pursuing the matter in court, or withdrawing their claim from RESOLVE.

### F. New Employees

For the purpose of this procedure, new Company employees are employees hired or rehired[5] by the Company at any U.S. based office, on or after the effective date of this procedure (6/1/2000). However, "rehired" employees with a Continuity of Service Date earlier than 6/1/2000 are considered to be "current employees."

New employees agree, as a condition of employment, to participate in RESOLVE as the exclusive alternative to filing covered claims in court. New employees who have not resolved their covered claims with the Company before the arbitration level of RESOLVE must proceed to arbitration and the arbitrator's decision shall be the final, binding, and exclusive determination of all covered claims. New employees whose employment terminates on or after the effective date of this procedure continue their status as new employees solely for purposes of this procedure.

### G. Transferred Employees

For the purpose of this procedure, "Transferred Employees" are employees of General Electric Company or any of its subsidiaries other than the Company, who transfer to the Company on or after the Effective Date of this procedure (6/1/2000). Transferring Employees who accept a transfer to GE Commercial Finance agree by virtue of this acceptance to be bound by the RESOLVE procedure in accordance with its terms in respect of all claims which arise while working as a Company employee following their transfer.

Transferring Employees with Company Continuity of Service Dates before the Effective Date of this Procedure are deemed to have accepted the requirement to complete at least the first three levels of the RESOLVE Program (through mediation). If the issue remains unresolved following mediation, these transferring employees have the option of submitting the matter to binding arbitration, pursuing the matter in court, or withdrawing their claim from RESOLVE.

---

[5] Does not include "rehired" employees, who, at the time of filing their claim with Resolve, have a Continuity of Service Date earlier than 10/15/98.

Transferring employees with continuity of service dates on or after 6/1/2000, or who are covered by an existing agreement with a GE business or component to accept binding arbitration, must proceed to arbitration and the arbitrator's decision shall be the final, binding and exclusive determination of all covered claims.

## H.  Former Employees

For the purpose of this procedure, former employees are individuals who were assigned to the Company at a U.S. based office and who were no longer employed by the Company on the effective date of this procedure (6/1/2000).

Former employees may request the Company's agreement to resolve covered claims through RESOLVE. The Company reserves the right to accept or reject, for any reason, the request of any former employee to submit his/her covered claims to RESOLVE. The Company will consider accepting for RESOLVE only the covered claims of former employees which are based on actions that occurred while these individuals were employed by the Company.

A condition of the Company's acceptance of a former employee's request to use RESOLVE to resolve covered claims shall be the former employee's waiver of the right to pursue such covered claims in court and agreement to accept the arbitrator's award as the final, binding, and exclusive determination of such covered claims.

## I. Filing Charges with Government Agencies

Nothing in this procedure is intended to discourage or interfere with the legally protected rights of employees to file administrative claims or charges with government agencies. Such agencies include, but are not limited to, the Equal Employment Opportunity Commission (EEOC), the Office of Federal Contract Compliance Programs (OFCCP), various state agencies responsible for Equal Employment Opportunity, and the National Labor Relations Board (NLRB).

For example, the Company recognizes the exclusive jurisdiction of the National Labor Relations Board concerning issues that arise under the National Labor Relations Act. This procedure does not apply to charges under the National Labor Relations Act and does not prevent employees from filing unfair labor practice charges with the NLRB.

However, if an employee files a charge with the EEOC, OFCCP, or with state or municipal agencies, the Company may request the agency to defer its processing of the charge until the employee and the Company have completed the RESOLVE procedure.

## J. RESOLVE Administrator

The RESOLVE Administrator will:

7

- Coordinate the receipt of employees' concerns/claims with managers and with HR representatives;
- Answer questions about RESOLVE;
- Monitor the Company's and employee's compliance with all time requirements;
- Schedule mediation meetings and arbitration hearings at Levels Three and Four;
- Schedule training sessions for management;
- Process requests for production of information;
- Schedule the Company's participation in pre-arbitration communications with arbitrators and with employees regarding specific discovery issues;
- Work with Company representatives, employees, their attorneys, and the ADR organization to select and schedule mediators and arbitrators;
- Process requests for reimbursement of experts' and attorneys' fees;
- Process the terms and conditions of RESOLVE;
- Function as the Company's administrative liaison with the professional ADR organization; and
- Process requests for extensions of the procedure's deadlines.

## K. The Ombuds Office

The Company's Ombuds Offices can provide information to employees about the Company's policies, practices, and procedures, including RESOLVE. However, the Ombudsperson is an informal resource to employees and does not participate in formal RESOLVE proceedings.

## L. Covered Claims

While employees may submit to the appropriate Company representatives any employment-related concern/claim at internal Levels One and Two, only covered claims will be accepted and processed at Levels Three and Four. Covered claims are personal, employment-related claims against the Company or individual managers acting within the scope of their employment that a court in the jurisdiction in question would have the authority to decide under any municipal, state, or federal statute, regulation, or application of common law. Covered claims do not include excluded claims described below.

Covered claims are personal claims which the Company allege the violation of certain legally protected rights, in a jurisdiction which recognizes such rights, and include, but are not limited to the following:

- Claims relating to compensation, leaves of absence, and layoffs and/or plant closings;
- Claims relating to involuntary terminations, such as layoffs and discharges (including constructive discharges);

8

- Employment discrimination and harassment claims, based on, for example, age, race, sex, religion, national origin, veteran status, citizenship, handicap/disability, or other characteristic protected by law;
- Retaliation claims for legally protected activity, and/or for whistleblowing;
- Claims of breach of contract or covenant (express or implied) and/or promissory estoppel;
- Tort claims (such as intentional torts, negligence, defamation, invasion of privacy, infliction of emotional distress, etc.);
- Claims of violation of public policy;
- Claims of violation of this procedure, except for violation of the confidentiality requirements of this procedure; and/or
- Claims that the Company at its sole discretion determines are covered claims.

## M. Excluded Claims

Excluded claims are claims which allege concerns such as the following. These claims are excluded from Levels Three and Four of RESOLVE:

- Claims which do not allege legally protected or enforceable rights in the jurisdiction in question;
- Claims based on alleged violations of GE Policy 20.10 (Working with Government Agencies), including, but not limited to, alleged violations of the federal False Claims Act (except retaliation claims) or federal procurement laws or regulations (These should be reported to an Ombudsperson.);
- Claims for benefits under a Company benefit plan covered by the Employment Retirement Income Security Act of 1974 (ERISA), or any other claims covered by ERISA; including claims of service miscalculation to the extent such calculations determine eligibility for, or level of benefits, under, a plan governed by ERISA.
- Claims for workers' compensation or unemployment compensation benefits;
- Claims seeking injunctive relief and related to an alleged breach of an employee's non-competition, non-solicitation, fiduciary or confidentiality obligations;

- Claims of theft, misuse or misappropriation of proprietary information or intellectual property or seeking injunctive relief involving patents, trademarks, other intellectual property or GE's "Employee's Innovation and Proprietary Information Agreement";

- Claims related to ownership of intellectual property covered by GE's "Employee's Innovation and Proprietary Information Agreement";

Claims the resolution of which require jurisdiction over third parties that are not parties to this Resolve procedure.

- 
- Claims under the National Labor Relations Act;
- Claims against individual managers which do not involve conduct within the scope of the managers' employment; and/or
- Claims which seek to establish or modify the Company's policies or procedures.

The exclusion of Company benefit plans above precludes a claim alleging a violation of such plans but does not prevent an arbitrator from including in an award, in connection with a covered claim, the monetary value of lost Company benefits caused by a wrongful termination of employment or other violation of law.

### N. Exhaustion of Resolution Levels

Current Company employees and the Company must satisfy the requirements at each level, through Level Three, except (if the parties agree) Level One, before proceeding to the next level. New Company employees and transferring employees are similarly required to seek resolution at all levels, except Level One if the parties agree, before proceeding to the next and are required to proceed through Level Four, Arbitration. For example, no employee may proceed to mediation at Level Three before completing internal Level Two, nor can an employee proceed to arbitration at Level Four before completing mediation (Level Three). Of course, the parties may complete RESOLVE by resolving concerns/claims at any level.

While the Company encourages employees to attempt to resolve disputes at Level One, the Company recognizes that there may be appropriate situations where employees would prefer to initiate their concerns/claims at Level Two. When an employee submits a concern/claim initially to RESOLVE, the employee may request on the **submission form** (Appendix A –Form LV1A) to skip Level One. The RESOLVE Administrator will advise the employee before the first scheduled meeting whether the Company agrees to discuss the concern/claim initially at Level Two. In all appropriate cases, however, employees will be encouraged by the RESOLVE Administrator to engage in initial discussions with his or her direct manager prior to engaging in Level One or Level Two proceedings.

An employee's failure to submit covered claims at all levels of RESOLVE within the deadlines established by this procedure constitutes a failure to complete RESOLVE, unless the parties agree to an extension of deadlines or the arbitrator rules that such failure was the result of excusable delay. **Failure of a current**

**employee to complete Level One (unless waived), Level Two and Level Three of RESOLVE prohibits the employee from filing covered claims in court.**

### O. Statutes of Limitations and Administrative Agency Filing Deadlines

In order to submit covered claims to Level Three of RESOLVE, employees must have submitted such claims to Level One (Level Two if Level One is waived) before the expiration of the applicable statutes of limitations and administrative agency filing deadlines for such covered claims. However, employees may process concerns/claims through Levels One and Two without regard to whether or not applicable statutes of limitations and administrative agency filing deadlines have expired.

The Company's failure to reject a covered claim which an employee has submitted to Level Three of RESOLVE after the expiration of the applicable statutes of limitations or administrative agency deadlines, shall not waive the Company's right to assert as a defense at a later time the untimeliness of a covered claim.

A statute of limitations is the time period within which a person must file a claim in court. The length of the applicable statute of limitations is determined by the legal nature of the claim. Different statutes of limitations apply to different claims. Courts do not have authority to decide claims or grant relief with respect to claims filed after the expiration of applicable statutes of limitations. The time period for filing a claim in court normally begins with the occurrence of the event or conduct which is the basis of a person's claim. The time period for filing the claim in court ends upon the expiration of the time period established by the applicable statute of limitations.

Administrative agency filing deadlines can affect an employee's legal rights in different ways. For example, some statutes require individuals to file administrative claims with government agencies (e.g., EEOC) as a prerequisite for filing such claims in court. In this context, administrative agency filing deadlines are the time periods within which individuals must file administrative claims with federal, state, or local agencies. Such deadlines may also apply to the time period for filing a claim in court after a government agency has discontinued its investigation of the claim.

An employee's initial submission of a covered claim to RESOLVE before the expiration of the applicable statute of limitations or agency administrative filing deadlines will stop the further running of the statute of limitations and the administrative agency filing deadlines. Consequently, the time required to complete RESOLVE will not be included in the running of the applicable statute of limitations or administrative agency filing deadline, if a current employee subsequently elects to file a covered claim in court after completing Level Three

of RESOLVE. However, on the seventh day after the date of the Company's written response at Level Three, if the current employee has not elected to pursue the matter through binding arbitration, the applicable unexpired statutes of limitations and administrative agency filing deadlines shall restart and continue to run.

Employees shall be solely responsible for determining the correct statutes of limitations and/or administrative agency deadlines and for filing claims in the appropriate jurisdictions. However, if an employee has not completed all four levels of RESOLVE, the Company may ask the agency or court to defer processing until all four levels are completed.

### P. Deadlines Established by this Procedure

This procedure establishes deadlines for certain actions. Examples include, but are not limited to, deadlines for submitting concerns/claims to different levels of RESOLVE, the Company's issuance of written responses, and completion of discovery at the arbitration level. Deadlines are established by this procedure rather than by law and are distinct from statutes of limitations.

Both parties will make a good-faith effort to comply with the deadlines in this procedure. The Company's failure to respond at any level of this procedure to the employee's submission of a concern/claim before expiration of the applicable deadline shall constitute a denial of the concern/claim with the exception of Level Four from the date of the deadline and enable the employee to submit his/her concern/claim at the next level.

An employee's failure to adhere to the stated deadlines shall only be excused if approved by request to the Resolve Administrator or arbitrator for good and sufficient cause. It shall be the employee's burden to establish such good and sufficient cause to the satisfaction of the Resolve Administrator (Steps I to III) or the Arbitrator (Level IV). The unexcused failure of the employee to adhere to any deadline may serve as a basis for an appropriate sanction or an assessment against any award or settlement of penalty fees by the Arbitrator.

If a party fails to meet a deadline at either Level II or Level III, and remains in default for 30 days without good and sufficient cause, the claim will be deemed abandoned and any prior tolling will be forfeited. In the event the party subsequently wishes to pursue the abandoned claim, the claim must be pursued as a new claim. Abandonment of any claim shall not relieve the employee or Company from its' obligation to first proceed through the Resolve process on a timely basis prior to commencing litigation.

The arbitrator shall have the exclusive authority to decide any dispute raised at Level Four between the employee and the Company concerning the employee's compliance with the deadlines of this procedure. The arbitrator's authority

includes, but is not limited to, deciding whether to excuse an employee's failure to comply with any of the deadlines in this procedure, the imposition of an appropriate sanction and/or the assessment of penalty fees, if the Company raises such failure as a defense to the employee's claims at Level Four.

## Q. Severability

If any term, condition or provision of this procedure is found by a court of competent jurisdiction to be invalid, void or unenforceable in any jurisdiction, such term, condition or provision shall, as to such jurisdiction, be ineffective only to the extent of such invalidity or unenforceability, without invalidating (i) the remaining provisions of this procedure, which shall remain in full force and effect, and shall in no way be affected, impaired or invalidated, or (ii) the validity or enforceability of such term, condition or provision in any other jurisdiction.

## R. Agreement to Arbitrate in Interstate Commerce

This procedure is an agreement to arbitrate pursuant to the Federal Arbitration Act, 9 U.S.C.A. Sections 1-14, or if that Act is held to be inapplicable for any reason, the arbitration law in the state in which the arbitration hearing is held. The parties acknowledge that the Company is engaged in transactions involving interstate commerce and that the employees eligible to participate in RESOLVE are not employed by the Company as seamen, railroad employees, or other class of worker engaged in foreign or interstate commerce.

## S. Retaliation is Prohibited

Company employees at all levels are prohibited from retaliating against anyone for submitting a concern/claim to or otherwise participating in RESOLVE.

## T. Consolidation of Additional Covered Claims by the Same Employee

The employee is solely responsible for including in the RESOLVE submission forms all covered claims which arise from same set of facts. Consequently, if an employee wants to raise, or raises in any manner at any time during the RESOLVE process, new covered claims or new facts which give rise to new covered claims, the employee shall include such claims and/or facts in a new **submission form** (**Appendix A – Form LV1A**) at Level One. The Company at its sole discretion may consolidate new covered claims at the level of the employee's pending claims, or may elect to address the new covered claims at Level One. The addition of a new covered claim does not alter the requirement that the new covered claim must be submitted initially to RESOLVE by the employee within the statute of limitations for such claim.

## U. Consolidation of Similar Covered Claims by Different Employees

13

If different employees submit covered claims that the Company believes present common facts and legal issues, the Company at its sole discretion may consolidate two or more such covered claims at Level Three (mediation) or Level Four (arbitration). The Company's consolidation of covered claims at these levels of RESOLVE does not alter the requirement that each employee must meet the applicable statutes of limitations for his/her covered claims.

## V. Restrictions against Employees' Obtaining Information Outside Formal RESOLVE Process

Employees and their attorneys must obtain the written consent of the Company's attorney before attempting to question or otherwise obtain from other Company employees documents or other information to support their concerns/claims. Employees or their attorneys who wish to obtain access to Company documents and/or access to other employees must submit a written request to the RESOLVE Administrator.

The request should explain in detail the relevance of the request to the employee's concerns/claims. The RESOLVE Administrator will refer such request to the Company's attorney for evaluation and will respond in writing to the employee. If there is a dispute over the employee's access to Company documents and/or other employees as witnesses, the employee may seek a ruling from the arbitrator after the arbitrator has been appointed.

## W. Claims/Concerns before Effective Date of the Procedure

Current employees are required to use this procedure (through Level Three, Mediation) before litigation and new employees must use this procedure as the exclusive alternative to litigation for covered claims based on events which occurred on or after the effective date of this procedure (6/1/2000).

However, current employees with covered claims based on events that occurred before the effective date of this procedure may request the Company's agreement to resolve such covered claims through RESOLVE. The Company reserves the right to accept or reject, for any reason, the request of a current employee to submit such covered claims to RESOLVE. Such claims shall be limited to covered claims and the employee must submit such covered claims to RESOLVE before the expiration of the statutes of limitation applicable to such covered claims. A condition of the Company's acceptance of an employee's request to use RESOLVE to resolve such covered claims shall be the employee's waiver of the right to pursue such covered claims in court and agreement to accept the arbitrator's award as the final, binding, and exclusive determination of such covered claims.

14

## III. PROCEDURE AND RESPONSIBILITY

**Preliminary note**: In all appropriate instances employees are encouraged to first discuss their concern/claim with their direct managers before submitting a concern/claim to RESOLVE. Such discussions should normally take place prior to filing at Level One.

### A. Level One

1. Submission of Concerns/Claims – Using the **Level One – Submission Form** (Appendix A ), the employee shall submit his/her concerns/claims to the RESOLVE Administrator and may provide copies to his/her manager and/or to his/her HR representative (or manager or designee). Upon receipt of the employee's concern/claim, the RESOLVE Administrator will confirm receipt of the concern/claim with the employee's immediate manager. The employee should keep a copy of the completed Appendix A and keep a record of the date and names of the individuals to whom Appendix A is submitted.

   Appendix A requires an employee to provide a detailed explanation of his or her concerns/claims, the individuals involved, and what the employee believes is necessary to resolve the concerns/claims.

2. Statutes of Limitations for Submission of Claims —There are no time limits for employees' submission of concerns/claims at Levels One (or if Level One is skipped, then at Level Two). However, the Company shall not accept covered claims at Level Three, unless the employee has submitted his/her covered claims at Level One before the expiration of the statutes of limitations applicable to such claims.

3. Scheduling of Level One Meeting within 30 Days –The RESOLVE Administrator will confirm the manager has scheduled a meeting with the employee at Level One on a date not later than 30 calendar days after the Company's receipt of the employee's written submission.

4. Attendees at Level One Meeting – The employee meets with his/her manager. Either the employee or manager may require the attendance of the employee's HR representative (or designee) at the Level One meeting. If there is no HR representative on site, HR participation can be by telephone or videoconference.  No one may attend the meeting other than the employee, his/her manager and, if requested by either party, the employee's HR representative (or manager or designee). If the employee's manager was not directly involved with the events which form the basis of the employee's concerns/claims, the appropriate Company

representatives who were involved in the events may participate in the meeting. While this procedure is not intended to prevent employees from seeking legal advice regarding the employee's concerns/claims, attorneys may not attend Level One meetings.

5. Requests for Documents and Other Information – Employees may obtain from the RESOLVE Administrator documents concerning his/her employment that are by law available to employees from their personnel files and medical files. The RESOLVE Administrator will make such documents available to the employee within 7 calendar days of receipt of the employee's written request.

If the employee believes that he /she needs documents, the employee may request from the Resolve Administrator such documents or other information that are material and relevant to the claim. The Resolve Administrator will, within 7 days, consider the request in good faith and provide such documents or other information that are material and relevant – in keeping with expedited nature of this process and in consideration of the Discovery Guidelines in Section III D 11 applicable to document production - but the Company shall not be required to provide any information that is proprietary, confidential, or contains information about other employees.

6. Meeting Length and Format – Level One will consist of a single meeting not to exceed two hours, unless the employee and manager agree to extend the meeting or to hold additional meetings. At the meeting, the employee shall state the reasons why the Company should resolve the concerns/claims in the employee's favor. In addition to the discussion, the employee may present written information or documents.

7. Recording of the Proceedings -- Neither the employee nor the manager may make a formal record or transcript, or use any electronic recording device at the Level One meeting. However, both the employee and the manager may make handwritten notes during the meeting.

8. Confidentiality and Inadmissibility of Settlement Discussions – Statements by the employee and the Company's representatives in the meeting are understood to be solely for the purpose of reaching a settlement of the employee's concerns/claims and shall be kept confidential by the employee, and conveyed on a need-to-know basis by the Company. However, nothing in this procedure shall restrict the Company's ability to interview witnesses and gather information to evaluate the employee's concerns/claims.

Neither party, unless compelled by law, shall attempt to use statements made by the other party at the meeting in any arbitral, judicial, or other

proceeding to impeach the testimony of the other party's witnesses, or as evidence of: (a) views expressed or suggestions made by another party with respect to a possible settlement of the dispute; (b) admissions made by another party in the course of meeting; (c) proposals made or views expressed by the other party; or (d) the fact that the other party had or had not indicated willingness to accept a proposal for settlement.

9. However, the employee may disclose the contents of the meeting to his/her spouse and attorney, provided they first agree not to disclose such information to others. The Company may disclose the contents of the meeting to appropriate company representative(s) who have a need to know and or its attorneys.

   Notwithstanding this provision or any other confidentiality requirement of this procedure, nothing in this procedure shall prevent employees from communicating or cooperating with any Government investigation into matters which occurred during the RESOLVE procedure or during their employment with the Company.

10. Written Response or Settlement Agreement – Resolution of a concern/claim at Level One will be documented either by the Company's written response or, in certain cases, by a settlement agreement and release. If resolution of the employee's concern/claim includes the payment of money, the awarding of employee benefits, reinstatement or rehire of a terminated employee, a promotion, and/or assignment of any employee to another position, the employee and the Company will enter into a signed settlement agreement and release of all claims against the Company and its representatives related to the employee's employment. In those instances in which the Company asks the employee to sign a settlement agreement and release, the employee should not sign the agreement unless he/she understands and agrees with the terms and conditions of the proposed agreement. If the employee is not satisfied with the Company's written response, or if the employee does not agree with the terms of the proposed settlement agreement, the employee may submit his/her concern/claim to the next level.

11. Company Response within 14 Days – The Company will, subject to the preceding provision (confidentiality, etc.), provide the employee with the Company's written response (Form LV1B) within 14 calendar days of the conclusion of the last Level One meeting.

## B. Level Two

1. Submission of Concerns/Claims – At Level Two, the employee shall use **Level Two – Submission Form** (Appendix A ) to submit his/her

concerns/claims to the RESOLVE Administrator. At Level Two Appendix A requires the employee to provide any additional information regarding his/her concerns/claims, including information which conflicts with the manager's (or HR Manager's) stated reasons for not resolving the employee's concerns/claims at Level One. Employees who are permitted by the Company to submit concerns/claims initially at Level Two shall provide the information required at Level One using the Level One – Submission Form. The RESOLVE Administrator shall immediately forward copies of the employee's concerns/claims at Level Two to the appropriate higher-level manager and HR representative (or designee).

2.  Statutes of Limitations for Submission of Claims – Same as Level One.

3.  7 Days to Submit Concerns/Claims to Level One – The employee must submit his/her concerns/claims at Level Two within 7 calendar days of the date of the Company's written response to the employee at Level One. Employees, who with the Company's written agreement skip Level One and submit their claims initially at Level Two, may not submit their covered claims to Level Three, unless they submitted such claims to Level Two before the expiration of the statutes of limitations applicable to such covered claims.

4.  Scheduling of Level Two Meeting within 30 Days –The RESOLVE Administrator will confirm that the higher-level manager has scheduled a meeting with the employee at Level Two on a date not later than 30 calendar days after the Company's receipt of the employee's written submission.

5.  Attendees at Level Two Meeting –The Level Two meeting shall include the employee, a higher-level manager than the manager who attended the Level One meeting (or designee), and the appropriate HR representative (or designee). If there is no HR representative on site, HR participation can be by telephone or videoconference. In addition, either the employee or higher-level manager may require the attendance of any Company representative who attended the Level One meeting. The Company may also involve, as necessary, other Company representatives at the Level Two meeting. No one else may attend the meeting other than those identified in this paragraph. While this procedure is not intended to prevent either party from seeking legal advice concerning the employee's concerns/claims, attorneys may not attend the Level Two meeting.

6.  Requests for Documents and Other Information – Same as Level One.

7.  Meeting Length and Format – Same as Level One.

18

8.  Recording of the Proceedings -- <u>Same as Level One.</u>

9.  Confidentiality and Inadmissibility of Settlement Discussions – <u>Same as Level One.</u>

10.  Written Response or Settlement Agreement – <u>Same as Level One.</u>

11.  Company Response within 14 Days – <u>Same as Level One.</u>

**C. Level Three -- Mediation/Covered Claims Only**

*Only covered claims shall be processed at Level Three (mediation). Covered claims shall not be processed at Level Three unless the employee submitted such claims to Level One (or Level Two if Level One is waived) before the expiration of statutes of limitations or administrative agency deadlines applicable to such claims.*

1.  Description – Mediation involves an attempt by the parties to resolve their dispute with the aid of a neutral third party not employed by the Company. The mediator's role is advisory. The mediator may offer suggestions but resolution of the dispute rests with the parties themselves. Mediation is a process that seeks to find common ground for the voluntary settlement of covered claims. The structure of the mediation session will be determined by the mediator based on the mediator's judgment of how settlement is most likely to be reached. The Level Three proceedings are confidential and private.

    The mediator may or may not suggest ways of resolving the dispute after listening to both sides, but the mediator may not impose a settlement on the parties. The mediator may also end the mediation whenever, in the judgment of the mediator, further efforts at mediation would not contribute to a resolution of the dispute.

2.  Statutes of Limitations for Submission of Covered Claims –The Company shall not accept covered claims at Level Three, unless the employee submitted his/her covered claims to Level One *(or Level Two if Level One is waived)* before the expiration of the statutes of limitations applicable to such claims.  The inclusion of a disputed claim as a "Covered Claim" does not constitute a waiver of the right to raise a statute of limitation or other appropriate defense in any subsequent procedure.

3.  Submission of Claims to Level Three (Mediation) and Time Limits –The employee shall use **Level Three – Mediation Submission Form** (Appendix A ) to submit his/her covered claims to the RESOLVE Administrator at Level Three, within 30 calendar days of the date of issuance of the Company's written response at Level Two. At Level Three,

Appendix A requires the employee to include all legal claims that arise out of the same facts and to include all facts that support the employee's legal claims, including facts which conflict with the Company's stated reasons for denying the employee's claims at Level Two. In addition, employees are asked to include the dates of each alleged legal violation, the names of individuals who have knowledge about each alleged legal violation and the nature of their involvement, and any documents or other evidence which support the employee's claims.

Within 30 calendar days of the RESOLVE Administrator's receipt of the employee's submission at Level Three, the RESOLVE Administrator shall either reject the claim at Level Three as not being a covered claim, or the RESOLVE Administrator and the employee and/or the employee's attorney shall file with the ADR organization two copies of the Association's form (See, Appendix B) for jointly requesting mediation of covered claims. The request for mediation shall contain a brief description of the nature of the covered claims and the names, addresses, and telephone numbers of all parties to the dispute and those who will represent them, if any, in the mediation.

4. Selection of a Mediator —The employee and the may select a mediator by agreement. In the event of agreement, the RESOLVE Administrator will notify the ADR organization of the name of the selected mediator and the ADR organization will appoint the mediator. If the employee and the RESOLVE Administrator cannot agree to the selection of a mediator before the submission of their joint request for mediation, the parties will include with their joint request for mediation, a request that the ADR organization provide the parties a list of seven mediators from the Association's panel of employment mediators. The list will include, to the extent reasonably available, culturally diverse mediators.

The employee and the Company may each strike the names of up to three mediators from the list. The parties shall also independently rank the names of the mediators remaining on the list. The parties shall rank the remaining names in the order of relative acceptance, from most acceptable to least acceptable. The parties shall independently return their respective rankings to the ADR organization within 14 calendar days of the ADR organization's transmittal of the list. If either party does not return the list within the time specified, all persons on such party's list shall be deemed acceptable to such party. Beginning with the employee's ranking, the ADR organization shall promptly appoint the mediator from those remaining on the list by alternately striking from the list the mediators ranked least acceptable by both parties. The ADR organization shall immediately notify the parties by telephone of the name of the mediator appointed.

If acceptable mediators are unable to serve, or if for any other reason an appointment cannot be made from the initial list, the ADR organization shall submit a second list to the parties. The parties shall repeat the same process of selection. However, if for any reason the ADR organization cannot make an appointment from the second list, the ADR organization shall make the appointment from other members of its panel of employment mediators without the submission of additional lists.

5. Qualifications of Mediators – In addition to not having any financial or personal interest in the result of the mediation, mediators shall be licensed attorneys or former judges with a minimum of five years' experience in the practice of employment law and in the mediation of employment claims. The parties shall direct the ADR organization to provide lists of local mediators to the parties to the extent that local mediators possess the qualifications required by this procedure. However, the parties will accept lists which include mediators that are not local to the jurisdictions in question to the extent that qualified local mediators are not available.

6. Date, Time, and Place of Mediation –The parties may agree on a mediator as well as a date and time for the mediation. However, if the parties fail to agree before the appointment of the mediator, the mediator shall schedule the mediation on a normal business day during normal business hours, no later than 30 calendar days after the date of the mediator's appointment. Unless the parties agree otherwise, or the mediator directs otherwise, the parties shall use the ADR organization office nearest to the employee's work location to mediate the dispute. If the appropriate office is unavailable, the mediator shall select a convenient, neutral site.

7. Length of Mediation -- Either of the parties or the mediator may end the mediation at any point. However, the length of the mediation shall not exceed one 8-hour day, unless both parties and the mediator agree to an extension.

8. Requests for Documents and Other Information – Same as Level One.

9. Identification of Matters in Dispute – At least 14 calendar days prior to the scheduled mediation, each party shall provide the mediator with a brief written summary of the dispute setting forth the party's position concerning all claims.

10. Attendees at Mediation – **Either party may be assisted or represented by counsel**. Company management, with advice from the Company's Legal Operation and the appropriate HR representative, shall determine in each case whether the Company will be represented by an attorney at

mediation. If the decision of the Company is to be represented by an attorney at mediation, the Company's Legal Operation will select, or serve, as the Company's attorney.

The mediation shall be a private, confidential meeting of the parties and the mediator. Without the prior written agreement of both parties, no one may attend the mediation except the mediator, the employee, the employee's attorney, a Company management representative and the Company's attorneys. Under no circumstances shall members of the press/media, representatives of special interests groups, or representatives of other employees be permitted to attend the mediation.

If not communicated earlier, each party shall communicate in writing to the other party at least 14 calendar days before the mediation the name and address of counsel and experts and the names of all witnesses who will attend the mediation.

11.  No Stenographic Record or Electronic Recording – Neither the employee, the Company, nor anyone else may make a formal record or transcript, or use any electronic recording device at the mediation. However, both parties may make notes during the mediation.

12.  Confidentiality and Inadmissibility of Mediation Discussions –The mediator shall not divulge to anyone outside the mediation any information disclosed by the parties in the course of the mediation. The mediator shall not be compelled to divulge such records or to testify in regard to the mediation in any other proceeding or judicial forum.

The parties shall maintain the confidentiality of the mediation. On or before the date of the mediation, the mediator and the parties shall sign the Mediation Confidentiality Agreement (Appendix C) or a similar agreement provided by the mediator. Statements by the parties at the mediation are understood to be solely for the purpose of reaching a settlement of the employee's claims and shall be kept confidential by the employee, and conveyed on a need-to-know basis by the Company.

However, nothing in this procedure shall restrict the Company's ability, as provided in this procedure, to interview witnesses and gather information to evaluate the employee's claims.

Neither party shall, unless compelled by law, attempt to use statements of the other party or the other party's representatives or witnesses in any arbitral, judicial, or other proceeding to impeach the testimony of the other party's witnesses, or as evidence of: (a) views expressed or suggestions made by another party with respect to a possible settlement of the dispute; (b) admissions made by another party in the course of the

22

mediation proceedings; (c) proposals made or views expressed by the mediator; or (d) the fact that the other party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

However, the employee may disclose the contents of the mediation to his/her spouse and attorney, provided they first agree not to disclose such information to others. The Company may disclose the contents of the meeting to appropriate company representatives who have a legitimate need to know and to its attorneys.

Notwithstanding this provision or any other confidentiality requirement of this procedure, nothing in this procedure shall prevent employees from communicating with or cooperating with any Government investigation into matters that occurred during RESOLVE or during their employment with the Company.

13. Settlement Agreement & Release -- If the parties reach an agreement to resolve the employee's covered claims before the termination of the mediation, they will enter into a signed settlement agreement and release of all claims against the Company and its representatives related to the employee's employment.

14. Costs and Fees --The Company will pay (1) the ADR organization's filing and other administrative fees; (2) the mediator's fee and reasonable travel and living expenses; (3) the expenses of any fact witnesses and the costs of any proofs or expert advice provided such witnesses, proofs or advice, are produced solely at the direct request of the mediator; (4) the cost of renting mediation rooms; and (5) the employee's salary, if still employed by the Company, for the time spent at the mediation.

The Company shall pay the fees and expenses of the mediator by making such payments directly to the ADR organization. The ADR organization shall then pay the mediator without disclosing the source of such payments. To avoid disclosing to the mediator the source of the payment of his/her fees and expenses or other costs of mediation, all references to the "costs and fees" of RESOLVE shall be redacted from copies of this procedure which are provided to the mediator.

The parties shall each pay their own experts' and/or attorneys' fees and the costs to produce their respective witnesses. However, in the event that the parties agree to a settlement at Level Three and execute a settlement agreement and release, the Company will reimburse the employee up to $2,500 for his/her reasonable experts' and/or attorneys' fees directly related to the mediation. The Company will not reimburse employees for experts' or attorneys' fees for Levels One or Two.

15.  If the mediation has been successful, Level III proceedings will conclude with the execution of a settlement agreement, or other arrangement as agreed upon by the parties and/or the mediator. If the mediation is unsuccessful, as determined by the mediator and/or the parties, Level III will conclude at the time of this determination.

## D. Level Four – Arbitration

1.  Description – Arbitration is a dispute-resolution process in which the employee and the Company present their respective positions concerning the employee's claims to an impartial third-party arbitrator who determines the merits of the claims. An arbitration hearing resembles a court proceeding in certain ways. Both parties have the opportunity to be represented by an attorney, to make opening statements, to present the testimony of witnesses and to introduce exhibits through witnesses, to cross-examine the other party's witnesses, and to make closing statements. Arbitration differs from mediation in that the arbitrator decides the merits of the employee's claims and can impose remedies.

2.  Attendees at Arbitration Hearings – **The employee may be assisted or represented by an attorney at Level Four.** The Company will be represented by counsel at the arbitration hearing. The Company's Legal Operation will represent or retain an attorney to represent the Company. Either party may present expert witness testimony to the arbitrator. Neither party may call more than 10 witnesses, including expert witnesses, during the presentation of its case-in-chief, unless both parties agree in advance or the arbitrator grants the request of a party to increase the number for good and sufficient cause shown.

The arbitration hearing shall be a private hearing. Without the written agreement of both parties, no one may attend the arbitration hearing except the arbitrator; an official recorder (if any); the employee, attorneys, experts, and witnesses; and the Company's attorneys, management personnel, experts, and witnesses. Under no circumstances shall members of the press/media, representatives of special interests groups, or representatives of other employees be permitted to attend the arbitration hearing.

At least 30 calendar days before the arbitration hearing, each party shall provide written notice to the other party of the names and addresses of any expert witnesses the party intends to call as a witness at the arbitration hearing, as well as the names and addresses of any attorneys who will attend the arbitration hearing. Each party shall also communicate in writing to the other party at least 14 calendar days before the arbitration hearing the names of all witnesses other than expert witnesses that the party may call to testify at the arbitration hearing.

3.  Confidentiality of Arbitration Hearings –The arbitrator shall maintain the confidentiality of the hearings and shall have the authority to make appropriate rulings to safeguard that confidentiality, unless the law provides to the contrary.

4.  Submission of Claims to Level Four  (Arbitration) and Time Limits – The employee shall use **Level Four – Arbitration Submission Form** (Appendix A) to submit his/her covered claims to the RESOLVE Administrator at Level Four, within 30 calendar days of the date the parties and/or mediator determine that the mediation at Level Three has not been successful.  Appendix A requires the employee to provide at Level Four any additional information regarding the employee's claims, including information that conflicts with the Company's stated reasons at the mediation session  at Level Three.

5.  Initiation of Arbitration – Within 30 calendar days of the RESOLVE Administrator's receipt of the employee's submission at Level Four, the RESOLVE Administrator and the employee and/or the employee's attorney shall file three copies of a joint request for arbitration with the regional office of the ADR organization pursuant to the arbitration rules. The request for arbitration shall contain a statement setting forth the nature of the covered claims, the amount of damages claimed, if any, and the remedy sought. The RESOLVE Administrator will forward the joint request to the ADR organization Form(Appendix D) will be used for requesting arbitration.

6.  Selection of an Arbitrator – The employee and the RESOLVE Administrator may agree to the selection of an arbitrator. In the event of agreement, the Company will notify the ADR organization of the name of the selected arbitrator and the ADR organization will appoint the arbitrator. However, if the employee and the RESOLVE Administrator cannot agree to the selection of an arbitrator before the submission of their joint request for arbitration, the parties will include with their joint request for arbitration, a request that the ADR organization provide each of the parties separately an identical list of seven arbitrators from the ADR organization's panel of employment arbitrators. The list will include, to the extent reasonably available, culturally diverse arbitrators.

The ADR organization will also provide both parties the professional biographies, qualifications, employment history and professional affiliations and citations to the published awards of each arbitrator on the list. If requested by an employee at Level Four, the ADR organization will identify any arbitrators on the list who have served as arbitrators in RESOLVE disputes between the Company and its employees. Without disclosing the names or otherwise compromising the privacy of employees involved in prior arbitration, the ADR organization will also provide the

employee redacted copies of the most recent three awards, if any, of listed arbitrators in the Company cases.

The employee and the Companymay independently strike the names of up to three arbitrators from the list. The parties shall also independently rank the names of the arbitrators remaining on the list. The parties shall rank the remaining names in the order of relative acceptance, from most acceptable to least acceptable. The parties shall independently return their respective rankings to the ADR organization within 14 calendar days of the ADR organization's transmittal of the list.

If either party does not return the list within the time specified, all persons on such party's list shall be deemed acceptable to such party. Beginning with the employee's ranking, the ADR organization shall promptly appoint the arbitrator from those remaining on the list by alternately striking from the list the arbitrators ranked least acceptable by both parties. The ADR organization shall immediately notify the parties by telephone of the name of the arbitrator appointed.

If acceptable arbitrators are unable to serve, or if for any other reason an appointment cannot be made from the initial list, the ADR organization shall submit a second list to the parties and the parities shall repeat the same selection process. However, if for any reason the ADR organization cannot appoint an arbitrator from the second list, the ADR organization shall make the appointment from other members of its panel of employment arbitrators without the submission of additional lists.

7. Qualifications of a Neutral Arbitrator – Section 11 of the Association's arbitration rules shall apply.  However, this procedure modifies Section 11 to require that arbitrators shall be licensed attorneys or former judges with a minimum of five years' experience in the practice of employment law and in the arbitration of employment law claims. The parties shall direct the ADR organization to provide lists of local arbitrators to the parties to the extent that local arbitrators possess the qualifications required by this procedure. However, the parties will accept lists which include arbitrators that are not local to the jurisdictions in question to the extent that qualified local arbitrators are not available.

8. Date and Time of Arbitration Hearing – The parties may agree on an arbitrator as well as a date and time for the arbitration hearing. However, if the parties fail to agree before the appointment of an arbitrator, the arbitrator shall set the time and date of the arbitration hearing. The ADR organization shall notify the parties of the arbitration hearing date at least 30 calendar days in advance. Unless the parties agree otherwise, the arbitrator shall select a date no later than 45 calendar days after the

appointment of the arbitrator by the ADR organization.

9.  Length of Hearing –The arbitrator shall control the duration of the arbitration hearing and shall limit the length of the arbitration hearing to two 8-hour days (16 hours total); provided, however, that the arbitrator shall assure each party a minimum of up to he hours to present its case.

10.  Place of Hearing – Unless the parties agree otherwise, or the arbitrator directs otherwise, the parties shall use the ADR organization office nearest to the employee's work location to arbitrate the covered claims. If the appropriate office is not available on the scheduled arbitration hearing dates, the ADR organization will arrange for the rental of an arbitration hearing room which is mutually convenient.

11.  Discovery – Discovery is the process by which parties to a pending covered claim obtain certain non-privileged information in possession of the other party, which is relevant to the proof or defense of the covered claim, including information concerning the existence, description, nature, custody, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any such matter. The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration. Consistent with the expedited nature of arbitration, discovery is subject to certain guidelines set forth below, including the requirement that the parties shall complete all discovery no later than 14 calendar days prior to the start of the arbitration hearing.

- Discovery Conference:  If the parties cannot agree on reasonable discovery parameters, within 14 days of appointment, the Arbitrator shall hold a Discovery Conference for the purpose of establishing fair, reasonable and efficient discovery parameters in keeping with the expedited nature of the arbitration processes. The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, and shall give due consideration to the discovery guidelines set forth below.

- Disclosure of Witnesses and Exhibits – At least 30 calendar days before the arbitration hearing, each party shall provide written notice to the other party of the names and addresses of any expert witnesses the party intends to call at the arbitration hearing, as well as the names and addresses of attorneys who will attend the hearing.

27

Each party shall also communicate in writing to the other party at least 14 calendar days before the arbitration hearing the names of all witnesses other than expert witnesses that the party intends to call to testify at the arbitration hearing.

Within 14 calendar days before the arbitration hearing, each party shall give to the other a copy of all exhibits it intends to use at the arbitration hearing.

- Obtaining Information outside Formal Discovery Process – Employees and their attorneys shall restrict their discovery of Company documents, witnesses, and other information to the submission of formal written requests to the RESOLVE Administrator.   Employees and their attorneys shall first obtain the written consent of the RESOLVE Administrator before interviewing or otherwise questioning other Company employees.

- Protective Orders – The arbitrator may issue protective orders in response to a request by either party or by a third-party witness. Such protective orders may include, but are not limited, to sealing the record of the arbitration hearing, in whole or in part, to protect the privacy, trade secrets, proprietary information, and/or other legal rights of the parties or the witnesses.

- Discovery Disputes –The arbitrator shall have the authority, for good cause shown by either party, to increase the number of discovery requests otherwise permitted by this procedure. In addition, the arbitrator shall decide any discovery disputes concerning depositions, or the production of relevant documents and other information. Neither party shall communicate with the arbitrator unless such communication is in the presence of the other party. If either party wants to bring a discovery dispute to the arbitrator's attention, the party must arrange through the ADR organization for a teleconference with the arbitrator and the other party.

If the arbitrator is unable to make a ruling at the end of the teleconference, the arbitrator may schedule a meeting with the parties to resolve the discovery dispute. The party seeking discovery must bring the discovery dispute to the attention of the arbitrator. The arbitrator shall make a ruling, which shall be final and binding, not later than 14 calendar days before the date of the

arbitration hearing.

- Depositions -- Each party may depose up to two individuals for a total deposition time of not more than eight hours. Individuals selected for deposition must be likely to have substantial information about the matter in question.

Guidelines on the Obligation to Produce Documents and Respond to Interrogatories -- Subject to Arbitrator's consideration of the guidelines below, either party may request information and/or documents from the other party necessary to support the party's case. The parties request must be made at least 30 calendar days in advance of the arbitration hearing.

Neither party shall be required to provide any information to the other party in response to requests for information received less than 30 calendar days before the arbitration hearing. The parties must respond to timely requests for information within 14 calendar days of the parties' receipt of such request for information. Any objections as to the extent or nature of a discovery request must be raised with the Arbitrator by the objecting party within 7 days of receipt of the discovery instrument.

Except as may be provided under a Protective Order, neither party shall be required to provide information to the other party that is proprietary, confidential, privileged, classified, or trade secret information.

In assessing any discovery dispute with respect to the burden imposed upon any party in responding to interrogatories, requests for documents or the taking of depositions, the Arbitrator shall consider the following guidelines:

- Depositions--Each party may depose up to two individuals for a total deposition time of not more than eight hours. Individuals selected for deposition must be likely to have substantial information about the matter in question.

- Interrogatories -- Each party may submit up to 20 separately numbered written questions that require written answers from the other party. Subparts to questions shall count as separate questions.

- Requests for Documents -- Employees may obtain from the RESOLVE Administrator documents concerning his/her employment that are

available to employees from their personnel files and medical files. The RESOLVE Administrator will make such documents available to the employee within 7 calendar days of receipt of the employee's written request.

In addition to documents from the employee's personnel and medical files, each party may submit to the other party a written request for up to five individual documents. Such documents shall be limited to documents which presently exist and do not need to be created by the producing party.

Requested documents may consist of multiple pages, but a single request for the same document, as it relates to multiple employees, is a request for multiple documents, if the document exists separately for each employee. For example, a request for the most recent performance evaluations of all employees in a 25-employee work group is not a request for one document but rather is a request for 25 documents.

12. Recording of the Arbitration Hearing – There shall be no stenographic or electronic record of the arbitration hearing unless one or both parties request the ADR organization to arrange for the preparation of such a record. Either party may request the ADR organization to provide a qualified court reporter to make a stenographic record and transcript of the arbitration hearing. If only one party requests that a record be made, then that party shall pay for the entire cost of the record. If both parties want access to the record, the parties shall share the cost equally.

13. Subpoenas – Each party may subpoena witnesses or documents for the arbitration hearing, pursuant to Section 7 of the Federal Arbitration Act; 9 U.S.C.A. Sections 1-14, or the applicable state arbitration statute.

14. Evidence –The parties may offer such evidence at the hearing as is relevant and material to a determination of a covered claim. The arbitrator shall determine the weight and relevance to be afforded the evidence offered by the parties. This procedure does not require conformity to legal rules of evidence, except for the law applicable to attorney-client privilege, attorney work product, and compromise and offers to compromise. However, the arbitrator shall not receive or consider evidence by affidavit or evidence submitted to the arbitrator after the arbitration hearing, unless the parties agree in writing to the receipt of such evidence.

15. Briefs and Arbitrator's Opinion – Each party will have the opportunity, if desired, to submit a written brief to the arbitrator within 30 calendar days of the close of the arbitration hearing (or receipt of the transcript, if applicable). The parties waive their right to file a brief, unless they notify

the arbitrator by the close of the arbitration hearing of their intention to do so. The arbitrator shall be responsible for forwarding a copy of the opposing brief to the other party.

The arbitrator shall issue a written opinion to the parties not more than 30 calendar days after the close of the arbitration hearing, or 30 calendar days after the arbitrator's receipt of the parties' briefs, whichever is later. The opinion shall be signed by the arbitrator and shall contain: (a) the names of the parties and their representatives; (b) the dates and place of the hearing; (c) a summary of the covered claims arbitrated and decided; (d) the factual and legal reasons for the opinion; and (e) the damages and/or other remedies/relief, if any.

16. Authority of the Arbitrator –The arbitrator shall have the authority to decide discovery disputes, and for good and sufficient cause shown by either party, to increase the number of witnesses and/or the number of discovery requests otherwise provided in the discovery guidelines.

The arbitrator may in connection with the covered claim of a specific employee decide whether the Company has complied with its policies, procedures, rules or practices, and/or whether such policies, procedures, rules, and/or practices are in violation of applicable state or federal law, and in the case of a finding of violation, the arbitrator may, solely with respect to the claimant, order the Company to change the application of its policies, procedures, rules, or practices.

However, the arbitrator shall not change, require the Company to establish, nor diminish the Company's authority to establish or revise its policies, procedures, rules and/or practices. The arbitrator shall decide all covered claims in accordance with the substantive law of the state or the federal circuit, or both, in which the claim arose. The Arbitrator does not have the authority to decide arbitrability issues – such issues, if necessary, will be decided by the Court.

17. Scope of Award –The arbitrator shall interpret and apply the law of remedies of the state or the federal circuit, or both, in which the claim arose. Except as provided by this procedure above (Authority of the Arbitrator), the arbitrator may grant any remedy or relief that would have been available had the claim been asserted in court.

18. Front Pay Option Instead of Reinstatement–If the arbitrator orders the reinstatement of an employee whose employment has been involuntarily terminated, there may be situations where either the employee does not want to return to work or the Company does not wish to reinstate the employee. In such situations, the arbitrator, at the request of either party, shall issue a supplementary award. The award will grant the employee

reasonable front pay instead of reinstatement in accordance with the applicable state or federal law.

19. Effect of Arbitrator's Decision – By starting employment with the Company or transferring to the Company on or after the effective date of this procedure (6/1/2000), Company employees assigned to U.S. facilities, who were hired or rehired by any GE component on or after the effective date of this procedure (6/1/2000), or who are covered by an existing agreement with a GE business or component requiring binding arbitration as the final step of dispute resolution,[6] agree as a condition of employment to waive the right to pursue covered claims in court. They also agree that an arbitrator's award shall be a final, binding, and exclusive determination of their covered claims.

If the Company accepts a former employee's request to resolve his/her covered claims through RESOLVE, the former employee agrees to waive the right to file suit in court against the Company and agrees to accept the arbitrator's award as a final, binding, and exclusive determination of all covered claims.

By continuing to remain employed with the Company or by accepting a transfer to the Company on or after the effective date of this procedure, employees assigned to the Company's U.S. locations who were hired or rehired by any GE business component before the effective date of this procedure, agree to complete RESOLVE, through Level Three, mediation. If the matter is not settled through mediation, current employees will have the option of presenting their claim to either an arbitrator or court. In the event the employee elects arbitration, the arbitrator's award shall be the final, binding and exclusive determination of the claim.

Unless applicable law provides otherwise, the arbitrator's award will not be subject to review or appeal, except as provided by the Federal Arbitration Act, 9 U.S.C.A. Sections 1-14, or by the applicable state arbitration statute.

Neither party shall publish the arbitrator's award, agree to publish the award or arrange for publication of the award. The Company may make internal reports on the success of RESOLVE and the outcome of individual mediations and arbitrations. The award shall have no legal effect on the claims of employees who are not party to the arbitration. Neither party may cite the arbitrator's decision as precedent in any other arbitration, or in any administrative or court proceeding. However, either party may cite the decision to appeal the arbitrator's award and/or to seek dismissal of the same claims in litigation.

---

[6] *Does not include "rehired" employees, who, at the time of filing their claim with RESOLVE, have a Continuity of Service Date earlier than 6/1/2000.*

20. Costs and Fees —The Company will pay (1) the ADR organization's filing and other administrative fees, except for a $50 initiation fee that shall be paid by the employee; (2) the arbitrator's fee and reasonable travel and living expenses; (3) the expenses of any fact witnesses and the costs of any proofs or expert advice, provided they are produced solely at the direct request of the arbitrator; (4) the cost of renting an arbitration hearing room; and (5) the employee's salary or wages, if still employed by the Company, for the time spent at the arbitration hearing.

The Company shall pay the fees and expenses of the arbitrator by making such payments directly to the ADR organization. The ADR organization shall then pay the arbitrator without disclosing the source of such payments. To avoid disclosing to the arbitrator the source of the payment of his/her fees and expenses or other costs of arbitration, all references to the "costs and fees" of the RESOLVE procedure shall be redacted from copies of this procedure which are provided to the arbitrator.

Each party shall pay its experts' and/or attorneys' fees, unless the arbitrator awards reasonable experts' and/or attorneys' fees to the employee as a "prevailing party" under applicable law.

21. Settlement Agreement & Release – If the parties reach an agreement to resolve the employee's claims prior to the issuance of the arbitrator's decision, the parties will, within 30 calendar days of such agreement, enter into a signed settlement agreement and release of all claims against the Company and its representatives related to the employee's employment.

## IV.  For More Information Contact:

- The RESOLVE Web Site found on GE Commercial Finance's Employee Services page.
- Your Human Resource Representative
- Your Manager

### Appendix Information

Appendix A - RESOLVE Program Submission Forms

- Level One
- Level Two
- Level Three
- Level Four

Appendix B-  <u>Submission to Mediation</u>
Appendix C - <u>Mediation Confidentiality Agreement</u>
Appendix D - <u>Submission to Arbitration</u>

**<u>You may obtain copies of the appendices from</u>**:

- The GE Commercial RESOLVE Web Site:

- Your HR Representative
- Your Business RESOLVE Administrator

34

# RESOLVE

## Procedural Guidelines for U.S.-Based Employees of GE Commercial Finance, Aviation Financial Services And Energy Financial Services, Including All Functions, Operations And Businesses

Issue Date:          June 1, 2000

Issued By:           GE Commercial Finance, Aviation Financial Services and Energy
                     Financial Services, including all functions, operations and businesses

Revision Date:       August 17, 2007 (supercedes February 1, 2005 version)

Effective Date:      September 16, 2007

Exhibit 6 – Part 1

SPECIAL NOTICE TO ALL NON-REPRESENTED EMPLOYEES
OF GE COMMERCIAL FINANCE, AVIATION FINANCIAL SERVICES AND ENERGY FINANCIAL
SERVICES, INCLUDING
ALL FUNCTIONS, OPERATIONS AND BUSINESSES (THE "COMPANY")

THIS PROCEDURE IS A WRITTEN AGREEMENT FOR THE RESOLUTION OF EMPLOYMENT DISPUTES
PURSUANT TO THE FEDERAL ARBITRATION ACT, 9 U.S.C.A. SECTIONS 1-14.

BY CONTINUING OR ACCEPTING EMPLOYMENT WITH THE COMPANY, ALL NON-REPRESENTED
COMPANY EMPLOYEES WITH A GE CONTINUITY OF SERVICE ("COS") DATE BEFORE 6/1/00 WHO ARE
HIRED, REHIRED OR HAVE TRANSFERRED FROM ANOTHER GE BUSINESS TO A U.S. BASED COMPANY
COMPONENT BEFORE 9/16/07, AGREE AS A CONDITION OF EMPLOYMENT TO ATTEMPT TO RESOLVE
THEIR DISPUTE USING THE FIRST THREE LEVELS (THROUGH MEDIATION) OF THE COMPANY'S RESOLVE
PROCEDURE. IF THE DISPUTE REMAINS UNRESOLVED FOLLOWING MEDIATION, THE EMPLOYEE WILL
HAVE THE OPTION OF PURSUING HIS OR HER CLAIM THROUGH FINAL AND BINDING ARBITRATION OR
PURSUING THE MATTER IN COURT.

BY ACCEPTING AN OFFER OF EMPLOYMENT WITH THE COMPANY, ALL NON-REPRESENTED COMPANY
EMPLOYEES WITH A GE COS DATE AFTER 6/1/00 WHO ARE HIRED, REHIRED OR HAVE TRANSFERRED
FROM ANOTHER GE BUSINESS TO A U.S. BASED COMPANY COMPONENT BETWEEN 6/1/00 AND
9/16/07 AND ALL NON-REPRESENTED COMPANY EMPLOYEES WHO ARE HIRED, REHIRED OR HAVE
TRANSFERRED FROM ANOTHER GE BUSINESS TO ANY U.S. BASED COMPANY COMPONENT AFTER
9/16/07 (REGARDLESS OF COS DATE), AGREE AS A CONDITION OF EMPLOYMENT TO WAIVE THE RIGHT
TO PURSUE COVERED CLAIMS IN COURT, OR TO HAVE A BENCH OR JURY TRIAL, ON AN INDIVIDUAL OR
CLASS ACTION BASIS, AND TO ACCEPT AN ARBITRATOR'S AWARD AS THE FINAL, BINDING, AND
EXCLUSIVE DETERMINATION OF THE EMPLOYEE'S COVERED CLAIMS.

THIS AGREEMENT IS THE SOLE AND COMPLETE AGREEMENT BETWEEN THE COMPANY AND NON-
REPRESENTED COMPANY EMPLOYEES BASED IN THE U.S. FOR THE RESOLUTION OF EMPLOYEE
DISPUTES.

THIS PROCEDURE, HOWEVER, DOES NOT CHANGE THE EMPLOYMENT-AT-WILL RELATIONSHIP
BETWEEN THE COMPANY AND ITS EMPLOYEES.   THE COMPANY MAY AT ITS SOLE DISCRETION MODIFY
OR DISCONTINUE THE RESOLVE PROGRAM AT ANY TIME BY GIVING EMPLOYEES THIRTY (30) CALENDAR
DAYS NOTICE.

## I.   PURPOSE

This dispute resolution procedure ("Resolve") provides the Company and its non-represented employees[1] based in the U.S. a process to resolve concerns/claims arising out of their employment.

## II.   GENERAL

### A.   SUMMARY OF THE RESOLVE PROCEDURE

Employees and the Company are encouraged to resolve disputes informally. Employees can discuss concerns/claims with their immediate manager, others in the management chain, a human resources (HR) representative or an ombudsperson. However, occasionally informal efforts do not resolve such concerns/claims; in such cases an employee may submit the concern to the Resolve procedure.

The Resolve procedure is a structured dispute resolution procedure that consists of two internal levels of review followed, if the concern is a covered claim (see II.L.), by outside mediation (Level III) and if necessary, final and binding arbitration (Level IV). The levels of Resolve are in a logical sequence and employees must complete each level of the process before proceeding to the next level. However, if the Company agrees, the employee may submit his or her concern initially to Resolve at Level II and skip Level I. Company claims are first brought to Level III.

At internal Levels I and II, an employee and the management team meet in an attempt to resolve the employee's concern. If an employee is not satisfied with the outcome of Levels I and II, and the concern is a covered claim (see II.L.), the employee may submit the claim to Level III. Similarly, if the Company has a covered claim against the employee, it would be submitted initially at Level III. At Level III an independent mediator helps the employee and the Company open lines of communication in an attempt to facilitate resolution. The Company and the employee may agree to initiate employee concerns at Resolve Level III only under exceptional circumstances and where the employee's claim otherwise is eligible for hearing at Level III.

If an employee and the Company do not reach resolution at Level III, "New" Company employees (see II.F) must submit their claim to final and binding arbitration and waive their right to bring their claim to court, or to have a bench or jury trial,[2] while "Current Employees" (see II.G) may either submit the matter to final and binding arbitration or pursue the matter in court. At Level IV a neutral arbitrator provides the employee and the Company with a final and binding decision on the merits of the employee's covered claim(s). Any claims that the Company brings to Level IV also will be subject to a final and binding decision by the arbitrator. Both mediation and arbitration will be administered by the American Arbitration Association ("AAA" or the "Association").[3]

---

[1]  The phrasing adopted in some parts of this procedure addresses use of Resolve by employees as, predominately, employment disputes involve employees bringing claims against their employer. This procedure, however, is expressly intended to also cover claims the Company may seek to bring against an employee, consistent with the limitations set forth respecting both "covered claims" and "excluded claims".

[2]  A provisional remedy (e.g., a temporary restraining order or a preliminary injuction) may be sought in a court of competent jurisdiction by any party to preserve or reinstate the status quo pending the resolution of the covered claim pursuant to Resolve.

[3]  All references made to the "AAA" or "Association" may be taken to mean any alternate dispute resolution service otherwise acceptable to the Company and employee.

B.    RESOLVE'S RELATIONSHIP TO OTHER RESOLUTION PROCEDURES AND OMBUDS

Employees are encouraged to use informal means of resolving an issue before formally submitting their concerns/claims to Resolve. In addition to casual day-to-day discussions between employees and their managers, Company employees may contact the Office of the Ombudsperson (Ombuds). Ombuds is the appropriate forum for addressing specific claims of integrity violations under the Spirit and the Letter. Ombuds can provide information to employees about the Company's policies, practices and procedures (including Resolve), but Ombudspersons do not participate in formal Resolve proceedings. Resolve is not intended to substitute for reporting compliance concerns (as contrasted with personal grievances or issues) to Ombuds. Likewise, more typical employment concerns (as outlined in more detail in Section II.L, "Covered Claims") should be brought to Resolve. Any questions as to the appropriate forum for a claim should be brought to the Resolve Administrator or Ombuds. If an Employee submits a Resolve claim that raises a compliance issue, the Company shall decide whether to forward it to Ombuds, investigate the concern/claim separately, or return it to Resolve.

If an employee does not resolve his or her concerns/claims with the Company by using informal procedures, or if the employee elects not to use these other procedures, the employee may formally submit his or her concerns/claims to Resolve. However, an employee may not use these other appeal procedures for concerns/claims that have been submitted to Resolve.

C.    ELIGIBLE EMPLOYEES

All non-represented[4] Company employees assigned to U.S. based Company components participating in this Resolve procedure.

*Special Note: Registered Employees*
For regulatory reasons, registered employees have different options available to them for resolving claims past the mediation stage. Registered employees are bound by the rules of the NASD, as described in the U-4 agreement, which states that all claims must be brought to mandatory arbitration before the NASD. However, as of January 1, 1999, registered employees are not required to take discrimination or harassment claims to mandatory binding NASD arbitration – therefore, such claims should be handled under RESOLVE.

D.    DURATION AND MODIFICATION

The Company may at its sole discretion modify or discontinue the Resolve program at any time by giving employees thirty (30) calendar[5] days notice. Any such change shall be prospective, and shall not affect pending claims. An employee shall complete the processing of any concern/claim pending in Resolve at the time of an announced change, under the terms of the procedure, as it existed when the concern/claim was initially submitted to Resolve.

If there are conflicts between the requirements of this procedure and other Company policies, publications or statements by Company representatives, the requirements of this procedure are controlling. This procedure constitutes the sole agreement between the Company and its employees concerning the requirements of Resolve and may not be modified by written or oral statements of

---

[4] "Non-represented" in these Guidelines means not represented by a labor union.

[5] Any deadline that falls on a weekend or holiday will be extended to the next business day.

any Company representative, except by a writing signed by the Senior Vice President for Human Resources.

E.    COMPANY

For purposes of these Guidelines, the "Company" refers to the participating U.S. based components of GE Commercial Finance, Aviation Financial Services and Energy Financial Services, including all functions, operations and businesses.

F.    NEW EMPLOYEES

For the purpose of this procedure, "New Employees" are non-represented employees with a GE Continuity of Service (COS) date[6] after 6/1/00 who are hired, rehired or have transferred from another GE business, to any U.S. based Company component between 6/1/00 – 9/16/07 or are hired, rehired or have transferred from any U.S. based Company component after 9/16/07 (regardless of COS date). New Employees are required, as a condition of employment, to agree to waive the right to pursue covered claims in court, or to have a bench or jury trial, on a class or individual basis. New Employees who have not resolved their covered claims with the Company before Level IV of Resolve, must proceed to Level IV arbitration and the arbitrator's decision shall be the final, binding, and exclusive determination of all covered claims. New Employees whose employment terminates on or after the effective date of this procedure continue their status as New Employees solely for purposes of this procedure.

G.    CURRENT EMPLOYEES

For the purpose of this procedure, "Current Employees" are non-represented Company employees with a COS date before 6/1/00 who are hired, rehired or have transferred from another GE business to a to a U.S. based Company component before 9/16/07. By virtue of their continued employment with the Company or by accepting a transfer to the Company as outlined above, Current Employees are deemed to have accepted the requirement to complete at least the first three levels of the Resolve Program (through Mediation). If the issue remains unresolved following mediation, Current Employees have the option of submitting the matter to binding arbitration, pursuing the matter in court, or withdrawing their claim from Resolve. Current Employees whose employment with GE terminates on or after the effective date of this procedure continue their status as Current Employees solely for purposes of this procedure unless they have broken service and are rehired, in which case they are considered "New" employees under this procedure.

H.    FORMER EMPLOYEES

Employees whose employment with GE terminates maintain their status under this procedure at the time of termination as a "New" or "Current" employee, and Resolve remains in effect pursuant to its

---

[6] "Continuity of Service Date" is the calendar date on which an employee's continuous service is based. "Continuous Service" is the total length (in years, months, weeks and days) of an employee's service with the Company. It is based on credits for the time the employee actually works continuously at the Company (at any GE business) and for the time away from work for which credit is later granted upon a return to work, as determined by the Company's Continuity of Service Rules. For example, employees will receive credit for time away from work for paid vacations, jury duty, military leaves of absence and for certain periods of illness or layoff. More complete details are included in the Company's Benefit Handbook.

terms for their claims.[7]  However, any employee who is subsequently rehired is subject to II.F and II.G above.

I.    TRANSFERRED EMPLOYEES

Employees who accept a transfer to a Company component agree by virtue of this acceptance to be bound by the Company Resolve procedure as outlined in II.F and II.G above. Any agreement applicable to Transferred Employees to resolve their disputes based on a dispute resolution program administered by a GE business prior to such transfer shall be of no effect with respect to claims arising following transfer to the Company.  To the extent an employee raises claims that include both employment at their prior business(es) and the Company, all such claims shall be administered under this procedure, not the prior business(es) procedure, and the employee shall be classified pursuant to II.F and II.G above for the resolution of all claims.

J.    FILING CHARGES WITH GOVERNMENT AGENCIES

Nothing in this procedure is intended to discourage or interfere with the legally protected rights of employees to file administrative claims or charges with government agencies.  Such agencies include, but are not limited to, the Equal Employment Opportunity Commission (EEOC), the Office of Federal Contract Compliance Programs (OFCCP), various state agencies responsible for Equal Employment Opportunity and the National Labor Relations Board (NLRB).

For example, the Company recognizes the exclusive jurisdiction of the National Labor Relations Board concerning issues that arise under the National Labor Relations Act.  This procedure does not apply to charges under the National Labor Relations Act and does not prevent employees from filing unfair labor practice·charges with the NLRB.

However, if an employee files a charge with the EEOC, OFCCP or with state fair employment referral agencies, the Company may request the agency to defer its processing of the charge until the employee and the Company have completed the Resolve procedure.

K.    RESOLVE ADMINISTRATOR

The Resolve Administrator will:

- Coordinate the receipt of employees' concerns/claims with managers and with HR representatives;

- Answer questions about Resolve;

- Monitor Company and the employee's compliance with all time requirements;

---

[7]  For the purpose of this procedure, individuals who were assigned to Company components in the U.S. and are not represented, and who were not employed by the Company on the effective date of this procedure (6/1/00) and whose last day of work for Company occurred before 6/1/00, may request the Company's agreement to resolve covered claims through Resolve beginning at Level III.  The Company reserves the right to accept or reject, for any reason, the request of any such individual to submit his/her covered claims to Resolve.  The Company will consider accepting for Resolve only the covered claims of such individuals that are based on actions occurring while these individuals were employed by the Company.  In addition, a condition of the Company's acceptance of such individual's request to use Resolve to resolve covered claims shall be the waiver of the right to pursue such covered claims in court on a class or individual basis, and agreement to accept the arbitrator's award as the final, binding, and exclusive determination of such covered claims.

- Schedule mediation meetings and arbitration hearings at Levels III and IV;

- Schedule training sessions for management;

- Process requests for production of information;

- Schedule the Company's participation in pre-arbitration communications with arbitrators and with employees regarding specific discovery issues;

- Work with Company representatives, employees, their attorneys, and the American Arbitration Association ("AAA" or "Association") to select and schedule mediators and arbitrators;

- Process requests for reimbursement of experts' and attorneys' fees;

- Process the terms and conditions of Resolve;

- Function as the Company's administrative liaison with the AAA; and

- Process requests for extensions of the procedure's deadlines.

L.    **COVERED CLAIMS**

While employees may submit to the appropriate Company representatives any employment-related concern/claim at internal Levels I and II, only covered claims by either party will be accepted and processed at Levels III and IV.

Covered claims are claims that allege the violation of certain legally protected rights, in a jurisdiction that recognizes such rights and has authority to resolve disputes about such rights, and include claims/concerns such as the following:

- Claims relating to compensation (including payment for expenses), promotion or demotion or termination;

- Claims relating to leaves of absence;

- Claims relating to involuntary terminations, such as layoffs and discharges (including constructive discharges) and notice of mass layoffs and/or plant closings;

- Employment discrimination and harassment claims, based on, for example, age, race, sex (including pregnancy), religion, sexual orientation, national origin, veteran status, citizenship, handicap/disability, or other characteristic protected by law;

- Retaliation claims for legally protected activity, and/or for whistleblowing, including, but not limited to, claims under Sarbanes Oxley;

- Claims of breach of contract or covenant (express or implied) and/or promissory estoppel;

- Tort claims (such as intentional torts, negligence, defamation, invasion of privacy, infliction of emotional distress, etc.);

- Claims of violation of public policy;

- Claims of violation of this procedure, except for violation of the confidentiality requirements of this procedure; and/or

- Claims that the Company and Employee expressly agree in writing should be treated as covered claims.

Covered claims do not include the excluded claims described below.

M.    EXCLUDED CLAIMS

Excluded claims are claims that are excluded from Levels III and IV of Resolve and allege claims/concerns such as the following:

- Claims that do not allege legally protected or enforceable rights in the jurisdiction in question;

- Claims outside of applicable statutes of limitations, as described in Section II.P.

- Claims based on alleged violations of GE Policy 20.10 (Working with Government Agencies) including, but not limited to, alleged violations of the federal False Claims Act (except retaliation claims) or federal procurement laws or regulations (These should be reported to the Office of the Ombudsperson.);

- Claims for benefits under a Company benefit plan covered by the Employment Retirement Income Security Act of 1974 (ERISA), or any other claims covered by ERISA; including claims of service miscalculation to the extent such calculations determine eligibility for, or level of benefits under, a plan governed by ERISA.

- Claims for workers' compensation or unemployment compensation benefits;

- Claims seeking injunctive relief related to an alleged breach of an employee's non-competition, non-solicitation, fiduciary or confidentiality obligations;

- Claims related to breach of GE's "Employee's Innovation and Proprietary Information Agreement";

- Claims the resolution of which require jurisdiction over third parties that are not parties to this Resolve procedure.

- Claims under the National Labor Relations Act;

- Claims against other employees that are not related to the employee's employment; and/or

- Claims that seek to establish or modify the Company's policies or procedures, unless the employee is directly affected by such policy/procedure.

The exclusion of Company benefit plans above precludes a claim alleging a violation of such plans but does not prevent an arbitrator from including in an award, in connection with a covered claim, the monetary value of lost Company benefits caused by a wrongful termination of employment or other violation of law.

### N.    INDIVIDUAL NATURE OF COVERED CLAIMS

Any party who agrees, or who is required by the terms of Resolve, to submit claims to Resolve Level IV, also is prohibited from litigating in court, or having a bench or jury trial, or arbitrating any covered claims as or against a representative or member of a class or collective action (whether opt-in or opt-out) or in a private attorney general capacity, unless all parties expressly agree to do so in writing.

All parties expressly understand and agree that they waive their right to bring such class, collective, or private attorney general claims in any forum, and agree that all covered claims will be brought on an individual basis only in Resolve. So, in the event of similar covered claims by more than one employee against the Company, or similar covered claims of the Company against more than one employee, all such claims must be brought separately in Resolve.

### O.    EXHAUSTION OF RESOLUTION LEVELS

Current Employees and the Company must satisfy the requirements at each level before proceeding to the next level, unless the parties mutually agree in writing to initiate the process at the next level. New Company employees are similarly required to seek resolution at all levels before proceeding to the next and are required to proceed through Level IV, Arbitration. Unless the parties mutually agree in writing to the contrary, no employee may proceed to mediation at Level III before completing internal Level II, nor can an employee proceed to arbitration at Level IV before completing mediation (Level III). Of course, the parties may complete Resolve by resolving concerns/claims at any level.

While the Company encourages employees to attempt to resolve disputes at Level I, the Company recognizes that there may be appropriate situations where employees would prefer to initiate their concerns/claims at Level II. When an employee submits a concern/claim initially to Resolve, the employee may request on the submission form (Appendix A) to skip Level I. The Resolve Administrator will advise the employee before the first scheduled meeting whether the Company agrees to discuss the concern/claim initially at Level II. In all appropriate cases, however, employees will be encouraged by the Resolve Administrator to engage in initial discussions with his or her direct manager prior to engaging in Level I or Level II proceedings. The Company and the employee may agree to initiate employee concerns at Resolve Level III only under exceptional circumstances and where the employee's claim otherwise is eligible for hearing at Level III. Company claims are first brought to Level III.

The failure to submit covered claims at all levels of Resolve within the deadlines established by this procedure can constitute a failure to complete Resolve, unless the parties agree to an extension of deadlines. Please see Section II.Q below for details. Failure of a Current Employee to complete Levels I through III of Resolve prohibits the employee from filing covered claims in court (until such levels are completed).

P.    STATUTES OF LIMITATIONS AND ADMINISTRATIVE AGENCY FILING DEADLINES

In order to submit covered claims to Level III of Resolve, employees must have initiated such claims at Level I (or another Level mutually agreed to by the parties) before the expiration of the applicable statutes of limitations and administrative agency filing deadlines for such covered claims. However, employees may process concerns/claims through Levels I and II without regard to whether or not applicable statutes of limitations and administrative agency filing deadlines have expired.

A statute of limitations is the time period within which a person must file a claim in court. The length of the applicable statute of limitations is determined by the legal nature of the claim.

Different statutes of limitations apply to different claims. Courts do not have authority to decide claims or grant relief with respect to claims filed after the expiration of applicable statutes of limitations. The time period for filing a claim in court normally begins with the occurrence of the event or conduct that is the basis of a person's claim. The time period for filing the claim in court ends upon the expiration of the time period established by the applicable statute of limitations.

Administrative agency filing deadlines can affect an employee's legal rights in different ways. For example, some statutes require individuals to file administrative claims with government agencies (e.g., EEOC; CCHRO) as a prerequisite for filing such claims in court. In this context, administrative agency filing deadlines are the time periods within which individuals must file administrative claims with federal, state, or local agencies. Such deadlines may also apply to the time period for filing a claim in court after a government agency has discontinued its investigation of the claim.

Where a party's initial submission of a covered claim to Resolve occurs before the expiration of the applicable statute of limitations or agency administrative filing deadlines, the opposing party agrees to stop the further running of the statute of limitations and the administrative agency filing deadlines while the parties complete the Resolve process. In the case of agency filing deadlines, the opposing party agrees to request that the agency stop the running of the filing deadline. Consequently, the time required to complete Resolve will not be included in the running of the applicable statute of limitations or administrative agency filing deadline, if a Current Employee subsequently elects to file a covered claim in court after completing Level III of Resolve. However, on the seventh day after the date the parties have failed to resolve covered claims at Level III Mediation (See Section III.C.15.), if the Current Employee has not elected to pursue the matter through binding arbitration, the applicable unexpired statutes of limitations and administrative agency filing deadlines shall restart and continue to run.

Each party shall be solely responsible for determining the correct statutes of limitations and/or administrative agency deadlines applicable to their covered claims.

Either party's failure to reject a covered claim that has been submitted to Level III of Resolve after the expiration of the applicable statutes of limitations or administrative agency deadlines shall not waive the party's right to assert as a defense at a later time the untimeliness of such claim.

Q.    DEADLINES ESTABLISHED BY THIS PROCEDURE

This procedure establishes deadlines for certain actions. Examples include, but are not limited to, deadlines for submitting concerns/claims to different levels of Resolve, the Company's issuance of written responses, and completion of discovery at the arbitration level. Deadlines are established by this procedure rather than by law and are distinct from statutes of limitations.

Both parties will make a good-faith effort to comply with the deadlines in this procedure. Deadlines may be extended if agreed to by both parties or ordered by an arbitrator.

For claims brought by the employee: The Company's failure to respond at any level of this procedure to the employee's submission of a concern/claim before expiration of the applicable deadline shall constitute a denial of the concern/claim (with the exception of Level IV) and enable the employee to submit his/her concern/claim at the next level. An employee's failure to adhere to the stated deadlines shall only be excused if employee shows good and sufficient cause to the satisfaction of the Resolve Administrator (Levels I-III) or arbitrator (at Level IV).

For claims brought by the Company (Level III): The employee's failure to respond to the Company's submission of a concern/claim shall enable the Company to submit the concern/claim to Level IV. The Company's failure to adhere to the stated deadlines shall only be excused if the Company shows good and sufficient cause to the satisfaction of the Resolve Administrator (Level III) or arbitrator (Level IV).

If a party fails to meet a deadline at either Level II or Level III, and remains in default for 30 days without good and sufficient cause, the claim will be deemed abandoned and any prior tolling will be forfeited. In the event the party subsequently wishes to pursue the abandoned claim, the claim must be pursued as a new claim. Abandonment of any claim shall not relieve the employee or Company from its' obligation to first proceed through the Resolve process on a timely basis.

The arbitrator shall have the exclusive authority to decide any dispute raised at Level IV between the employee and the Company concerning compliance with the deadlines of this procedure. The arbitrator's authority includes, but is not limited to, deciding whether to excuse a party's failure to comply with any of the deadlines in this procedure, or imposing an appropriate sanction and/or the assessment of penalty fees, if such failure is raised as a defense at Level IV.

R.    **SEVERABILITY**

If any term, condition or provision of this procedure is found by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions of this procedure shall remain in full force and effect, and shall in no way be affected, impaired or invalidated.

S.    **RULES OF ADMINISTRATION FOR MEDIATION AND ARBITRATION**

Except as provided otherwise by this procedure, the mediation and arbitration of covered claims will be administered by the American Arbitration Association under its current "Employment Arbitration Rules and Mediation Procedures," as may be amended without notice by the Association. A copy of the Association's mediation and arbitration rules may be obtained from the Resolve Administrator, or from the Association, and are included herein at Appendix B. Whenever there is a difference between the requirements of this procedure and the Association's mediation rules and/or arbitration rules, the parties shall follow this procedure. However, the Association's rules shall apply to the extent that they do not conflict with the requirements of this procedure.

T.    AGREEMENT TO ARBITRATE IN INTERSTATE COMMERCE

This procedure is an agreement to arbitrate pursuant to the Federal Arbitration Act, 9 U.S.C.A. Sections 1-14, or if that Act is held to be inapplicable for any reason, the arbitration law in the state in which the arbitration hearing is held. The parties acknowledge that the Company is engaged in transactions involving interstate commerce and that the employees eligible to participate in Resolve are not employed by the Company as seamen, railroad employees, or other class of worker engaged in foreign or interstate commerce.

U.    RETALIATION IS PROHIBITED

Company employees at all levels are prohibited from retaliating against anyone for submitting a concern/claim to or otherwise participating in Resolve. Any concern that such retaliation has occurred must be reported promptly to the employee's manager, HR representative, or the Company Ombudsperson. Any employee who engages in retaliatory conduct will be subject to discipline up to and including discharge.

V.    CONSOLIDATION OF ADDITIONAL COVERED CLAIMS

The Parties are solely responsible for including in the Resolve submission forms all covered claims that arise from same set of facts. Consequently, if a party wants to raise, or raises in any manner at any time during the Resolve process, new covered claims or new facts which give rise to new covered claims, the party bringing claims shall include such claims and/or facts in a new submission form at Level I (Level III for Company claims). The other party may consolidate the new covered claims brought by the party bringing claims at the level of the pending claims, or may elect to address the new covered claims at Level I (Level III for Company claims). The addition of a new covered claim does not alter the requirement that the covered claim must be submitted initially to Resolve within the statute of limitations for such claim. Also, this Section II.V does not in any way permit a party to bring claims as or against a representative or member of a class or collective action (whether opt-in or opt-out) or in a private attorney general capacity. Please see Section II.N for more information on the Individual Nature of Claims.

W.    PROCEDURES FOR OBTAINING INFORMATION FROM THE OPPOSING PARTY

Employees and their attorneys who would like to request any copies of documents or the opportunity to interview other company employees must submit their requests to the Resolve Administrator. Likewise, the Company must submit requests to the Resolve Administrator to talk to relevant non-employee witnesses or to obtain relevant non-employment/non-medical records from employees that are not otherwise in the Company's possession. All requests by any party should explain in detail the relevance and need for the information requested. Please see the "Request for Documents and other Information" (III.A.5, III.B.6, III.C.8) for Levels I-III of Resolve below, and the Discovery Guidelines (III.D.11) below for more information.

X.    FINALITY OF RESOLVE

Any resolution of a concern or claim reached through Resolve is final. This means that neither an employee nor the Company can bring forward a concern or claim that is based on the same set of facts and is substantially the same as one that has been processed in accordance with the terms of Resolve.

Y.    WAIVER OF JURY TRIAL

In the event a court of competent jurisdiction determines for any reason that a covered claim should not be pursued in Level IV final and binding arbitration, and such covered claim is instead pursued in court, the parties agree that they continue to waive their right to a jury trial and that such claim may only be tried in court as a bench trial.

Z.    GOVERNING LAW

This Agreement shall be construed, interpreted and applied in accordance with the law of the State of New York.

III.    PROCEDURE AND RESPONSIBILITY

Preliminary note:  In all appropriate instances employees are encouraged to first discuss their concern/claim with their direct manager or human resources before submitting a concern/claim to Resolve.  Such discussions should normally take place prior to filing at Level I.

A.    LEVEL I – DIRECT MANAGER MEETING

1.    *Submission of Concerns/Claims* – Using the Level I Resolve Submission Form (Appendix A), the employee shall submit his/her concerns/claims to the Resolve Administrator and provide copies to his/her manager and/or to his/her HR representative (or Company appointed designee).  Upon receipt of the employee's concern/claim, the Resolve Administrator will confirm receipt of the concern/claim with the employee's immediate manager.  The employee should keep a copy of the completed Appendix A Form and keep a record of the date and names of the individuals to whom Appendix A is submitted.

Appendix A requires an employee to provide a detailed explanation of his or her concerns/claims, the individuals involved, and what the employee believes is necessary to resolve the concerns/claims.

2.    *Statutes of Limitations for Submission of Claims* – There are no time limits for employees' submission of concerns/claims at Level I (or if Level I is skipped, then at Level II).  However, the Company shall not accept covered claims at Level III, unless the employee has submitted his/her covered claims at Level I before the expiration of the statutes of limitations applicable to such claims (See Section II.P.).

3.    *Scheduling of Level I Meeting within 30 Days* – The  Resolve Administrator will confirm the manager has scheduled a meeting with the employee at Level I on a date not later than thirty (30) calendar days after the Company's receipt of the employee's written submission.

4.    *Attendees at Level I Meeting* – The employee meets with his/her manager.  Either the employee or manager may require the attendance of the employee's HR representative (or Company appointed designee) at the Level I meeting.  No one may attend the meeting other than the employee, his/her manager and, if requested by either party, the employee's HR representative (or Company appointed designee)  If the employee's manager was not directly involved with the events that form the basis of the employee's concerns/claims, the appropriate Company representatives who were involved in the events may participate in

the meeting. While this procedure is not intended to prevent parties from seeking legal advice regarding the concerns/claims, attorneys may not attend Level I meetings.

5.  *Requests for Documents and Other Information* – Employees may obtain from the Resolve Administrator relevant documents concerning his/her employment that are available to employees from their personnel files and medical files. To the extent practicable, the Resolve Administrator will make such documents available to the employee within seven (7) calendar days of receipt of the employee's written request.

    If the employee believes that s/he needs additional documents, the employee may request from the Resolve Administrator such documents or other information that are material and relevant to the claim. The Resolve Administrator will, within seven (7) days, consider the request in good faith and provide such documents or other information that are material and relevant – in keeping with expedited nature of this process and in consideration of the discovery guidelines in Section III.D.11 applicable to document production - but the Company shall not be required to provide any information that is proprietary, confidential, privileged, classified, trade secret information or contains information about other employees.

6.  *Meeting Length and Format* – Level I will consist of a single meeting of reasonable length, unless the employee and manager agree to hold additional meetings. At the meeting, the employee shall state the reasons why the Company should resolve the concerns/claims in the employee's favor. In addition to the discussion, the employee may present written information or documents.

7.  *Recording of the Proceedings* – Neither the employee nor the manager may make a formal record or transcript, or use any electronic recording device at the Level I meeting. However, both parties may make handwritten notes during the meeting.

8.  *Confidentiality and Inadmissibility of Settlement Discussions* – Statements by the employee and the Company's representatives in the Level I meeting, and any notes reflecting such statements, are understood to be solely for the purpose of reaching a settlement of the employee's concerns/claims and shall be kept confidential by the employee, and conveyed only on a need-to-know basis by the Company. However, nothing in this procedure shall restrict either party from gathering relevant information in accordance with the terms of Resolve.

    Neither party, unless compelled by law, shall attempt to use statements made by the other party at the meeting in any arbitral, judicial, or other proceeding to impeach the testimony of the other party's witnesses, or as evidence of: (a) views expressed or suggestions made by another party with respect to a possible settlement of the dispute; (b) admissions made by another party in the course of meeting; (c) proposals made or views expressed by the other party; or (d) the fact that the other party had or had not indicated willingness to accept a proposal for settlement.

    However, the employee may disclose the contents of the meeting to his/her spouse/domestic partner and attorney, provided they first agree not to disclose such information to others.

    Notwithstanding this provision or any other confidentiality requirement of this procedure, nothing in this procedure shall prevent employees from communicating or cooperating with

any Government investigation into matters that occurred during the Resolve procedure or during their employment with the Company.

9.  *Written Response or Settlement Agreement* – Resolution of a concern/claim at Level I will be documented either by the Company's written response or, in certain cases, by a settlement agreement and release.

    In those instances in which the Company asks the employee to sign a confidential settlement agreement and release, the employee should not sign the agreement unless he/she understands and agrees with the terms and conditions of the proposed agreement. If the employee is not satisfied with the Company's written response, or if the employee does not agree with the terms of the proposed settlement agreement, the employee may submit his/her concern/claim to the next level.

10. *Company Response within 14 Days* – The Company will, subject to the preceding provision (confidentiality, etc.), provide the employee with the Company's written response within fourteen (14) calendar days of the conclusion of the last Level I meeting.

B.   **LEVEL II – ONE-OVER-ONE MANAGER MEETING**

1.  *Submission of Concerns/Claims* – At Level II, the employee shall use the Level II Submission Form (Appendix A) to submit his/her concerns/claims to the Resolve Administrator. This requires the employee to provide any additional information regarding his/her concerns/claims, including any information that may conflict with the Company representative's stated reasons for not resolving the employee's concerns/claims at Level I. Employees who are permitted by the Company to submit concerns/claims initially at Level II shall provide, using Appendix A, the information required at Level I. The Resolve Administrator shall immediately forward copies of the employee's concerns/claims at Level II to the appropriate higher-level manager and HR representative (or Company appointed designee).

2.  *Statutes of Limitations for Submission of Claims* – Same as Level I.

3.  *Seven (7) Days to Submit Concerns/Claims to Level II* – The employee must submit his/her concerns/claims at Level II within seven (7) calendar days of the date of the Company's written response to the employee at Level I. Employees, who with the Company's written agreement skip Level I and submit their claims initially at Level II, may not submit their covered claims to Level III, unless they submitted such claims at Level II before the expiration of the statutes of limitations applicable to such covered claims.

4.  *Scheduling of Level II Meeting within 30 Days* – The Resolve Administrator will confirm that the higher-level manager has scheduled a meeting with the employee at Level II on a date not later than thirty (30) calendar days after the Company's receipt of the employee's written submission.

5.  *Attendees at Level II Meeting* – The Level II meeting shall include the employee, a higher-level manager than the manager who attended the Level I meeting (or Company appointed designee), and the appropriate HR representative (or Company appointed designee). In addition, either the employee or higher-level manager may require the attendance of any Company representative who attended the Level I meeting. The Company may also involve,

as necessary, other Company representatives at the Level II meeting.  No one else may attend the meeting other than those identified in this paragraph.  While this procedure is not intended to prevent either party from seeking legal advice concerning the concerns/claims, attorneys may not attend the Level II meeting.

6.    *Requests for Documents and Other Information* – Same as Level I.

7.    *Meeting Length and Format* – Same as Level I.

8.    *Recording of the Proceedings* – Same as Level I.

9.    *Confidentiality and Inadmissibility of Settlement Discussions* – Same as Level I.

10.    *Written Response or Settlement Agreement* – Same as Level I.

11.    *Company Response within 14 Days* – Same as Level I.

C.    **LEVEL III – MEDIATION/COVERED CLAIMS ONLY**

Only covered claims shall be processed at Level III (mediation).  Covered claims shall not be processed at Level III unless the employee submitted such claims to Resolve before the expiration of statutes of limitations applicable to such claims.

1.    *Description* – Mediation involves an attempt by the parties to resolve their dispute with the aid of a neutral third party not employed by the Company. The mediator's role is advisory. The mediator may offer suggestions, but resolution of the dispute rests with the parties themselves.  Mediation is a process that seeks to find common ground for the voluntary settlement of covered claims.  The structure of the mediation session will be determined by the mediator based on the mediator's judgment of how settlement is most likely to be reached.  The Level III proceedings are confidential and private.

The mediator may or may not suggest ways of resolving the dispute after listening to both sides, but the mediator may not impose a settlement on the parties.  The mediator may also end the mediation whenever, in the judgment of the mediator, further efforts at mediation would not contribute to a resolution of the dispute.

2.    *Submission of Claims to Level III (Mediation) and Time Limits* – Covered claims may only be submitted at Level III by an employee if his/her covered claims were initially submitted to Resolve before the expiration of the statutes of limitations applicable to such claims.  The employee shall use the Level III Submission Form (Appendix A) to submit his/her covered claims to the Resolve Administrator at Level III, within thirty (30) calendar days after the date of the Company's written response at Level II.  The Company shall submit Level III claims within a reasonable period of time, in accordance with applicable statutes of limitation.  The inclusion of a disputed claim as a "Covered Claim" does not constitute a waiver of the right to raise a statute of limitation or other appropriate defense in any subsequent procedure.  At Level III, the party bringing the claim must include all legal claims that arise out of the same facts and should include all facts that support the party's legal claims.  Employees bringing Level III claims must include facts which conflict with the Company's stated reasons for denying the employee's claims at Level II.  In addition, parties are asked to include the dates of each alleged legal violation, the names of individuals who have knowledge about each

16

alleged legal violation and the nature of their involvement, and any documents or other evidence which support the party's claims.

Within thirty (30) calendar days of the Resolve Administrator's receipt of the employee's submission at Level III, the Resolve Administrator shall either reject the claim at Level III as not being a covered claim, or the Resolve Administrator and the employee and/or the employee's attorney shall file with the Association two copies of the Association's form for jointly requesting mediation of covered claims (Appendix C). The request for mediation shall contain a brief description of the nature of the covered claims and the names, addresses, and telephone numbers of all parties to the dispute and those who will represent them, if any, in the mediation.

3.   *Selection of a Mediator* – The employee and the Resolve Administrator may select a mediator by agreement. In the event of agreement, the Resolve Administrator will notify the Association of the name of the selected mediator and the Association will appoint the mediator. If the employee and the Resolve Administrator cannot agree to the selection of a mediator before the submission of their joint request for mediation, the parties will include with their joint request for mediation, a request that the Association provide the parties a list of seven mediators from the Association's panel of employment mediators.

The employee and the Company may each strike the names of up to three (3) mediators from the list. The parties shall also independently rank the names of the mediators remaining on the list. The parties shall rank the remaining names in the order of relative acceptance, from most acceptable to least acceptable. The parties shall independently return their respective rankings to the Association within fourteen (14) calendar days of the Association's transmittal of the list. If either party does not return the list within the time specified, all persons on such party's list shall be deemed acceptable to such party. Beginning with the employee's ranking, the Association shall promptly appoint the mediator from those remaining on the list by alternately striking from the list the mediators ranked least acceptable by both parties. The Association shall immediately notify the parties by telephone of the name of the mediator appointed.

If acceptable mediators are unable to serve, or if for any other reason an appointment cannot be made from the initial list, the Association shall submit a second list to the parties. The parties shall repeat the same process of selection. However, if for any reason the Association cannot make an appointment from the second list, the Association shall make the appointment from other members of its panel of employment mediators without the submission of additional lists.

4.   *Qualifications of Mediators* – In addition to not having any financial or personal interest in the result of the mediation, mediators shall be licensed attorneys or former judges with a minimum of five years' experience in the practice of employment law and in the mediation of employment claims. The parties shall direct the Association to provide lists of local mediators to the parties to the extent that local mediators possess the qualifications required by this procedure. However, the parties will accept lists that include mediators that are not local to the jurisdictions in question to the extent that qualified local mediators are not available.

5.   *Date, Time, and Place of Mediation* – The parties may agree on a mediator as well as a date and time for the mediation. Once the parties agree to a mediator, they shall work with the mediator to schedule the mediation on a normal business day during normal business hours,

no later than ninety (90) calendar days after the date of the mediator's appointment. Unless the parties agree otherwise, or the mediator directs otherwise, the parties shall use the Association office nearest to the employee's work location to mediate the dispute, or some other reasonable location, depending on location of individuals involved and the number of individuals who must travel. If the appropriate Association office is unavailable, the mediator shall select a convenient, neutral site.

6. *Length of Mediation* – Either the parties or the mediator may end the mediation at any point. However, the length of the mediation shall not exceed one 8-hour day, unless both parties and the mediator agree to an extension.

7. *Recording of the Proceedings* – Same as Level I.

8. *Requests for Documents and Other Information* – Same as Level I for employee claims. In the case of Company claims, the Company may request from the employee documents or other information that are material and relevant to the claim. The employee will, within seven (7) calendar days, consider the request in good faith and provide such documents and other information that are material and relevant in keeping with the expedited nature of this process. Neither party shall be required to provide information to the other party that is proprietary, confidential, privileged, classified, trade secret information or contains information about other employees.

9. *Identification of Matters in Dispute* – At least fourteen (14) calendar days prior to the scheduled mediation (unless altered by agreement of the parties and the mediator), each party shall provide the mediator with a brief written summary of the dispute setting forth the party's position concerning all claims.

10. *Attendees at Mediation* – Either party may be assisted or represented by counsel. Operating management, with advice from Labor and Employment Law Counsel and the appropriate HR representative, shall determine in each case whether the Company will be represented by an attorney at mediation. If the decision of the Company is to be represented by an attorney at mediation, Labor and Employment Law Counsel will select or serve as the Company's attorney.

The mediation shall be a private meeting of the parties and the mediator. Without the written agreement of both parties, no one may attend the mediation except the mediator, the employee, his/her spouse/domestic partner, attorneys, experts, and relevant witnesses, and/or the Company's attorneys, management personnel, experts, and relevant witnesses. Under no circumstances shall members of the press/media, representatives of special interests groups, or representatives of other employees be permitted to attend the mediation.

If not communicated earlier, each party shall communicate in writing to the other party at least fourteen (14) calendar days before the mediation (unless altered by agreement of the parties and the mediator) the name and address of counsel and experts and the names of all witnesses who will attend the mediation.

11. *No Stenographic Record or Electronic Recording* – Neither the employee, the Company, nor anyone else may make a formal record or transcript, or use any electronic recording device at the mediation. However, both parties may make handwritten notes during the mediation.

12.   *Confidentiality and Inadmissibility of Mediation Discussions* – The mediator shall not divulge to anyone outside the mediation any information disclosed by the parties in the course of the mediation. The mediator shall not be compelled to divulge such records or to testify in regard to the mediation in any other proceeding or judicial forum.

The parties shall maintain the confidentiality of the mediation. On or before the date of the mediation, the mediator and the parties shall sign the Mediation Confidentiality Agreement (Appendix D) or a similar agreement provided by the mediator. Statements by the parties at the mediation and any notes reflecting such statements are understood to be solely for the purpose of reaching a settlement of the employee's claims and shall be kept confidential by the employee, and conveyed only on a need-to-know basis by the Company.

However, nothing in this procedure shall restrict either party from gathering relevant information in accordance with Section III.C.8. above.

Neither party shall, unless compelled by law, attempt to use statements (or notes of such statements) of the other party or the other party's representatives or witnesses in any arbitral, judicial, or other proceeding to impeach the testimony of the other party's witnesses, or as evidence of: (a) views expressed or suggestions made by another party with respect to a possible settlement of the dispute; (b) admissions made by another party in the course of the mediation proceedings; (c) proposals made or views expressed by the mediator; or (d) the fact that the other party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

However, the employee may disclose the contents of the mediation to his/her spouse/domestic partner and attorney, provided they first agree not to disclose such information to others. The Company may disclose the contents of the meeting to appropriate company representatives who have a legitimate need to know and to its attorneys.

Notwithstanding this provision or any other confidentiality requirement of this procedure, nothing in this procedure shall prevent employees from communicating with or cooperating with any Government investigation into matters that occurred during Resolve or during their employment with the Company.

13.   *Settlement Agreement & Release* – If the parties reach an agreement to resolve the claims before the termination of the mediation, they will enter into a signed confidential settlement agreement and release of all claims.

14.   *Costs and Fees* – The Company will pay: (1) the Association's filing and other administrative fees; (2) the mediator's fee and reasonable travel and living expenses; (3) the cost of renting mediation rooms; and (4) the employee's salary/wages, if still employed by the Company, for the time spent at the mediation.

Such salary/wage payments will be as follows: For non-exempt employees, time in mediation will be considered compensable time; for exempt employees, time in mediation will be considered part of the working day.

The Company shall pay the fees and expenses of the mediator by making such payments directly to the Association. The Association shall then pay the mediator without disclosing

19

the source of such payments. To avoid disclosing to the mediator the source of the payment of his/her fees and expenses or other costs of mediation, all references to the "costs and fees" of Resolve shall be redacted from copies of this procedure which are provided to the mediator.

The parties shall each pay their own attorneys' fees and the costs to produce their respective witnesses. However, in the event that the parties agree to a settlement at Level III and execute a settlement agreement and release, the Company will reimburse the employee up to $2,500 for his/her reasonable experts' and/or attorneys' fees directly related to the mediation. The employee will be expected to provide valid proof of such fees. The Company will not reimburse employees for experts' or attorneys' fees for Levels I or II.

15.    *Settlement Agreement and Release* – If the mediation has been successful, Level III proceedings will conclude with the execution of a confidential settlement agreement and release of all claims, or other arrangement as agreed upon by the parties and/or the mediator. If the mediation is unsuccessful, as determined by the mediator (or by the parties jointly), Level III will conclude at the time of this determination.

D.    **LEVEL IV – ARBITRATION**

1.    *Description* – Arbitration is a dispute-resolution process in which the employee and the Company present their respective positions concerning the employee's claims to an impartial third-party arbitrator who determines the merits of the claims. An arbitration hearing resembles a court proceeding in certain ways. Both parties have the opportunity to be represented by an attorney, to make opening statements, to present the testimony of witnesses and to introduce exhibits through witnesses, to cross-examine the other party's witnesses, and to make closing statements. Arbitration differs from mediation in that the arbitrator decides the merits of the employee's claims and can impose remedies.

The procedures below contain guidelines on discovery and witnesses in an effort to simplify and expedite the arbitration process. These guidelines will apply unless the parties agree in writing to amend them or, if the arbitrator determines, based on the facts and circumstances of the case, that the discovery guidelines will prevent a party from obtaining relevant and material information. The arbitrator may not amend or modify paragraphs 2, 3, 16, 17, 18, 19, 20 and 21 of Section III.D.

2.    *Attendees at Arbitration Hearings* – The employee may be assisted or represented by an attorney at Level IV. The Company typically will be represented by an attorney at the arbitration hearing. Labor & Employment Law Counsel will represent or assign an attorney to represent the Company. Either party may present expert witness testimony to the arbitrator. Neither party may call more than 10 witnesses, including expert witnesses, during the presentation of its case-in-chief, unless both parties agree in advance or the arbitrator grants the request of a party to increase the number for good and sufficient cause shown.

The arbitration hearing shall be a private hearing. Without the written agreement of both parties, no one may attend the arbitration hearing except the arbitrator; an official recorder (if any); the employee, his/her spouse/domestic partner, attorneys, experts and witnesses; and the Company's attorneys, management personnel, human resources representatives, experts and witnesses. Under no circumstances shall members of the press/media,

representatives of special interest groups, or representatives of other employees be permitted to attend the arbitration hearing.

3.  *Confidentiality of Arbitration Hearings* – The arbitrator shall maintain the confidentiality of the hearings and shall have the authority to make appropriate rulings to safeguard that confidentiality, unless the law provides to the contrary.

4.  *Submission of Claims to Level IV (Arbitration) and Time Limits* – The employee shall use the Level IV Submission Form (Appendix A) to submit his/her covered claims to the Resolve Administrator at Level IV, within thirty (30) calendar days of the date the mediator (or the parties jointly) determine that the mediation at Level III was not successful.  Appendix A requires the employee to provide at Level IV any additional information regarding the employee's claims, including information that conflicts with the Company's stated positions at earlier Levels of Resolve.

5.  *Initiation of Arbitration* – Within thirty (30) calendar days of the Resolve Administrator's receipt of the employee's submission at Level IV, the Resolve Administrator and the employee and/or the employee's attorney shall file three copies of a joint request for arbitration with the regional office of the Association pursuant to the arbitration rules.  The request for arbitration shall contain a statement setting forth the nature of the covered claims, the amount of damages claimed, if any, and the remedy sought.  The Resolve Administrator will forward the joint request to the Association.  The Association's form for requesting arbitration is Appendix E.

6.  *Selection of an Arbitrator* – The employee and the Company may agree to the selection of an arbitrator.  In the event of agreement, the Company will notify the Association of the name of the selected arbitrator and the Association will appoint the arbitrator.  However, if the employee and the Company cannot agree to the selection of an arbitrator before the submission of their joint request for arbitration, the parties will include with their joint request for arbitration, a request that the Association provide each of the parties separately an identical list of seven arbitrators from the Association's panel of employment arbitrators.

    The Association will also provide both parties the professional biographies, qualifications, employment history and professional affiliations and citations to the published awards of each arbitrator on the list.  If requested by an employee at Level IV, the Association will identify any arbitrators on the list who have served as arbitrators in Resolve disputes between the Company and its employees.  Without disclosing the names or otherwise compromising the privacy of employees involved in prior arbitrations, the Association will also provide the employee redacted copies of the most recent three awards, if any, of listed arbitrators in Company cases.

    The employee and the Company may independently strike the names of up to three arbitrators from the list.  The parties shall also independently rank the names of the arbitrators remaining on the list.  The parties shall rank the remaining names in the order of relative acceptance, from most acceptable to least acceptable.  The parties shall independently return their respective rankings to the Association within fourteen (14) calendar days of the Association's transmittal of the list.

    If either party does not return the list within the time specified, all persons on such party's list shall be deemed acceptable to such party.  Beginning with the employee's ranking, the

Association shall promptly appoint the arbitrator from those remaining on the list by alternately striking from the list the arbitrators ranked least acceptable by both parties. The Association shall immediately notify the parties of the name of the arbitrator appointed.

If acceptable arbitrators are unable to serve, or if for any other reason an appointment cannot be made from the initial list, the Association shall submit a second list to the parties and the parties shall repeat the same selection process. However, if for any reason the Association cannot appoint an arbitrator from the second list, the Association shall make the appointment from other members of its panel of employment arbitrators without the submission of additional lists.

7.  *Qualifications of a Neutral Arbitrator* – Section 11 of the Association's arbitration rules shall apply. However, this procedure modifies Section 11 to require that arbitrators shall be licensed attorneys or former judges with a minimum of five (5) years experience in the practice of employment law and in the arbitration of employment law claims. The parties shall direct the Association to provide lists of local arbitrators to the parties to the extent that local arbitrators possess the qualifications required by this procedure. However, the parties will accept lists that include arbitrators that are not local to the jurisdictions in question to the extent that qualified local arbitrators are not available.

8.  *Date and Time of Arbitration Hearing* – Once the parties agree to an arbitrator, they shall work with the arbitrator to set the time and date of the arbitration hearing. A scheduling conference will be held within 7 days of the appointment of the arbitrator. The Association shall notify the parties of the arbitration hearing date at least sixty (60) calendar days in advance. Unless the parties agree otherwise, the arbitrator shall select a date no later than 120 calendar days after the appointment of the arbitrator by the Association.

9.  *Length of Hearing* – The arbitrator shall control the duration of the arbitration hearing and, to the extent practicable, shall seek to limit the length of the arbitration hearing to two 8-hour days (16 hours total); provided, however, that the arbitrator shall assure each party a minimum of up to 8 hours to present its case.

10. *Place of Hearing* – Unless the parties agree otherwise, or the arbitrator directs otherwise, the parties shall use the Association office nearest to the employee's work location to arbitrate the covered claims, or some other reasonable location, depending on the location of the individuals involved and the number of individuals who must travel. If the appropriate Association office is not available on the scheduled arbitration hearing dates, the Association will arrange for the rental of an arbitration hearing room that is mutually convenient.

11. *Discovery Guidelines* – Discovery is the process by which parties to a pending covered claim obtain certain non-privileged information in possession of the other party, which is relevant to the proof or defense of the covered claim, including information concerning the existence, description, nature, custody, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any such matter. The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration. Consistent with the expedited nature of arbitration, discovery is subject to certain guidelines set forth below, including the requirement that the parties shall complete

all discovery no later than thirty (30) calendar days prior to the start of the arbitration hearing.

- <u>Discovery Plan/Conference</u>:  The parties shall submit a written discovery plan, consistent with these Discovery Guidelines, to the arbitrator within 14 days of the Arbitrator's appointment.  This plan should outline the applicable logistics (due dates, amounts, etc.) for all relevant discovery issues, including numbers and due dates for interrogatories, requests for documents, requests for admissions, depositions, disclosure of witnesses, expert reports, and supplemental disclosure.  If the parties cannot agree on reasonable discovery parameters within 14 days of appointment, the Arbitrator shall hold a Discovery Conference within 30 days of appointment for the purpose of establishing fair, reasonable and efficient discovery parameters in keeping with the expedited nature of the arbitration processes. The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, and shall give due consideration to the discovery guidelines set forth below.

- <u>Time for Initiation and Completion of Discovery</u>:  In order to expedite the arbitration process, the parties may initiate discovery prior to the appointment of the arbitrator. Unless the arbitrator determines that additional time is necessary, the parties shall complete discovery within thirty (30) calendar days of the hearing, and neither party shall be required to provide information or documents or otherwise respond to a discovery request received less than fourteen (14) calendar days before the date for completion of discovery.

- <u>Protective Orders</u>: The arbitrator may issue protective orders in response to a request by either party or by a third-party witness. Such protective orders may provide that requested discovery not be had, that it be had only on specified terms and conditions, that certain matters not be inquired into, that discovery be conducted with no one present except those designated by the arbitrator, that a trade secret or other proprietary or confidential information not be revealed or be revealed only in a designated way or any other limitation that the arbitrator deems warranted in the interests of justice, including but not limited to sealing the record of the arbitration hearing, in whole or in part, to protect the privacy, trade secrets, proprietary information, and/or other legal rights of the parties or the witnesses.

- <u>Discovery Disputes</u>: The arbitrator shall have the authority, for good cause shown by either party, to increase the number of discovery requests otherwise permitted by these guidelines. In addition, the arbitrator shall decide any discovery disputes concerning depositions, or the production of relevant documents and other information.  Neither party shall communicate with the arbitrator unless such communication is in the presence of the other party.  If either party wants to bring a discovery dispute to the arbitrator's attention, the party must arrange through the Association for a teleconference with the arbitrator and the other party.

- If the arbitrator is unable to make a ruling at the end of the teleconference, the arbitrator may schedule a meeting with the parties to resolve the discovery dispute.  The party seeking discovery must bring the discovery dispute to the attention of the arbitrator.  The arbitrator shall make a ruling, which shall be final and binding, not later than fourteen (14) calendar days before the date of the arbitration hearing.

- <u>Guidelines on the Obligation to Produce Documents and Respond to Interrogatories</u>:
  Subject to Arbitrator's consideration of the guidelines below, either party may request
  information and/or documents from the other party necessary to support the party's
  case. The parties' request must be made at least 45 calendar days in advance of the
  arbitration hearing.

  Neither party shall be required to provide any information to the other party in response
  to requests for information received less than 45 calendar days before the arbitration
  hearing. The parties must respond to timely requests for information within fourteen (14)
  calendar days of the parties' receipt of such request for information. The objecting party
  must raise any objections as to the extent or nature of a discovery request with the
  Arbitrator within 7 days of receipt of the discovery instrument.

  Except as may be provided under a Protective Order, neither party shall be required to
  provide information to the other party that is proprietary, confidential, privileged,
  classified, or trade secret information.

  In assessing any discovery dispute with respect to the burden imposed upon any party in
  responding to interrogatories, requests for documents or the taking of depositions, the
  Arbitrator shall consider the following guidelines:

  - *Depositions*: Each party may depose up to three (3) individuals for a total
    deposition time of not more than eight (8) hours. Individuals selected for
    deposition must be likely to have substantial, relevant, and material
    information about the matter in question. The party taking the deposition
    shall be responsible for all costs associated therewith, such as the cost of the
    court reporter and transcript.

  - *Interrogatories*: Each party may submit up to 20 separately numbered
    written questions that require written answers from the other party.
    Subparts to questions shall count as separate questions.

  - *Requests for Documents*: Each party may submit to the other party a written
    request for up to fifteen individual documents. Such documents shall be
    limited to documents that presently exist and do not need to be created by
    the producing party and are in the possession/control of the party. The
    requesting party shall bear the reasonable cost of compliance with this
    request.

  - Requested documents may consist of multiple pages, but a single request for
    the same document, as it relates to multiple employees, is a request for
    multiple documents, if the document exists separately for each employee.
    For example, a request for the most recent performance evaluations of all
    employees in a 25-employee work group is not a request for one document
    but rather is a request for 25 documents.

- <u>Pre-Hearing Disclosures</u>: No less than fourteen (14) calendar days before the hearing,
  each party shall provide, in writing, the names of all witnesses (including any expert
  witness already disclosed in accordance with the discovery guidelines) that the party

intends to call to testify at the hearing and copies of all exhibits it intends to introduce at the hearing and a brief summary of any preliminary issues the party intends to raise before the arbitrator.

- <u>Duty to Supplement Disclosures and Discovery Responses</u>:  A party who has made an initial disclosure or who has responded to a request for discovery is under a duty to supplement or correct the disclosure or response to include information learned or acquired after the initial disclosure or response was made.

- <u>Expert Witnesses</u>:  If scientific, technical or other specialized knowledge will assist the arbitrator to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto.  A party wishing to use expert testimony at the arbitration hearing must disclose to the other party the identity of such expert.  The party also must provide an expert report containing a complete statement of all opinions to be expressed, the reasons therefore, the data or other information considered in forming the opinions, exhibits to be used in support of the opinions, the expert's qualifications, the compensation to be paid to the expert and a list of any other cases in which the expert has testified as an expert in the prior four years.

- When the mental or physical condition of a party is in controversy, the arbitrator may order the party to submit to a physical or mental examination by a licensed or certified examiner of the other party's choosing.  The examiner will produce to both parties a report containing his or her findings.

- Where a party decides to use an expert witness, the disclosures described in the prior paragraph must be made within 60 days of the appointment of the arbitrator.  Further, if necessary, the arbitrator will postpone the hearing date by thirty (30) calendar days or such time as is necessary to permit the parties to complete expert discovery (including the taking of the initial expert's deposition, disclosure of any rebuttal expert and deposition of such rebuttal expert) no less than 15 calendar days prior to the hearing.

12.  *Recording of the Arbitration Hearing* – There shall be no stenographic or electronic record of the arbitration hearing unless one or both parties request the Association to arrange for the preparation of such a record.  Either party may request the Association to provide a qualified court reporter to make a stenographic record and transcript of the arbitration hearing.  If only one party requests that a record be made, then that party shall pay for the entire cost of the record.  If both parties want access to the record, the parties shall share the cost equally.

13.  *Subpoenas* – A subpoena is a command to an individual or a company by the arbitrator to appear at a certain place and time and give testimony and/or furnish documents either at the hearing or during discovery.  A party may ask the arbitrator to issue a subpoena, and such subpoena must be served on the other party no less than 10 calendar days prior to the start of the hearing, deposition or time for production of documents contemplated by the subpoena.  The arbitrator shall have the authority to enforce, limit and/or cancel such subpoenas, provided that such subpoenas are issued.  The party requesting the subpoena shall be responsible for the fees and expenses associated with the issuance of and compliance with the subpoena.

14. *Evidence* – The parties may offer such evidence at the hearing as is relevant and material to a determination of a covered claim. The arbitrator shall determine the weight and relevance to be afforded the evidence offered by the parties. This procedure does not require conformity to legal rules of evidence, except for the law applicable to attorney-client privilege, attorney work product, and compromise and offers to compromise. However, the arbitrator shall not receive or consider evidence by affidavit or evidence submitted to the arbitrator after the arbitration hearing, unless the parties agree in writing to the receipt of such evidence.

15. *Briefs and Arbitrator's Opinion* – Each party will have the opportunity, if desired, to submit a written brief to the arbitrator within thirty (30) calendar days of the close of the arbitration hearing (or receipt of the transcript, if applicable). The parties waive their right to file a brief, unless they notify the arbitrator by the close of the arbitration hearing of their intention to do so. The arbitrator shall be responsible for forwarding a copy of the opposing brief to the other party.

    The arbitrator shall issue a written opinion to the parties not more than thirty (30) calendar days after the close of the arbitration hearing, or thirty (30) calendar days after the arbitrator's receipt of the parties' briefs, whichever is later. The opinion shall be signed by the arbitrator and shall contain: (a) the names of the parties and their representatives; (b) the dates and place of the hearing; (c) a summary of the covered claims arbitrated and decided; (d) the factual and legal reasons for the opinion; and (e) the damages and/or other remedies/relief, if any.

16. *Authority of the Arbitrator* – The arbitrator shall have the authority to decide discovery disputes, and for good and sufficient cause shown by either party, to increase the number of witnesses and/or the number of discovery requests otherwise provided in the discovery guidelines.

    The arbitrator may in connection with the covered claim of a specific employee decide whether the Company has complied with its policies, procedures, rules or practices, and/or whether such policies, procedures, rules, and/or practices are in violation of applicable state or federal law, and in the case of a finding of violation, the arbitrator may, solely with respect to the claimant, order the Company to change the application of its policies, procedures, rules, or practices.

    However, the arbitrator shall not change, require the Company to establish, change or diminish the Company's authority to establish or revise its policies, procedures, rules and/or practices. The arbitrator shall decide all covered claims in accordance with the applicable substantive law of the state or the federal circuit, or both, in which the claim arose.

    The arbitrator only has the authority to decide claims brought on an individual basis (either by one employee against the Company or by the Company against one employee) and does not have the authority to decide any claims brought on a class or collective basis without the express written agreement of all parties.

    However, if claims initially brought on a class or collective basis are later brought only on an individual basis, the arbitrator would have authority to decide the individual covered claims.

17. *Scope of Award* – The arbitrator shall interpret and apply the applicable law of remedies of the state or the federal circuit, or both, in which the claim arose. Except as provided by this procedure above (Authority of the Arbitrator) and below (Front Pay Option, etc.), the arbitrator may grant any remedy or relief that would have been available had the claim been asserted in court.

18. *Front Pay Option Instead of Reinstatement* – If the arbitrator orders the reinstatement of an employee whose employment has been involuntarily terminated, there may be situations where either the employee does not want to return to work or the Company does not wish to reinstate the employee. In such situations, the arbitrator, at the request of either party, shall issue a supplementary award. The award will grant the employee reasonable front pay instead of reinstatement in accordance with the applicable state or federal law.

19. *Effect of Arbitrator's Decision* – New Employees agree as a condition of employment to waive the right to pursue covered claims in court or on an individual or class basis and they agree that an arbitrator's award shall be a final, binding, and exclusive determination of their covered claims.

    Current Employees agree to complete Resolve, through Level III, mediation. If the matter is not settled through mediation, Current Employees will have the option of presenting their claim to either an arbitrator or court. In the event the employee elects arbitration, the arbitrator's award shall be the final, binding and exclusive determination of the claim.

    Unless applicable law provides otherwise, the arbitrator's award will not be subject to review or appeal, except as provided by the Federal Arbitration Act, 9 U.S.C.A. Sections 1-14, or by the applicable state arbitration statute.

    Neither party shall publish or agree to have published the arbitrator's award or arrange for publication of the award. The award shall have no legal effect on the claims of employees who are not party to the arbitration. Either party may cite the decision to appeal the arbitrator's award and/or to seek dismissal of the same claims in litigation.

20. *Costs and Fees* – The Company will pay: (1) the Association's filing and other administrative fees; (2) the arbitrator's fee and reasonable travel and living expenses; (3) the expenses of any fact witnesses and the costs of any proofs or expert advice, provided they are produced solely at the direct request of the arbitrator; (4) the cost of renting an arbitration hearing room; and (5) the employee's salary/wages, if the employee still is employed by the Company, for the time spent at the arbitration hearing. Such salary/wage payments will be as follows: For non-exempt employees, time at the arbitration hearing will be considered compensable time; for exempt employees, time at the arbitration hearing will be considered part of their working day.

    The Company shall pay the fees and expenses of the arbitrator by making such payments directly to the Association. The Association shall then pay the arbitrator without disclosing the source of such payments. To avoid disclosing to the arbitrator the source of the payment of his/her fees and expenses or other costs of arbitration, all references to the "costs and fees" of the Resolve procedure shall be redacted from copies of this procedure which are provided to the arbitrator.

Each party shall pay its experts' and/or attorneys' fees, unless the arbitrator awards reasonable experts' and/or attorneys' fees to the employee as a "prevailing party" under applicable law.

21. *Settlement Agreement & Release* – If the parties reach an agreement to resolve the employee's claims prior to the issuance of the arbitrator's decision, the parties will, within thirty (30) calendar days of such agreement, enter into a signed confidential settlement agreement and release of all claims.

## IV.    FOCAL POINT

The Company's Resolve Administrators as of the last Revision Date of these Guidelines are as follows:

# RESOLVE ADMINISTRATORS

| Business | Resolve Administrator | Contact No. |
|---|---|---|
| Commercial Finance Headquarters | Marjorie Lalanne<br>Marjorie.LaLanne@ge.com | T- (203) 585-5125<br>F- (203) 961-5906 |
| Capital Solutions: | Winifred Johnson<br>Winifred.Johnson@ge.com | T- (819) 233-2120<br>F- (513) 794-8260 |
| - Former CEF Business | Tina Rodrigues<br>Tina.Rodrigues@ge.com | T- (203) 796-1026<br>F- (203) 796-5696 |
| - Former Fleet Business | Susan Jacobs<br>Susan.Jacobs@ge.com | T- (952)-828-2190<br>F- (952)-828-1040 |
| - Former VFS Business | Lillian Lampedusa<br>Lillian.Lampedusa@ge.com | T- (203) 749-6042<br>F- (203) 749-4534 |
| Corporate Financial Services | Jonathan Prescott<br>Jonathan.Prescott@ge.com | T- (203) 956-4290<br>F- (203) 956-4216 |
| Energy Financial Services | Claire McGahey<br>Claire.McGahey@ge.com | T- (203) 357-4211<br>F- (203) 357-3011 |
| Healthcare Finance | Carol Trevino<br>Carol.Trevino@ge.com | T- (262) 798-4441<br>F- (866) 761-8444 |
| Real Estate | Tom Curtin<br>Tom.Curtin@ge.com | T- (212) 850-5821<br>F- (212) 850-8910 |

# APPENDIX INFORMATION

If you are accessing this document from the web, MS Word 9.0 versions of the referenced appendices are available:

Appendix A -    Resolve Program Submission Forms

· Level I
· Level II
· Level III
· Level IV

Appendix B -    American Arbitration Association (AAA) "Employment Arbitration Rules and Mediation Procedures"

Appendix C -    AAA Submission to Mediation form

Appendix D -    Mediation Confidentiality Agreement

Appendix E -    AAA Submission to Arbitration form

For a complete listing of policies, appendices and other information, visit the Resolve Support Central site at: http://supportcentral.ge.com/products/sup_products.asp?prod_id=17892. You also may obtain copies of the appendices from the Resolve Administrators identified above.

## *** End of Document ***



### GE Commercial Finance
### Resolve
### Issue Resolution Procedure

## Level I – Submission Form

| Name: | SSO ID #: | Phone Number:<br><br>Fax  Number: |
|---|---|---|
| Job Title/Career Band: | Business Address: | HR Manager's Name: |
| Manager's Name: | Component Name: | Billing Unit Code (BUC #):<br><br>ADN  #: |
| Address you want the company to send all written Resolve communications to: | | |

| Have you previously discussed this concern/claim with your Manager? |
|---|
| YES ☐          NO ☐ |

| **LEVEL I** | DATE YOUR CONCERN(S)/CLAIM(S) FIRST AROSE: |
|---|---|

Provide a detailed explanation of your concern(s)/claim(s), individuals involved, and what you believe is necessary to resolve the concern(s). (You may attach additional pages if needed.)

I request to skip Level I and submit concern(s)/claim(s) initially at Level II
(must still enter description above and indicate reasons for request to skip Level I ):          YES ☐        NO ☐

| Employee Signature: | Date: |
|---|---|

Forward this form to your GE Commercial Finance Resolve Administrator.

**Appendix A**

Version 08/17/07



**GE Commercial Finance**
**Resolve**
**Issue Resolution Procedure**

**<u>Level II– Submission Form</u>**

| Name: | SSO ID #: | Phone Number: |
|---|---|---|
| | | Fax Number: |

## LEVEL II

*Must submit concern(s)/claim(s) at Level II within 7 calendar days of the date of the Company's written response at Level I.*

Provide any additional information regarding your concern(s)/claim(s) including information that conflicts with the Manager's stated reason for not resolving your concern(s)/claim(s) at Level I. (You may attach additional pages if needed.)

| Employee Signature: | Date: |
|---|---|

Forward this form to your GE Commercial Resolve Administrator.

**Appendix A**

Version 08/17/07



### GE Commercial Finance
### RESOLVE
### Issue Resolution Procedure

### Level III – Mediation
### Submission Form

| Name: | SSO ID #: | Phone Number: |
|---|---|---|
| | | Fax Number: |

## LEVEL III - MEDIATION

*Must submit covered claim(s) at Level III within 30 calendar days of the date of the Company's written response at Level II.*

Include all legal claim(s) that arise out of the same facts and include all facts that support your legal claim(s), including facts which conflict with the Company's stated reasons for denying your concern(s)/claim(s) at Level II. Include the dates of each alleged legal violation, names of individual(s) who have knowledge about each alleged legal violation and the nature of their involvement, and any documents or other evidence which support your claim(s). (You may attach additional pages if needed.)

| Employee Signature: | Date: |
|---|---|

Forward this form to your GE Commercial Finance Resolve Administrator.

**Appendix A**

Version 08/07/07

Exhibit 6 – Part 2



**GE Commercial Finance
Resolve
Issue Resolution Procedure**

### Level IV – Arbitration
### Submission Form

| Name: | SSO ID #: | Phone Number: |
|-------|-----------|---------------|
|       |           | Fax Number:   |

## LEVEL IV- ARBITRATION

*Must submit covered claim(s) at Level IV within 30 calendar days of the date of that the parties and/or mediator determine that the mediation at Level III has not been successful.*
Provide any additional information regarding your claim(s) including information that conflict with the Company's stated reason for denying your claim(s) at Level III. (You may attach additional pages if needed.)

*I understand and agree that the arbitrator's decision at Level IV is final and binding.*

Employee Signature:            Date:

Forward this form to your GE Commercial Finance Resolve Administrator.
**Appendix A**

Version 08/17/07

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

Employment Arbitration Rules and Mediation PROCEDURES
Amended and Effective July 1, 2006
To view the summary of changes, click here.

Table of Contents

Introduction
Role of the American Arbitration Association
Legal Basis of Employment ADR
The Fairness Issue: The Due Process Protocol
AAAâ€™s Employment ADR Rules
AAAâ€™s Policy on Employment ADR
Notification
Costs of Employment Arbitration
Designing an ADR Program
Alternative Dispute Resolution Options
Types of Disputes Covered

Employment Arbitration Rules and Mediation Procedures
1. Applicable Rules of Arbitration
2. Notification
3. AAA as Administrator of the Arbitration
4. Initiation of Arbitration
5. Changes of Claim
6. Jurisdiction
7. Administrative and Mediation Conferences
8. Arbitration Management Conference
9. Discovery
10. Fixing of Locale
11. Date, Time, and Place of Hearing
12. Number, Qualifications, and Appointment of Neutral Arbitrators
13. Party Appointed Arbitrators
14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties
15. Disclosure
16. Disqualification of Arbitrator
17. Communication with Arbitrator
18. Vacancies
19. Representation
20. Stenographic Record
21. Interpreters
22. Attendance at Hearings
23. Confidentiality

24. Postponements
25. Oaths
26. Majority Decision
27. Dispositive Motions
28. Order of Proceedings
29. Arbitration in the Absence of a Party or Representative
30. Evidence
31. Inspection
32. Interim Measures
33. Closing of Hearing
34. Reopening of Hearing
35. Waiver of Oral Hearing
36. Waiver of Objection/Lack of Compliance with These Rules
37. Extensions of Time
38. Serving of Notice
39. The Award
40. Modification of Award
41. Release of Documents for Judicial Proceedings
42. Applications to Court
43. Administrative Fees
44. Neutral Arbitratorâ€™s Compensation
45. Expenses
46. Deposits
47. Suspension for Non-Payment
48. Interpretation and Application of Rules


Costs of Arbitration (including AAA Administrative Fees)
For Disputes Arising Out of Employer-Promulgated Plans
Filing Fees
Hearing Fees
Postponement/Cancellation Fees
Hearing Room Rental
Abeyance Fees
Expenses


For Disputes Arising Out of Individually-Negotiated Employment Agreements and Contracts


Filing Fees and Case Service Fees
Refund Schedule
Hearing Room Rental
Abeyance Fee
Expenses


For Disputes Proceeding Under the Supplementary Rules for Class Action Arbitration (â€œSupplementary Rulesâ€•)


Optional Rules for Emergency Measures of Protection
O-1. Applicability
O-2. Appointment of Emergency Arbitrator

Employment Arbitration Rules and Mediation Procedures

O-3. Schedule
O-4. Interim Award
O-5. Constitution of the Panel
O-6. Security
O-7. Special Master
O-8. Costs

Employment Mediation Procedures
1. Agreement of Parties
2. Initiation of Mediation
3. Request for Mediation
4. Appointment of Mediator
5. Qualifications of Mediator
6. Vacancies
7. Representation
8. Date, Time, and Place of Mediation
9. Identification of Matters in Dispute
10. Authority of Mediator
11. Privacy
12. Confidentiality
13. No Stenographic Record
14. Termination of Mediation
15. Exclusion of Liability
16. Interpretation and Application of Rules
17. Expenses
Mediation Fee Schedule

## Introduction

Federal and state laws reflecting societal intolerance for certain workplace conduct, as well as court decisions interpreting and applying those statutes, have redefined responsible corporate practice and employee relations. Increasingly, employers and employees face workplace disputes involving alleged wrongful termination, sexual harassment, or discrimination based on race, color, religion, sex, national origin, age, and disability.

As courts and administrative agencies become less accessible to civil litigants, employers and their employees now see alternative dispute resolution ("ADR") as a way to promptly and effectively resolve workplace disputes. ADR procedures are becoming more common in contracts of employment, personnel manuals, and employee handbooks.

Increasingly, corporations and their employees look to the American Arbitration Association as a resource in developing prompt and effective employment procedures for employment-related disputes. These rules have been developed for employers and employees who wish to use a private alternative to resolve their disputes, enabling them to have complaints heard by an impartial person with expertise in the employment field. These procedures benefit both the employer and the individual employee by making it possible to resolve disputes without extensive litigation.

## Role of the American Arbitration Association

The American Arbitration Association, founded in 1926, is a not-for-profit, public service organization dedicated to the resolution of disputes through mediation, arbitration, elections, and other voluntary dispute resolution procedures. Millions of workers are now covered by employment ADR plans administered by the AAA.

In addition, the AAA provides education and training, specialized publications, and research on all forms of dispute settlement. With 30 offices worldwide and cooperative agreements with arbitral institutions in 63 other nations, the American Arbitration Association is the nation's largest private provider of ADR services.

For over 80 years, the American Arbitration Association has set the standards for the development of fair and equitable dispute resolution procedures. The development of the *Employment Arbitration Rules and Mediation Procedures,* and the reconstitution of a select and diverse roster of expert neutrals to hear and resolve disputes, are the most recent initiatives of the Association to provide private, efficient and cost-effective procedures for out-of-court settlement of workplace disputes.

Legal Basis of Employment ADR

Since 1990, Congress has twice re-affirmed the important role of ADR in the area of employment discrimination -- in the Americans with Disabilities Act in 1990, and a year later in Section 118 of the Civil Rights Act of 1991.

The United States Supreme Court has also spoken on the importance of ADR in the employment context. In Gilmer v. Interstate/ Johnson Lane, 500 U.S. 20, 111 S.Ct. 1647 (1991), the Supreme Court refused to invalidate Gilmer's agreement with the New York Stock Exchange that he would arbitrate disputes with his employer (Interstate/Johnson Lane) simply because he was obliged to sign it in order to work as a securities dealer whose trades were executed on the Exchange. Although the Gilmer Court found that the Age Discrimination in Employment Act did not preclude arbitration of age discrimination claims, it specifically declined to decide whether employment arbitration agreements were "contracts of employment" excluded under the Federal Arbitration Act. The specific issue left open by Gilmer was decided 10 years later by the United States Supreme Court in Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001). In Circuit City, the Supreme Court concluded that except for transportation workers such as seamen or railroad workers, the FAA covers all contracts of employment and that the Act may be used to compel arbitration of employment-related claims. While Circuit City involved only state law claims, the Supreme Court had determined previously in Gilmer that federal age discrimination claims (and presumably other federal civil rights claims) were arbitrable under the FAA.

The Fairness Issue: The Due Process Protocol

*The Due Process Protocol for Mediation and Arbitration of Statutory Disputes Arising Out of the Employment Relationship* was developed in 1995 by a special task force composed of individuals representing management, labor, employment, civil rights organizations, private administrative agencies, government, and the American Arbitration Association. The *Due Process Protocol,* which was endorsed by the Association in 1995, seeks to ensure fairness and equity in resolving workplace disputes. The *Due Process Protocol* encourages mediation and arbitration of statutory disputes, provided there are due process safeguards. It conveys the hope that ADR will reduce delays caused by the huge backlog of cases pending before administrative agencies and the courts. The *Due Process Protocol* "recognizes the dilemma inherent in the timing of an agreement to mediate and/or arbitrate statutory disputes" but does not take a position on whether an employer can require a pre-dispute, binding arbitration program as a condition of employment.

The *Due Process Protocol* has been endorsed by organizations representing a broad range of constituencies. They include the American Arbitration Association, the American Bar Association Labor and Employment Section, the American Civil Liberties Union, the Federal Mediation and Conciliation Service, the National Academy of Arbitrators, and the National Society of Professionals in Dispute Resolution. The National Employment Lawyers Association has endorsed the substantive provisions of the *Due Process Protocol.*

It has been incorporated into the *Report of the United States Secretary of Labor's Task Force in Excellence in State and Local Government* and cited with approval in numerous court opinions.

AAA's Employment ADR Rules

On June 1, 1996, the Association issued *National Rules for the Resolution of Employment Disputes* (now known as the

*Employment Arbitration Rules and Mediation Procedures* ). The rules reflected the guidelines outlined in the Due Process Protocol and were based upon the AAA's *California Employment Dispute Resolution Rules,* which were developed by a committee of employment management and plaintiff attorneys, retired judges and arbitrators, in addition to Association executives. The revised rules were developed for employers and employees who wish to use a private alternative to resolve their disputes. The rules enabled parties to have complaints heard by an impartial person of their joint selection, with expertise in the employment field. Both employers and individual employees benefit by having experts resolve their disputes without the costs and delay of litigation. The rules included procedures which ensure due process in both the mediation and arbitration of employment disputes. After a year of use, the rules were amended to address technical issues.

AAA's Policy on Employment ADR

The AAA's policy on employment ADR is guided by the state of existing law, as well as its obligation to act in an impartial manner. In following the law, and in the interest of providing an appropriate forum for the resolution of employment disputes, the Association administers dispute resolution programs which meet the due process standards as outlined in its *Employment Arbitration Rules and Mediation Procedures* and the *Due Process Protocol.* If the Association determines that a dispute resolution program on its face substantially and materially deviates from the minimum due process standards of the *Employment Arbitration Rules and Mediation Procedures* and the *Due Process Protocol,* the Association may decline to administer cases under that program. Other issues will be presented to the arbitrator for determination.

Notification

If an employer intends to utilize the dispute resolution services of the Association in an employment ADR plan, it shall, at least 30 days prior to the planned effective date of the program: (1) notify the Association of its intention to do so; and (2) provide the Association with a copy of the employment dispute resolution plan. If an employer does not comply with this requirement, the Association reserves the right to decline its administrative services. Copies of all plans should be sent to the American Arbitration Association, 725 South Figueroa Street, Suite 2400, Los Angeles, CA 90017; FAX: 213.622.6199.

Costs of Employment Arbitration

These Rules contain two separate and distinct arbitration costs sections; one for disputes arising out of employer-promulgated plans and the other for disputes arising out of individually-negotiated employment agreements and contracts. When the arbitration is filed, the AAA makes an initial administrative determination as to whether the dispute arises from an employer-promulgated plan or an individually-negotiated employment agreement or contract. This determination is made by reviewing the documentation provided to the AAA by the parties, including, but not limited to, the demand for arbitration, the parties' arbitration program or agreement, and any employment agreements or contracts between the parties.

When making its determination on the applicable costs of arbitration section in a given arbitration, the AAA's review is focused on two primary issues. The first component of the review focuses on whether the arbitration program and/or agreement between the individual employee and the employer is one in which it appears that the employer has drafted a standardized arbitration clause with its employees. The second aspect of the review focuses on the ability of the parties to negotiate the terms and conditions of the parties' agreement.

If a party disagrees with the AAA's initial determination, the parties may bring the issue to the attention of the arbitrator for a final determination.

Designing an ADR Program

The guiding principle in designing a successful employment ADR system is that it must be fair in fact and perception. The American Arbitration Association has considerable experience in administering and assisting in the design of employment ADR plans, which gives it an informed perspective on how to effectively design ADR systems, as well as the problems to avoid. Its guidance to those designing employment ADR systems is summarized as follows:

»The American Arbitration Association encourages employers to consider the wide range of legally-available options to resolve workplace disputes outside the courtroom.

»A special emphasis is placed by the Association on encouraging the development of in-house dispute resolution procedures, such as open door policies, ombuds, peer review, and internal mediation.

»The Association recommends an external mediation component to resolve disputes not settled by the internal dispute resolution process.

»Programs which use arbitration as a final step may employ:

- pre-dispute, voluntary final and binding arbitration;
- pre-dispute, mandatory nonbinding arbitration;
- pre-dispute, mandatory final and binding arbitration; or
- post-dispute, voluntary final and binding arbitration.

»Although the AAA administers binding arbitration systems that have been required as a condition of initial or continued employment, such programs must be consistent with the Association's *Employment Arbitration Rules and Mediation Procedures.*

Specific guidance on the responsible development and design of employment ADR systems is contained in the Association's publication, *Resolving Employment Disputes: A Practical Guide,* which is available from the AAA's website, www.adr.org.

Alternative Dispute Resolution Options

Open Door Policy

Employees are encouraged to meet with their immediate manager or supervisor to discuss problems arising out of the workplace environment. In some systems, the employee is free to approach anyone in the chain of command.

Ombuds

A neutral third party (either from within or outside the company) is designated to confidentially investigate and propose settlement of employment complaints brought by employees.

Peer Review

A panel of employees (or employees and managers) works together to resolve employment complaints. Peer review panel members are trained in the handling of sensitive issues.

Internal Mediation

A process for resolving disputes in which a neutral third person from within the company, trained in mediation techniques, helps the disputing parties negotiate a mutually acceptable settlement. Mediation is a nonbinding process in which the parties discuss their disputes with an impartial person who assists them in reaching a settlement. The mediator may suggest ways of resolving the dispute but may not impose a settlement on the parties.

Fact-Finding

The investigation of a complaint by an impartial third person (or team) who examines the complaint and the facts and issues a nonbinding report. Fact-finding is particularly helpful for allegations of sexual harassment, where a fact-finding team, composed of one male and one female neutral, investigates the allegations and presents its findings to the employer and the employee.

Arbitration

Arbitration is generally defined as the submission of disputes to one or more impartial persons for final and binding determination. It can be the final step in a workplace program that includes other dispute resolution methods. There are many possibilities for designing this final step.

They include:

»Pre-Dispute, Voluntary Final and Binding Arbitration

- The parties agree in advance, on a voluntary basis, to use arbitration to resolve disputes and they are bound by the outcome.

»Pre-Dispute, Mandatory Nonbinding Arbitration

- The parties must use the arbitration process to resolve disputes, but they are not bound by the outcome.

»Pre-Dispute, Mandatory Final and Binding Arbitration

- The parties must arbitrate unresolved disputes and they are bound by the outcome.

»Post-Dispute, Voluntary Final and Binding Arbitration

- The parties have the option of deciding whether to use final and binding arbitration after a dispute arises.

Types of Disputes Covered

The dispute resolution procedures contained in this booklet were developed for arbitration agreements contained in employee personnel manuals, an employment application of an individual employment agreement, other types of employment agreements, or can be used for a specific dispute. They do not apply to disputes arising out of collective bargaining agreements or independent contractor agreements.

Employment Arbitration

Rules and Mediation Procedures

1. Applicable Rules of Arbitration

The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter "AAA") or under its Employment Arbitration Rules and Mediation Procedures or for arbitration by the AAA of an employment dispute without specifying particular rules*. If a party establishes that an adverse material inconsistency exists between the arbitration agreement and these rules, the arbitrator shall apply these rules.

If, within 30 days after the AAA's commencement of administration, a party seeks judicial intervention with respect to a pending arbitration and provides the AAA with documentation that judicial intervention has been sought, the AAA will suspend administration for 60 days to permit the party to obtain a stay of arbitration from the court.These rules, and any amendment of them, shall apply in the form in effect at the time the demand for arbitration or submission is received by the AAA.

* *The National Rules for the Resolution of Employment Disputes* have been re-named the *Employment Arbitration Rules and Mediation Procedures*. Any arbitration agreements providing for arbitration under its *National Rules for the Resolution of Employment Disputes* shall be administered pursuant to these *Employment Arbitration Rules and Mediation Procedures*.

Employment Arbitration Rules and Mediation Procedures

## 2. Notification

An employer intending to incorporate these rules or to refer to the dispute resolution services of the AAA in an employment ADR plan, shall, at least 30 days prior to the planned effective date of the program:

  i. notify the Association of its intention to do so and,
  ii. provide the Association with a copy of the employment dispute resolution plan.

Compliance with this requirement shall not preclude an arbitrator from entertaining challenges as provided in Section 1. If an employer does not comply with this requirement, the Association reserves the right to decline its administrative services.

## 3. AAA as Administrator of the Arbitration

When parties agree to arbitrate under these rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in these rules, and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices.

## 4. Initiation of Arbitration

Arbitration shall be initiated in the following manner.

  a. The parties may submit a joint request for arbitration.
  b. In the absence of a joint request for arbitration:
    i. The initiating party (hereinafter "Claimant[s]") shall:
      1. File a written notice (hereinafter "Demand") of its intention to arbitrate at any office of the AAA, within the time limit established by the applicable statute of limitations. Any dispute over the timeliness of the demand shall be referred to the arbitrator. The filing shall be made in duplicate, and each copy shall include the applicable arbitration agreement. The Demand shall set forth the names, addresses, and telephone numbers of the parties; a brief statement of the nature of the dispute; the amount in controversy, if any; the remedy sought; and requested hearing location.
      2. Simultaneously provide a copy of the Demand to the other party (hereinafter "Respondent[s]").
      3. Include with its Demand the applicable filing fee, unless the parties agree to some other method of fee advancement.
    ii. The Respondent(s) may file an Answer with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the Demand. The Answer shall provide the Respondent's brief response to the claim and the issues presented. The Respondent(s) shall make its filing in duplicate with the AAA, and simultaneously shall send a copy of the Answer to the Claimant. If no answering statement is filed within the stated time, Respondent will be deemed to deny the claim. Failure to file an answering statement shall not operate to delay the arbitration.
    iii. The Respondent(s):
      1. May file a counterclaim with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the Demand. The filing shall be made in duplicate. The counterclaim shall set forth the nature of the claim, the amount in controversy, if any, and the remedy sought.
      2. Simultaneously shall send a copy of any counterclaim to the Claimant.
      3. Shall include with its filing the applicable filing fee provided for by these rules.
    iv. The Claimant may file an Answer to the counterclaim with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the counterclaim. The Answer shall provide Claimant's brief response to the counterclaim and the issues presented. The Claimant shall make its filing in duplicate with the AAA, and simultaneously shall send a copy of the Answer to the Respondent(s). If no answering statement is filed within the stated time, Claimant will be deemed to deny the counterclaim. Failure to file an answering statement shall not operate to delay the arbitration.
  c. The form of any filing in these rules shall not be subject to technical pleading requirements.

## 5. Changes of Claim

Before the appointment of the arbitrator, if either party desires to offer a new or different claim or counterclaim, such party must do so in writing by filing a written statement with the AAA and simultaneously provide a copy to the other party(s), who shall have 15 days from the date of such transmittal within which to file an answer with the AAA. After the appointment of the arbitrator, a party may offer a new or different claim or counterclaim only at the discretion of the arbitrator.

## 6. Jurisdiction

  a. The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the

arbitration agreement.

b. The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

c. A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

## 7. Administrative and Mediation Conferences

Before the appointment of the arbitrator, any party may request, or the AAA, in its discretion, may schedule an administrative conference with a representative of the AAA and the parties and/or their representatives. The purpose of the administrative conference is to organize and expedite the arbitration, explore its administrative aspects, establish the most efficient means of selecting an arbitrator, and to consider mediation as a dispute resolution option. There is no administrative fee for this service.

At any time after the filing of the Demand, with the consent of the parties, the AAA will arrange a mediation conference under its Mediation Procedures to facilitate settlement. The mediator shall not be any arbitrator appointed to the case, except by mutual written agreement of the parties. There is no administrative fee for initiating a mediation under AAA Mediation Procedures for parties to a pending arbitration.

## 8. Arbitration Management Conference

As promptly as practicable after the selection of the arbitrator(s), but not later than 60 days thereafter, an arbitration management conference shall be held among the parties and/or their attorneys or other representatives and the arbitrator(s). Unless the parties agree otherwise, the Arbitration Management Conference will be conducted by telephone conference call rather than in person. At the Arbitration Management Conference the matters to be considered shall include, without limitation

i. the issues to be arbitrated;
ii. the date, time, place, and estimated duration of the hearing;
iii. the resolution of outstanding discovery issues and establishment of discovery parameters;
iv. the law, standards, rules of evidence, and burdens of proof that are to apply to the proceeding;
v. the exchange of stipulations and declarations regarding facts, exhibits, witnesses, and other issues;
vi. the names of witnesses (including expert witnesses), the scope of witness testimony, and witness exclusion;
vii. the value of bifurcating the arbitration into a liability phase and damages phase;
viii. the need for a stenographic record;
ix. whether the parties will summarize their arguments orally or in writing;
x. the form of the award;
xi. any other issues relating to the subject or conduct of the arbitration;
xii. the allocation of attorney's fees and costs;
xiii. the specification of undisclosed claims;
xiv. the extent to which documentary evidence may be submitted at the hearing;
xv. the extent to which testimony may be admitted at the hearing telephonically, over the internet, by written or video-taped deposition, by affidavit, or by any other means;
xvi. any disputes over the AAA's determination regarding whether the dispute arose from an individually-negotiated employment agreement or contract, or from an employer-promulgated plan (see Costs of Arbitration section).

The arbitrator shall issue oral or written orders reflecting his or her decisions on the above matters and may conduct additional conferences when the need arises.

There is no AAA administrative fee for an Arbitration Management Conference.

## 9. Discovery

The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.

The AAA does not require notice of discovery related matters and communications unless a dispute arises. At that time, the

parties should notify the AAA of the dispute so that it may be presented to the arbitrator for determination.

10. Fixing of Locale (the city, county, state, territory, and/or country of the arbitration)

If the parties disagree as to the locale, the AAA may initially determine the place of arbitration, subject to the power of the arbitrator(s), after their appointment to make a final determination on the locale. All such determinations shall be made having regard for the contentions of the parties and the circumstances of the arbitration.

11. Date, Time, and Place (the physical site of the hearing within the designated locale) of Hearing

The arbitrator shall set the date, time, and place for each hearing. The parties shall respond to requests for hearing dates in a timely manner, be cooperative in scheduling the earliest practicable date, and adhere to the established hearing schedule. The AAA shall send a notice of hearing to the parties at least 10 days in advance of the hearing date, unless otherwise agreed by the parties.

12. Number, Qualifications, and Appointment of Neutral Arbitrators

   a. If the arbitration agreement does not specify the number of arbitrators or the parties do not agree otherwise, the dispute shall be heard and determined by one arbitrator.
   b. Qualifications
      i. Neutral arbitrators serving under these rules shall be experienced in the field of employment law.
      ii. Neutral arbitrators serving under these rules shall have no personal or financial interest in the results of the proceeding in which they are appointed and shall have no relation to the underlying dispute or to the parties or their counsel that may create an appearance of bias.
      iii. The roster of available arbitrators will be established on a non-discriminatory basis, diverse by gender, ethnicity, background, and qualifications.
      iv. The AAA may, upon request of a party within the time set to return their list or upon its own initiative, supplement the list of proposed arbitrators in disputes arising out of individually-negotiated employment contracts with persons from the Commercial Roster, to allow the AAA to respond to the particular need of the dispute. In multi-arbitrator disputes, at least one of the arbitrators shall be experienced in the field of employment law.
   c. If the parties have not appointed an arbitrator and have not provided any method of appointment, the arbitrator shall be appointed in the following manner:
      i. Shortly after it receives the Demand, the AAA shall send simultaneously to each party a letter containing an identical list of names of persons chosen from the Employment Dispute Resolution Roster. The parties are encouraged to agree to an arbitrator from the submitted list and to advise the AAA of their agreement.
      ii. If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 15 days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable.
      iii. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted list, the AAA shall have the power to make the appointment from among other members of the panel without the submission of additional lists.

13. Party Appointed Arbitrators

   a. If the agreement of the parties names an arbitrator or specifies a method of appointing an arbitrator, that designation or method shall be followed.
   b. Where the parties have agreed that each party is to name one arbitrator, the arbitrators so named must meet the standards of Section R-16 with respect to impartiality and independence unless the parties have specifically agreed pursuant to Section R-16(a) that the party-appointed arbitrators are to be non-neutral and need not meet those standards. The notice of appointment, with the name, address, and contact information of the arbitrator, shall be filed with the AAA by the appointing party. Upon the request of any appointing party, the AAA shall submit a list of members of the National Roster from which the party may, if it so desires, make the appointment.
   c. If the agreement specifies a period of time within which an arbitrator shall be appointed and any party fails to make the appointment within that period, the AAA shall make the appointment.
   d. If no period of time is specified in the agreement, the AAA shall notify the party to make the appointment. If within 15 days after such notice has been sent, an arbitrator has not been appointed by a party, the AAA shall make the appointment.

14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties

   a. If, pursuant to Section R-13, either the parties have directly appointed arbitrators, or the arbitrators have been appointed by the AAA, and the parties have authorized them to appoint a chairperson within a specified time and no appointment is made within that time or any agreed extension, the AAA may appoint the chairperson.
   b. If no period of time is specified for appointment of the chairperson and the party-appointed arbitrators or the parties do not make the appointment within 15 days from the date of the appointment of the last party-appointed arbitrator, the AAA may appoint the chairperson.

Employment Arbitration Rules and Mediation Procedures

    c. If the parties have agreed that their party-appointed arbitrators shall appoint the chairperson from the National Roster, the AAA shall furnish to the party-appointed arbitrators, in the manner provided in Section R-12, a list selected from the National Roster, and the appointment of the chairperson shall be made as provided in that Section.

## 15. Disclosure

    a. Any person appointed or to be appointed as an arbitrator shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. Such obligation shall remain in effect throughout the arbitration.

    b. Upon receipt of such information from the arbitrator or another source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator and others.

    c. In order to encourage disclosure by arbitrators, disclosure of information pursuant to this Section R-15 is not to be construed as an indication that the arbitrator considers that the disclosed circumstance is likely to affect impartiality or independence.

## 16. Disqualification of Arbitrator

    a. Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for:
        i. partiality or lack of independence,
        ii. inability or refusal to perform his or her duties with diligence and in good faith, and
        iii. any grounds for disqualification provided by applicable law. The parties may agree in writing, however, that arbitrators directly appointed by a party pursuant to Section R-13 shall be nonneutral, in which case such arbitrators need not be impartial or independent and shall not be subject to disqualification for partiality or lack of independence.

    b. Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified under the grounds set out above, and shall inform the parties of its decision, which decision shall be conclusive.

## 17. Communication with Arbitrator

    a. No party and no one acting on behalf of any party shall communicate ex parte with an arbitrator or a candidate for arbitrator concerning the arbitration, except that a party, or someone acting on behalf of a party, may communicate ex parte with a candidate for direct appointment pursuant to Section R-13 in order to advise the candidate of the general nature of the controversy and of the anticipated proceedings and to discuss the candidate's qualifications, availability, or independence in relation to the parties or to discuss the suitability of candidates for selection as a third arbitrator where the parties or party-designated arbitrators are to participate in that selection.

    b. Section R-17(a) does not apply to arbitrators directly appointed by the parties who, pursuant to Section R-16(a), the parties have agreed in writing are non-neutral. Where the parties have so agreed under Section R-16(a), the AAA shall as an administrative practice suggest to the parties that they agree further that Section R-17(a) should nonetheless apply prospectively.

## 18. Vacancies

    a. If for any reason an arbitrator is unable to perform the duties of the office, the AAA may, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with applicable provisions of these Rules.

    b. In the event of a vacancy in a panel of neutral arbitrators after the hearings have commenced, the remaining arbitrator or arbitrators may continue with the hearing and determination of the controversy, unless the parties agree otherwise.

    c. In the event of the appointment of a substitute arbitrator, the panel of arbitrators shall determine in its sole discretion whether it is necessary to repeat all or part of any prior hearings.

## 19. Representation

Any party may be represented by counsel or other authorized representatives. For parties without representation, the AAA will, upon request, provide reference to institutions which might offer assistance. A party who intends to be represented shall notify the other party and the AAA of the name and address of the representative at least 10 days prior to the date set for the hearing or conference at which that person is first to appear. If a representative files a Demand or an Answer, the obligation to give notice of representative status is deemed satisfied.

## 20. Stenographic Record

Any party desiring a stenographic record shall make arrangements directly with a stenographer and shall notify the other parties of these arrangements at least three days in advance of the hearing. The requesting party or parties shall pay the cost of the record. If the transcript is agreed by the parties, or determined by the arbitrator to be the official record of the proceeding, it must be provided to the arbitrator and made available to the other parties for inspection, at a date, time, and place determined by the

arbitrator.

## 21. Interpreters

Any party wishing an interpreter shall make all arrangements directly with the interpreter and shall assume the costs of the service.

## 22. Attendance at Hearings

The arbitrator shall have the authority to exclude witnesses, other than a party, from the hearing during the testimony of any other witness. The arbitrator also shall have the authority to decide whether any person who is not a witness may attend the hearing.

## 23. Confidentiality

The arbitrator shall maintain the confidentiality of the arbitration and shall have the authority to make appropriate rulings to safeguard that confidentiality, unless the parties agree otherwise or the law provides to the contrary.

## 24. Postponements

The arbitrator: (1) may postpone any hearing upon the request of a party for good cause shown; (2) must postpone any hearing upon the mutual agreement of the parties; and (3) may postpone any hearing on his or her own initiative.

## 25. Oaths

Before proceeding with the first hearing, each arbitrator shall take an oath of office. The oath shall be provided to the parties prior to the first hearing. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if it is required by law or requested by any party, shall do so.

## 26. Majority Decision

All decisions and awards of the arbitrators must be by a majority, unless the unanimous decision of all arbitrators is expressly required by the arbitration agreement or by law.

## 27. Dispositive Motions

The arbitrator may allow the filing of a dispositive motion if the arbitrator determines that the moving party has shown substantial cause that the motion is likely to succeed and dispose of or narrow the issues in the case.

## 28. Order of Proceedings

A hearing may be opened by: (1) recording the date, time, and place of the hearing; (2) recording the presence of the arbitrator, the parties, and their representatives, if any; and (3) receiving into the record the Demand and the Answer, if any. The arbitrator may, at the beginning of the hearing, ask for statements clarifying the issues involved.

The parties shall bear the same burdens of proof and burdens of producing evidence as would apply if their claims and counterclaims had been brought in court.

Witnesses for each party shall submit to direct and cross examination.

With the exception of the rules regarding the allocation of the burdens of proof and going forward with the evidence, the arbitrator has the authority to set the rules for the conduct of the proceedings and shall exercise that authority to afford a full and equal opportunity to all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute. When deemed appropriate, the arbitrator may also allow for the presentation of evidence by alternative means including web conferencing, internet communication, telephonic conferences and means other than an in-person presentation of evidence. Such alternative means must still afford a full and equal opportunity to all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute and when involving witnesses, provide that such witness submit to direct and cross-examination.

The arbitrator, in exercising his or her discretion, shall conduct the proceedings with a view toward expediting the resolution of the dispute, may direct the order of proof, bifurcate proceedings, and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

Documentary and other forms of physical evidence, when offered by either party, may be received in evidence by the arbitrator.

The names and addresses of all witnesses and a description of the exhibits in the order received shall be made a part of the record.

29. Arbitration in the Absence of a Party or Representative

Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be based solely on the default of a party. The arbitrator shall require the party who is in attendance to present such evidence as the arbitrator may require for the making of the award.

30. Evidence

The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator deems necessary to an understanding and determination of the dispute. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any party or arbitrator is absent, in default, or has waived the right to be present, however "presence" should not be construed to mandate that the parties and arbitrators must be physically present in the same location.

An arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently.The arbitrator shall be the judge of the relevance and materiality of the evidence offered, and conformity to legal rules of evidence shall not be necessary. The arbitrator may in his or her discretion direct the order of proof, bifurcate proceedings, exclude cumulative or irrelevant testimony or other evidence, and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any party is absent, in default, or has waived the right to be present.

If the parties agree or the arbitrator directs that documents or other evidence may be submitted to the arbitrator after the hearing, the documents or other evidence shall be filed with the AAA for transmission to the arbitrator, unless the parties agree to a different method of distribution. All parties shall be afforded an opportunity toexamine such documents or other evidence and to lodge appropriate objections, if any.

31. Inspection

Upon the request of a party, the arbitrator may make an inspection in connection with the arbitration. The arbitrator shall set the date and time, and the AAA shall notify the parties. In the event that one or all parties are not present during the inspection, the arbitrator shall make an oral or written report to the parties and afford them an opportunity to comment.

## 32. Interim Measures

At the request of any party, the arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court, as stated in Rule 39(d), Award.

A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

## 33. Closing of Hearing

The arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies or if satisfied that the record is complete, the arbitrator shall declare the hearing closed.

If briefs are to be filed, the hearing shall be declared closed as of the final date set by the arbitrator for the receipt of briefs. If documents are to be filed as provided in Rule 30 and the date set for their receipt is later than that set for the receipt of briefs, the later date shall be the date of closing the hearing. The time limit within which the arbitrator is required to make the award shall commence to run, in the absence of other agreements by the parties, upon closing of the hearing.

## 34. Reopening of Hearing

The hearing may be reopened by the arbitrator upon the arbitrator's initiative, or upon application of a party for good cause shown, at any time before the award is made. If reopening the hearing would prevent the making of the award within

the specific time agreed on by the parties in the contract(s) out of which the controversy has arisen, the matter may not be reopened unless the parties agree on an extension of time. When no specific date is fixed in the contract, the arbitrator may reopen the hearing and shall have 30 days from the closing of the reopened hearing within which to make an award.

## 35. Waiver of Oral Hearing

The parties may provide, by written agreement, for the waiver of oral hearings. If the parties are unable to agree as to the procedure, upon the appointment of the arbitrator, the arbitrator shall specify a fair and equitable procedure.

## 36. Waiver of Objection/Lack of Compliance with These Rules

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with, and who fails to state objections thereto in writing or in a transcribed record, shall be deemed to have waived the right to object.

## 37. Extensions of Time

The parties may modify any period of time by mutual agreement. The AAA or the arbitrator may for good cause extend any period of time established by these Rules, except the time for making the award. The AAA shall notify the parties of any extension.

## 38. Serving of Notice

    a. Any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules, for any court action in connection therewith, or for the entry of judgment on any award made under these rules may be served on a party by mail addressed to the party, or its representative at the last known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

    b. The AAA, the arbitrator, and the parties may also use overnight delivery or electronic facsimile transmission (fax), to give the notices required by these rules. Where all parties and the arbitrator agree, notices may be transmitted by electronic mail (e-mail), or other methods of communication.

    c. Unless otherwise instructed by the AAA or by the arbitrator, any documents submitted by any party to the AAA or to the arbitrator shall simultaneously

be provided to the other party or parties to the arbitration.

### 39. The Award

a. The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 days from the date of closing of the hearing or, if oral hearings have been waived, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator. Three additional days are provided if briefs are to be filed or other documents are to be transmitted pursuant to Rule 30.

b. An award issued under these rules shall be publicly available, on a cost basis. The names of the parties and witnesses will not be publicly available, unless a party expressly agrees to have its name made public in the award.

c. The award shall be in writing and shall be signed by a majority of the arbitrators and shall provide the written reasons for the award unless the parties agree otherwise. It shall be executed in the manner required by law.

d. The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law. The arbitrator shall, in the award, assess arbitration fees, expenses, and compensation as provided in Rules 43, 44, and 45 in favor of any party and, in the event any administrative fees or expenses are due the AAA, in favor of the AAA, subject to the provisions contained in the Costs of Arbitration section.

e. If the parties settle their dispute during the course of the arbitration and mutually request, the arbitrator may set forth the terms of the settlement in a consent award.

f. The parties shall accept as legal delivery of the award the placing of the award or a true copy thereof in the mail, addressed to a party or its representative at the last known address, personal service of the award, or the filing of the award in any manner that may be required by law.

g. The arbitrator's award shall be final and binding.

### 40. Modification of Award

Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator to correct any clerical, typographical, technical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided. The other parties shall be given 10 days to respond to the request. The arbitrator shall dispose of the request within 20 days after transmittal by the AAA to the arbitrator of the request and any response thereto. If applicable law requires a different procedural time frame, that procedure shall be followed.

### 41. Release of Documents for Judicial Proceedings

The AAA shall, upon the written request of a party, furnish to the party, at that party's expense, certified copies of any papers in the AAA's case file that may be required in judicial proceedings relating to the arbitration.

### 42. Applications to Court

a. No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

b. Neither the AAA nor any arbitrator in a proceeding under these rules is or shall be considered a necessary or proper party in judicial proceedings relating to the arbitration.

c. Parties to these procedures shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction.

d. Parties to an arbitration under these rules shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules.

### 43. Administrative Fees

As a not-for-profit organization, the AAA shall prescribe filing and other administrative fees to compensate it for the cost of providing administrative services. The AAA administrative fee schedule in effect at the time the demand for arbitration or submission agreement is received shall be applicable.

AAA fees shall be paid in accordance with the Costs of Arbitration Section (see pages 45-53).

The AAA may, in the event of extreme hardship on any party, defer or reduce the administrative fees. (To ensure that you have the most current information, see our website at www.adr.org).

### 44. Neutral Arbitrator's Compensation

Arbitrators shall charge a rate consistent with the arbitrator's stated rate of compensation. If there is disagreement concerning the

terms of compensation, an appropriate rate shall be established with the arbitrator by the AAA and confirmed to the parties.

Any arrangement for the compensation of a neutral arbitrator shall be made through the AAA and not directly between the parties and the arbitrator. Payment of the arbitrator's fees and expenses shall be made by the AAA from the fees and moneys collected by the AAA for this purpose.

Arbitrator compensation shall be borne in accordance with the Costs of Arbitration section.

### 45. Expenses

Unless otherwise agreed by the parties or as provided under applicable law, the expenses of witnesses for either side shall be borne by the party producing such witnesses.

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator shall be borne in accordance with the Costs of Arbitration section.

### 46. Deposits

The AAA may require deposits in advance of any hearings such sums of money as it deems necessary to cover the expenses of the arbitration, including the arbitrator's fee, if any, and shall render an accounting and return any unexpended balance at the conclusion of the case.

### 47. Suspension for Non-Payment

If arbitrator compensation or administrative charges have not been paid in full, the AAA may so inform the parties in order that one of them may advance the required payment. If such payments are not made, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend or terminate the proceedings.

### 48. Interpretation and Application of Rules

The arbitrator shall interpret and apply these rules as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these Rules, it shall be resolved by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other procedures shall be interpreted and applied by the AAA.

### Costs of Arbitration (including AAA Administrative Fees)

This Costs of Arbitration section contains two separate and distinct sections. Initially, the AAA shall make an administrative determination as to whether the dispute arises from an employer-promulgated plan or an individually-negotiated employment agreement or contract.

If a party disagrees with the AAA's determination, the parties may bring the issue to the attention of the arbitrator for a final determination. The arbitrator's determination will be made on documents only, unless the arbitrator deems a hearing is necessary.

### For Disputes Arising Out of Employer-Promulgated Plans*:

Arbitrator compensation is not included as part of the administrative fees charged by the AAA. Arbitrator compensation is based on the most recent biography sent to the parties prior to appointment. The employer shall pay the arbitrator's compensation unless the employee, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation. Arbitrator compensation,

expenses as defined in section (iv) below, and administrative fees are not subject to reallocation by the arbitrator(s) except upon the arbitrator's determination that a claim or counterclaim was filed for purposes of harassment or is patently frivolous.

*Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. Only those disputes arising out of employer promulgated plans are included in the consumer definition. If you believe that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household. Please contact the AAA's Western Case Management Center at 877.528.0880 if you have any questions regarding the waiver of administrative fees. (Effective January 1, 2003.)

(i) Filing Fees

In cases before a single arbitrator, a nonrefundable filing fee capped in the amount of $150, is payable in full by the employee when a claim is filed, unless the plan provides that the employee pay less. A nonrefundable fee in the amount of $900 is payable in full by the employer, unless the plan provides that the employer pay more.

In cases before three or more arbitrators, a nonrefundable filing fee capped in the amount of $150, is payable in full by the employee when a claim is filed, unless the plan provides that the employee pay less. A nonrefundable fee in the amount of $1,775 is payable in full by the employer, unless the plan provides that the employer pay more.

There shall be no filing fee charged for a counterclaim.

(ii) Hearing Fees

For each day of hearing held before a single arbitrator, an administrative fee of $300 is payable by the employer.

For each day of hearing held before a multi-arbitrator panel, an administrative fee of $500 is payable by the employer.

There is no AAA hearing fee for the initial Arbitration Management Conference.

(iii) Postponement/Cancellation Fees

A fee of $150 is payable by a party causing a postponement of any hearing scheduled before a single arbitrator.

A fee of $250 is payable by a party causing a postponement of any hearing scheduled before a multi-arbitrator panel.

(iv) Hearing Room Rental

The hearing fees described above do not cover the rental of hearing rooms. The AAA maintains hearing rooms in most offices for the convenience of the parties. Check with the administrator for availability and rates. Hearing room rental fees will be borne by the employer.

(v) Abeyance Fee

Parties on cases held in abeyance for one year will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be administratively closed.

(vi) Expenses

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne by the employer.

For Disputes Arising Out of Individually-Negotiated Employment Agreements and Contracts:

The AAA's Commercial Fee Schedule, below, will apply to disputes arising out of individually-negotiable employment agreements and contracts, even if such agreements and contracts reference or incorporate an employer-promulgated plan.

The administrative fees of the AAA are based on the amount of the claim or counterclaim. Arbitrator compensation is not included as part of the administrative fees charged by the AAA. Arbitrator compensation is based on the most recent biography sent to the parties prior to appointment. Unless the parties agree otherwise, arbitrator compensation, and expenses as defined in section (v) below, shall be borne equally by the parties and are subject to reallocation by the arbitrator in the award.

(i) Filing Fees and Case Service Fees

An initial filing fee is payable in full by the filing party when a claim, counterclaim, or additional claim is filed. A case service fee will be incurred for all cases that proceed to their first hearing. This fee will be payable in advance at the time that the first hearing is scheduled. This fee will be refunded at the conclusion of the case if no hearings have occurred. However, if the Association is not notified at least 24 hours before the time of the scheduled hearing, the case service fee will remain due and will not be refunded.

These fees will be billed in accordance with the following schedule:

| Amount of Claim | Initial Filing Fee | Case Service Fee |
|---|---|---|
| Above $0 to $10,000 | $750 | $200 |
| Above $10,000 to $75,000 | $950 | $300 |
| Above $75,000 to $150,000 | $1,800 | $750 |
| Above $150,000 to $300,000 | $2,750 | $1,250 |
| Above $300,000 to $500,000 | $4,250 | $1,750 |
| Above $500,000 to $1,000,000 | $6,000 | $2,500 |
| Above $1,000,000 to $5,000,000 | $8,000 | $3,250 |
| Above $5,000,000 to $10,000,000 | $10,000 | $4,000 |
| Above $10,000,000 | * | * |
| Nonmonetary Claims** | $3,250 | $1,250 |

*\*\* This fee is applicable only when a claim or counterclaim is not for a monetary amount. Where a monetary claim amount is not known, parties will be required to state a range of claims or be subject to the highest possible filing fee.Fee Schedule for Claims in Excess of $10 MillionThe following is the fee schedule for use in disputes involving claims in excess of $10 million. If you have any questions, please consult your local AAA office or case management center.*

Fee Schedulefor Claims in Excess of $10 Million

The following is the fee schedule for use in disputes involving claims in excess of $10 million. If you have any questions, please consult your local AAA office or case management center.

| Claim Size | Fee | Case Service Fee |
|---|---|---|

| $10 million and above | Base fee of $ 12,500 plus .01% of the amount of claim above $ 10 million. | $6,000 |
|---|---|---|
| | Filing fees capped at $65,000 | |

Fees are subject to increase if the amount of a claim or counterclaim is modified after the initial filing date. Fees are subject to decrease if the amount of a claim or counterclaim is modified before the first hearing.

The minimum fees for any case having three or more arbitrators are $2,750 for the filing fee, plus a $1,250 case service fee.

(ii) Refund Schedule

The AAA offers a refund schedule on filing fees. For cases with claims up to $75,000, a minimum filing fee of $300 will not be refunded. For all cases, a minimum fee of $500 will not be refunded. Subject to the minimum fee requirements, refunds will be calculated as follows:

»100% of the filing fee, above the minimum fee, will be refunded if the case is settled or withdrawn within five calendar days of filing.

»50% of the filing fee, in any case with filing fees in excess of $500, will be refunded if the case is settled or withdrawn between six and 30 calendar days of filing. Where the filing fee is $500, the refund will be $200.

»25% of the filing fee will be refunded if the case is settled or withdrawn between 31 and 60 calendar days of filing.

No refund will be made once an arbitrator has been appointed (this includes one arbitrator on a three-arbitrator panel). No refunds will be granted on awarded cases.

Note: The date of receipt of the demand for arbitration with the AAA will be used to calculate refunds of filing fees for both claims and counterclaims.

(iii) Hearing Room Rental

The fees described above do not cover the rental of hearing rooms. The AAA maintains hearing rooms in most offices for the convenience of the parties. Check with the AAA for availability and rates.

(iv) Abeyance Fee

Parties on cases held in abeyance for one year will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be administratively closed.

(v) Expenses

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne equally by the parties.

For Disputes Proceeding Under the Supplementary Rules for Class Action Arbitration ("Supplementary Rules"):

The AAA's Administered Fee Schedule, as listed in Section 11 of the Supplementary Rules for Class Action Arbitration, shall apply to disputes proceeding under the Supplementary Rules.

Optional Rules for Emergency Measures of Protection

O-1. Applicability

Where parties by special agreement or in their arbitration clause have adopted these rules for emergency measures of protection, a party in need of emergency relief prior to the constitution of the panel shall notify the AAA and all other parties in writing of the nature of the relief sought and the reasons why such relief is required on an emergency basis. The application shall also set forth the reasons why the party is entitled to such relief. Such notice may be given by facsimile transmission, or other reliable means, but must include a statement certifying that all other parties have been notified or an explanation of the steps taken in good faith to notify other parties.

O-2. Appointment of Emergency Arbitrator

Within one business day of receipt of notice as provided in Section O-1, the AAA shall appoint a single emergency arbitrator from a special AAA panel of emergency arbitrators designated to rule on emergency applications. The emergency arbitrator shall immediately disclose any circumstance likely, on the basis of the facts disclosed in the application, to affect such arbitrator's impartiality or independence. Any challenge to the appointment of the emergency arbitrator must be made within one business day of the communication by the AAA to the parties of the appointment of the emergency arbitrator and the circumstances disclosed.

O-3. Schedule

The emergency arbitrator shall as soon as possible, but in any event within two business days of appointment, establish a schedule for consideration of the application for emergency relief. Such schedule shall provide a reasonable opportunity to all parties to be heard, but may provide for proceeding by telephone conference or on written submissions as alternatives to a formal hearing.

O-4. Interim Award If after consideration the emergency arbitrator is satisfied that the party seeking the emergency relief has shown that immediate and irreparable loss or damage will result in the absence of emergency relief, and that such party is entitled to such relief, the emergency arbitrator may enter an interim award granting the relief and stating the reasons therefore.

O-5. Constitution of the Panel

Any application to modify an interim award of emergency relief must be based on changed circumstances and may be made to the emergency arbitrator until the panel is constituted; thereafter such a request shall be addressed to the panel. The emergency arbitrator shall have no further power to act after the panel is constituted unless the parties agree that the emergency arbitrator is named as a member of the panel.

O-6. Security

Any interim award of emergency relief may be conditioned on provision by the party seeking such relief of appropriate security.

O-7. Special Master

A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate. If the AAA is directed by a judicial authority to nominate a special master to consider and report on an application for emergency relief, the AAA shall proceed as provided in Section O-1 of this article and the references to the emergency arbitrator shall be read to mean the special master, except that the special master shall issue a report rather than an interim award.

## O-8. Costs

The costs associated with applications for emergency relief shall be apportioned in the same manner as set forth in the Costs of Arbitration section.

## Employment Mediation Procedures

## 1. Agreement of Parties

Whenever, by provision in an employment dispute resolution program, or by separate submission, the parties have provided for mediation or conciliation of existing or future disputes under the auspices of the American Arbitration Association (hereinafter "AAA") or under these procedures, they shall be deemed to have made these procedures, as amended and in effect as of the date of the submission of the dispute, a part of their agreement.

## 2. Initiation of Mediation

Any party to an employment dispute may initiate mediation by filing with the AAA a submission to mediation or a written request for mediation pursuant to these procedures, together with the applicable administrative fee.

## 3. Request for Mediation

A request for mediation shall contain a brief statement of the nature of the dispute and the names, addresses, and telephone numbers of all parties to the dispute and those who will represent them, if any, in the mediation. The initiating party shall simultaneously file two copies of the request with the AAA and one copy with every other party to the dispute.

## 4. Appointment of Mediator

Upon receipt of a request for mediation, the AAA shall send simultaneously to each party to the dispute an identical list of five (unless the AAA decides that a different number is appropriate) names of qualified mediators. The parties are encouraged to agree to a mediator from the submitted list and to advise the AAA of their agreement. If the parties are unable to agree upon an mediator, each party to the dispute shall have 15 days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of a mediator to serve. If the parties fail to agree on any of the persons named, or if acceptable mediators are unable to act, or if for any other reason the appointment cannot be made from the submitted lists, the AAA shall have the power to appoint a qualified mediator to serve.

If the agreement of the parties names a mediator or specifies a method of appointing a mediator, that designation or method shall be followed.

## 5. Qualifications of Mediator

No person shall serve as a mediator in any dispute in which that person has any financial or personal interest in the result of the mediation, except by the written consent of all parties. Prior to accepting an appointment, the prospective mediator shall disclose any circumstance likely to create a presumption of bias or prevent a prompt meeting with the parties. Upon receipt of such information, the AAA shall either replace the mediator or immediately communicate the information to the parties for their comments. In the event that the parties disagree as to whether the mediator shall serve, the AAA will appoint another mediator. The AAA is authorized to appoint another mediator if the appointed mediator is unable to serve promptly.

## 6. Vacancies

If any mediator shall become unwilling or unable to serve, the AAA will appoint another mediator, unless the parties agree otherwise.

## 7. Representation

Any party may be represented by a person of the party's choice. The names and addresses of such persons shall be communicated in writing to all parties and to the AAA.

## 8. Date, Time, and Place of Mediation

The mediator shall fix the date, time, and place of each mediation session. The mediation shall be held at the appropriate regional office of the AAA, or at any other convenient location agreeable to the mediator and the parties, as the mediator shall determine.

## 9. Identification of Matters in Dispute

At least 10 days prior to the first scheduled mediation session, each party shall provide the mediator with a brief memorandum setting forth its position with regard to the issues that need to be resolved. At the discretion of the mediator, such memoranda may be mutually exchanged by the parties.

At the first session, the parties will be expected to produce all information reasonably required for the mediator to understand the issues presented. The mediator may require any party to supplement such information.

## 10. Authority of Mediator

The mediator does not have the authority to impose a settlement on the parties but will attempt to help them reach a satisfactory resolution of their dispute. The mediator is authorized to conduct joint and separate meetings with the parties and to make oral and written recommendations for settlement. Whenever necessary, the mediator may also obtain expert advice concerning technical aspects of the dispute, provided that the parties agree and assume the expenses of obtaining such advice.

Arrangements for obtaining such advice shall be made by the mediator or the parties, as the mediator shall determine.

The mediator is authorized to end the mediation whenever, in the judgment of the mediator, further efforts at mediation would not contribute to a resolution of the dispute between the parties.

## 11. Privacy

Mediation sessions are private. The parties and their representatives may attend mediation sessions. Other persons may attend only with the permission of the parties and with the consent of the mediator.

## 12. Confidentiality

Confidential information disclosed to a mediator by the parties or by witnesses in the course of the mediation shall not be divulged by the mediator. All records, reports, or other documents received by a mediator while serving in that capacity shall be confidential. The mediator shall not be compelled to divulge such records or to testify in regard to the mediation in any adversary proceeding or judicial forum.

The parties shall maintain the confidentiality of the mediation and shall not rely on, or introduce as evidence in any arbitral, judicial, or other proceeding:

   a. views expressed or suggestions made by another party with respect to a possible settlement of the dispute;

b. admissions made by another party in the course of the mediation proceedings;
c. proposals made or views expressed by the mediator; or
d. the fact that another party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

## 13. No Stenographic Record

There shall be no stenographic record of the mediation process.

## 14. Termination of Mediation

The mediation shall be terminated:

a. by the execution of a settlement agreement by the parties;
b. by a written declaration of the mediator to the effect that further efforts at mediation are no longer worthwhile; or
c. by a written declaration of a party or parties to the effect that the mediation proceedings are terminated.

## 15. Exclusion of Liability

Neither the AAA nor any mediator is a necessary party in judicial proceedings relating to the mediation.

Neither the AAA nor any mediator shall be liable to any party for any act or omission in connection with any mediation conducted under these procedures.

## 16. Interpretation and Application of Procedures

The mediator shall interpret and apply these procedures insofar as they relate to the mediator's duties and responsibilities. All other procedures shall be interpreted and applied by the AAA.

## 17. Expenses

The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the mediation, including required traveling and other expenses of the mediator and representatives of the AAA, and the expenses of any witness and the cost of any proofs or expert advice produced at the direct request of the mediator, shall be borne equally by the parties unless they agree otherwise.

Mediation Fee Schedule

The nonrefundable case set-up fee is $325

per party. In addition, the parties are responsible for compensating the mediator at his or her published rate, for conference and study time (hourly or per diem).

All expenses are generally borne equally by the parties. The parties may adjust this arrangement by agreement.

Before the commencement of the mediation, the AAA shall estimate anticipated total expenses. Each party shall pay its portion of that amount as per the agreed upon arrangement. When the mediation has terminated, the AAA shall render an accounting and return any unexpendable balance to the parties.

© 2007 American Arbitration Association, Inc. All rights reserved. These Rules are the copyrighted property of the American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services. Any unauthorized use or modification of these Rules may violate copyright laws and other applicable laws. Please contact 800.778.7879 or websitemail@adr.org for additional information.

Employment Arbitration Rules and Mediation Procedures

- <u>AAA MISSION & PRINCIPLES</u>
- <u>PRIVACY POLICY</u>
- <u>TERMS OF USE</u>
- <u>TECHNICAL RECOMMENDATIONS</u>
- ©2007 AMERICAN ARBITRATION ASSOCIATION. ALL RIGHTS RESERVED

# GE Commercial Finance - Resolve
## Submission to Mediation

DATE: _____

The named Parties hereby submit the dispute below to mediation under the GE Commercial Finance Resolve procedure.

Description of legal claim(s):

_____

_____

_____

_____

(Please note: this description should be a brief, but complete, description of the nature of the legal claim(s) to be mediated.  This includes, but is not limited to, monetary amounts requested by each party, requests for specific performance, etc.  If the parties have undergone settlement discussions in relation to this matter, please describe briefly.  Please feel free to attach additional pages if necessary.)

Place of Mediation: _____

| | |
|---|---|
| Name of Party_____ | Name of Party_____ |
| Address_____ | Address_____ |
| City/State_____ | City/State_____ |
| Phone Number_____ | Phone Number_____ |
| Name of Attorney_____ | Name of Attorney_____ |
| Firm_____ | Firm_____ |
| Address_____ | Address_____ |
| City/State_____ | City/State_____ |
| Phone Number_____ | Phone Number_____ |
| Fax Number_____ | Fax Number_____ |
| Signed By_____ | Signed By_____ |
| | |
| Please print name beneath signature | Please print name beneath signature |

**Appendix C**

# MEDIATION CONFIDENTIALITY AGREEMENT

In order to promote communication among the parties and the mediator and to facilitate settlement of the dispute, all parties agree that the mediator has no liability for any act or omission in connection with the mediation, and further agree as follows:

The mediator is a neutral intermediary who may not act as an advocate for any party.

All statements made during the course of the mediation are privileged settlement discussions, are made without prejudice to any party's legal position, and are non-discoverable and inadmissible for any purpose in any legal proceeding.

The privileged character of any information is not altered by disclosure to the mediator. Disclosure of any records, reports, or other documents received or prepared by the mediator cannot be compelled. The mediator shall not be compelled to disclose or to testify in any proceeding as to (1) any records, reports, or other documents received or prepared by the mediator or (2) information disclosed or representations made in the course of the mediation or otherwise communicated to the mediator in confidence.

No aspect of the mediation shall be relied upon or introduced as evidence in any arbitral, judicial, or other proceeding, including but not limited to:

(a) Views expressed or suggestions made by a party with respect to a possible settlement of the dispute;
(b) Admissions made in the course of the mediation proceedings; and
(c) Proposals made or views expressed by the mediator or the response of any party thereto.

The parties agree that breach of this agreement would cause irreparable injury and that monetary damages would be an inadequate remedy, since the parties are relying upon this agreement in confidentiality in disclosing sensitive business and/or personal information. The parties therefore agree and stipulate that any party to this agreement may obtain an injunction to prevent disclosure of any such confidential information in violation of this agreement.

Any party breaching this agreement shall be liable for and shall indemnify the non-breaching parties and the mediator for all costs, expenses, liabilities, and fees, including attorneys' fees, which may be incurred as a result of such breach.

Dated _____, 20__, and signed before commencement of the mediation by each of the persons whose signatures appear below.

_____
Mediator

Employee:                              Company:

_____            _____
_____            _____
_____            _____

**Appendix D**

# GE Commercial Finance – Resolve
## Submission to Arbitration

DATE: _____

The named Parties hereby submit the dispute below to arbitration under the GE Commercial Finance Resolve procedure.

Description of legal claim(s):

_____

_____

_____

_____

_____

(Please note: this description should be a brief, but complete, description of the nature of the legal claim(s) to be arbitrated.  This includes, but is not limited to, monetary amounts requested by each party, requests for specific performance, etc.  If the parties have undergone settlement discussions in relation to this matter, please describe briefly.  Please feel free to attach additional pages if necessary.)

Place of Arbitration: _____

| | |
|---|---|
| Name of Party_____ | Name of Party_____ |
| Address_____ | Address_____ |
| City/State_____ | City/State_____ |
| Phone Number_____ | Phone Number_____ |
| Name of Attorney_____ | Name of Attorney_____ |
| Firm_____ | Firm_____ |
| Address_____ | Address_____ |
| City/State_____ | City/State_____ |
| Phone Number_____ | Phone Number_____ |
| Fax Number_____ | Fax Number_____ |
| Signed By _____ | Signed By_____ |
| _____ | _____ |
| Please print name beneath signature | Please print name beneath signature |

**Appendix E**

Version 1/23/2005

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROGER L. SCOTT,

            Plaintiff,

v.

XEROX CAPITAL SERVICES LLC,

            Defendant.

No. 08cv3911

Judge Coar
Magistrate Judge Brown

## DECLARATION OF CARYN FEINSTEIN

1.      My name is Caryn Feinstein.  I am the Human Resources Generalist and RESOLVE Administrator for Xerox Capital Services, a position I have held since approximately May 2002.  Prior to that I was employed by Xerox Corporation since 1980.

2.      I am over 18 years of age and I have personal knowledge of the facts set forth in this Declaration.

3.      In or about November 2001, Xerox Corporation and General Electric Capital Corporation ("GE") established a joint venture called Xerox Capital Services LLC.

4.      Part of my responsibilities as HR Generalist and RESOLVE Administrator is to assist in maintaining the personnel files of each Xerox Capital Services employee.

5.      On or about June 2000, GE introduced a program known as RESOLVE, an employee dispute resolution program ("RESOLVE").  It describes a comprehensive scheme for resolving employment disputes out of court.  In or about May 2002, after the joint venture, Xerox Capital Services adopted and implemented the RESOLVE program.  A true and correct

copy of the June 2000 RESOLVE Handbook and Guidelines are attached as Exhibit 1 and 2 respectively.

6.      I am the person responsible at Xerox Capital Services for administering the RESOLVE process.

7.      The RESOLVE Handbook is a summary of the RESOLVE dispute resolution procedure. The RESOLVE Guidelines contain the full details of all provisions of the RESOLVE procedure. Both are made available to Xerox Capital Services employees via GE's website and in hard copy from Human Resources.

8.      In April 1999, Roger L. Scott began his employment at Xerox Corporation.

9.      On November 26, 2001, Mr. Scott was offered employment at Xerox Capital Services. He started working at Xerox Capital Services in May 2002. A true and correct copy of Mr. Scott's offer of employment with Xerox Capital Services, which was maintained in his personnel file in the ordinary course of business, is attached as Exhibit 3.

10.     At the time of his offer with Xerox Capital Services, Mr. Scott was given a copy of the June 2000 RESOLVE Handbook and requested to sign an attached acknowledgment form consenting to the resolution of all employment disputes with Xerox Capital Services in accordance with its terms.

11.     On December 11, 2001, Mr. Scott complied with Xerox Capital Services' request and signed an acknowledgment consenting to the use of RESOLVE. A true and correct copy of Mr. Scott's acknowledgment form, which was maintained in his personnel file in the ordinary course of business, is attached as Exhibit 4.

CHICAGO/#1814683.2

12.    Since its promulgation in 2000, the RESOLVE Guidelines has been revised in accordance with section II.D. of the RESOLVE Guidelines.

13.    All revisions were made available to all Xerox Capital Services employees via GE's website and in hard copy from Human Resources.

14.    The last revision to the RESOLVE Guidelines occurred on September 16, 2007. A true and correct copy of the September 2007 version is attached as Exhibit 5.

15.    Mr. Scott was notified of the September 2007 version via electronic mail in or about August 2007.  The September 2007 revisions were also made available to all Xerox Capital Services employees via GE's website and in hard copy from Human Resources.

16.    Mr. Scott did not submit any objection – written or oral – to any of the RESOLVE revisions.

CHICAGO/#1814683.2

I declare under penalty of perjury that the foregoing is true and correct.  Executed on July 16, 2008.

_____

Caryn Feinstein

CHICAGO/#1814683.2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROGER L. SCOTT,

        Plaintiff,

v.

XEROX CAPITAL SERVICES LLC,

        Defendant.

No. 08cv3911

Judge Coar
Magistrate Judge Brown

## DECLARATION OF CARYN FEINSTEIN

1.     My name is Caryn Feinstein.  I am the Human Resources Generalist and RESOLVE Administrator for Xerox Capital Services, a position I have held since approximately May 2002.  Prior to that I was employed by Xerox Corporation since 1980.

2.     I am over 18 years of age and I have personal knowledge of the facts set forth in this Declaration.

3.     In or about November 2001, Xerox Corporation and General Electric Capital Corporation ("GE") established a joint venture called Xerox Capital Services LLC.

4.     Part of my responsibilities as HR Generalist and RESOLVE Administrator is to assist in maintaining the personnel files of each Xerox Capital Services employee.

5.     On or about June 2000, GE introduced a program known as RESOLVE, an employee dispute resolution program ("RESOLVE").  It describes a comprehensive scheme for resolving employment disputes out of court.  In or about May 2002, after the joint venture, Xerox Capital Services adopted and implemented the RESOLVE program.  A true and correct

copy of the June 2000 RESOLVE Handbook and Guidelines are attached as Exhibit 1 and 2 respectively.

6.      I am the person responsible at Xerox Capital Services for administering the RESOLVE process.

7.      The RESOLVE Handbook is a summary of the RESOLVE dispute resolution procedure. The RESOLVE Guidelines contain the full details of all provisions of the RESOLVE procedure. Both are made available to Xerox Capital Services employees via GE's website and in hard copy from Human Resources.

8.      In April 1999, Roger L. Scott began his employment at Xerox Corporation.

9.      On November 26, 2001, Mr. Scott was offered employment at Xerox Capital Services. He started working at Xerox Capital Services in May 2002. A true and correct copy of Mr. Scott's offer of employment with Xerox Capital Services, which was maintained in his personnel file in the ordinary course of business, is attached as Exhibit 3.

10.      At the time of his offer with Xerox Capital Services, Mr. Scott was given a copy of the June 2000 RESOLVE Handbook and requested to sign an attached acknowledgment form consenting to the resolution of all employment disputes with Xerox Capital Services in accordance with its terms.

11.      On December 11, 2001, Mr. Scott complied with Xerox Capital Services' request and signed an acknowledgment consenting to the use of RESOLVE. A true and correct copy of Mr. Scott's acknowledgment form, which was maintained in his personnel file in the ordinary course of business, is attached as Exhibit 4.

- 2 -

12.    Since its promulgation in 2000, the RESOLVE Guidelines has been revised in accordance with section II.D. of the RESOLVE Guidelines.

13.    All revisions were made available to all Xerox Capital Services employees via GE's website and in hard copy from Human Resources.

14.    The last revision to the RESOLVE Guidelines occurred on September 16, 2007. A true and correct copy of the September 2007 version is attached as Exhibit 5.

15.    Mr. Scott was notified of the September 2007 version via electronic mail in or about August 2007.  The September 2007 revisions were also made available to all Xerox Capital Services employees via GE's website and in hard copy from Human Resources.

16.    Mr. Scott did not submit any objection – written or oral – to any of the RESOLVE revisions.

- 3 -

I declare under penalty of perjury that the foregoing is true and correct.  Executed on July 16, 2008.

_____

Caryn Feinstein

CHICAGO/#1814683.2



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1563225 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2005 WL 1563225 (N.D.Ill.))

Page 1

**C** Washek v. Union Fidelity Life Ins. Co.
N.D.Ill.,2005.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
Sandra L. WASHEK, Plaintiff,
v.
UNION FIDELITY LIFE INSURANCE
COMPANY, d/b/a G.E. Financial Assurance,
Defendant.
**No. 04 C 7706.**

June 30, 2005.

Thomas Carl Crooks, Attorney at Law, Chicago, IL,
for Plaintiff.
Tracey Lynne Truesdale, Robert Patrick Casey,
Zachary Charles Jackson, Ogletree Deakins Nash
Smoak & Stewart, Chicago, IL, for Defendant.

*MEMORANDUM, OPINION AND ORDER*

ANDERSEN, J.
**\*1** This case is before the court on the motion of
defendant Union Fidelity Life Insurance Company
("Union Fidelity") to dismiss plaintiff Sandra L.
Washek's complaint pursuant to Federal Rule of Civil
Procedure 12(b)(1) for lack of subject matter
jurisdiction. For the reasons stated below, we grant
the motion to dismiss.

BACKGROUND

On June 12, 2000, plaintiff Washek began her
employment with defendant Union Fidelity. On June
12, 2003, Washek filed her first Charge of
Discrimination with the United States Equal
Employment Opportunity Commission ("EEOC"), in
which she accused Union Fidelity of discrimination
based on gender and retaliation. On October 17,
2003, after months of unsuccessful mediation
attempts between Washek and Union Fidelity, Union
Fidelity terminated plaintiff Washek's employment.
Washek subsequently filed a second Charge of

Discrimination with the EEOC on April 30, 2004,
alleging the same claims against Union Fidelity. On
November 29, 2004, Washek filed a two count
complaint alleging gender discrimination and
retaliation in violation of Title VII of the Civil Rights
Act of 1964, as amended by the Civil Rights Act of
1991.

Effective June 1, 2000, Union Fidelity adopted and
implemented an alternative **disputeresolution**
program called **RESOLVE** to cover employment-
related disputes between Union Fidelity and its
employees. The "covered claims" include both
gender discrimination and retaliation claims, which
are the specific claims alleged in plaintiff Washek's
complaint. In accordance with the terms of the
**RESOLVE** program, all individuals hired on or after
June 1, 2000 must, as a condition of their hire, agree
to submit their employment-related disputes to the
**RESOLVE** program rather than filing a lawsuit.

Prior to beginning her employment with Union
Fidelity, Washek signed the Union Fidelity
"Conditions of Employment" form. By signing this
form, Washek acknowledged that she had received
and reviewed a copy of the **RESOLVE** Program
Handbook and that she agreed to abide by the terms
of the program. This agreement includes Washek's
consent to the requirement that she submit any
"covered claims" she makes against Union Fidelity to
the binding **arbitration** procedure provided by the
**RESOLVE** program in lieu of filing a lawsuit.
Because Washek has alleged claims covered by
**RESOLVE** in her complaint, rather than attempt to
**resolve** the dispute through the **RESOLVE** program,
Union Fidelity now moves to dismiss her complaint
for lack of subject matter jurisdiction.

DISCUSSION

In deciding a motion to dismiss for lack of subject
matter jurisdiction under Federal Rule of Civil
Procedure 12(b)(1), the court must accept the factual
allegations made in the complaint as true and
construe reasonable inferences in favor of the
plaintiff. *Rueth v. United States Environmental*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit B

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 1563225 (N.D.Ill.)

**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1563225 (N.D.Ill.))**

*Protection Agency,* 13 F.3d 227, 229 (7th Cir.1993). However, a court is not restricted to the jurisdictional contentions asserted in the complaint but may use other evidence that has been submitted on the issue of determining whether subject matter jurisdiction actually does exist. *Ezekiel v. Michel,* 66 F.3d 894, 897 (7th Cir.1995).

I. The **RESOLVE** Agreement to **Arbitrate** is Enforceable.

**\*2** As a preliminary matter, we note that the Federal **Arbitration** Act ("FAA") explicitly permits the use of **arbitration** and authorizes individuals to contract for **arbitration**. 9 U.S.C. §§ 1-10 (2005). The FAA governs **arbitration** agreements and states that an **arbitration** clause "shall be valid, irrevocable, and enforceable save upon such grounds as exist in law or equity for the revocation of any contract."9 U.S.C. § 2 (2005). Courts must give due respect to this federal policy of favoring **arbitration** and **resolve** ambiguities regarding the scope of an **arbitration** clause in favor of **arbitration**. *Bauer v. Morton's of Chicago,* 2000 U.S. Dist. LEXIS 1453, at \*4 (N.D.Ill. Feb. 9, 2000).

Agreements to **arbitrate** pursuant to **RESOLVE** generally have been enforced by federal courts. *See Campbell v. Sterling Jewelers, Inc.,* 2005 LEXIS 7675 (N.D. Ill. April 15, 2005); *Gonzalez v. GE Group Administrators, Inc.,* 321 F.Supp.2d 165 (D.Mass.2004); *Fisher v. GE Medical Systems,* 276 F.Supp.2d 891 (M.D.Tenn.2003). By signing the Union Fidelity "Conditions of Employment," plaintiff Washek agreed to submit her employment-related disputes to **arbitration**, as governed by the **RESOLVE** program, rather than filing a lawsuit. *See* Union Fidelity Conditions of Employment on the **RESOLVE** Program. Washek claims, however, that her consent to follow the terms of **RESOLVE** is unenforceable. Specifically, Washek contends that **RESOLVE** hinders her right to be represented by an attorney, limits the relief she may receive as a plaintiff by preventing her from recovering attorneys' fees and costs should she prevail at **arbitration**, and thwarts her objective of improving the employment policies and practices of Union Fidelity.

As defendant properly points out, however, **RESOLVE** does not substantially limit the plaintiff's right to be represented by an attorney. The

**RESOLVE** program allows the parties involved in **arbitration** to consult attorneys throughout the **arbitration** process. *See***RESOLVE** Handbook, at 19. It only bars attorneys from attending the meetings during the first two levels of the **arbitration** procedure. *See***RESOLVE** Guidelines, at 15, 17-18. This limitation applies to all parties involved and thus does not put Union Fidelity at an advantage over the plaintiff. *See***RESOLVE** Guidelines, at 15, 17-18.

**RESOLVE** also does not preclude the plaintiff from recovering attorneys' fees and costs should the plaintiff prevail at **arbitration**. **RESOLVE** explicitly allows that Union Fidelity may be required to pay the plaintiff's attorneys' fees and costs, as long as the applicable law permits. *See***RESOLVE** Handbook, at 15. In other cases, federal courts have upheld **arbitration** agreements with similar provisions. *DeGroff v. MascoTech Forming Techs.,* 179 F.Supp.2d 896, 910 (N.D.Ind.2001).

Plaintiff Washek also claims that the RESOLVE process hinders her goal of improving the employment policies and practices of Union Fidelity. However, the RESOLVE Guidelines clearly contradict this allegation, stating:

**\*3** The arbitrator may in connection with the covered claim of a specific employee decide whether the Company has complied with its policies, procedures, rules or practices, and/or whether such policies, procedures, rules and/or practices are in violation of applicable state or federal law, and in the case of a finding of violation, the arbitrator may, solely with respect to the claimant, order the Company to change the application of its policies, procedures, rules or practices.

*See* RESOLVE Guidelines, at 30.

Other district courts have held that such a provision allowed employee-plaintiffs adequate relief. *See Amaram v. GE Financial Assurance Holdings, Inc.,* 2002 U.S. Dist. LEXIS 27921, at \*6-7 (E.D.Va.2004); *Gonzalez,* 321 F.Supp.2d 165, 170 (D.Mass.2004). Thus, because the RESOLVE program does not improperly limit the plaintiff's relief, the program is enforceable.

II. Union Fidelity Did Not Waive its Right to Compel Arbitration

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 3
Not Reported in F.Supp.2d, 2005 WL 1563225 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1563225 (N.D.Ill.))**

Washek further claims that, even if the **RESOLVEarbitration** program is enforceable, Union Fidelity waived its right to compel **arbitration** by not raising the **RESOLVE** process until Washek had filed her complaint. Washek contends that Union Fidelity should have suggested using the **arbitration** procedure when she first complained of discrimination to its human resources department and when she filed her charges with the EEOC.

There is no clear-cut method to determine what constitutes a waiver of the right to **arbitrate**. *St. Mary's Med. Ctr. Of Evansville v. Disco Aluminum Products Co., 969 F.2d 585, 587-8* (7th Cir.1992)."The essential question is whether, based on the circumstances, the alleged defaulting party has acted inconsistently with the right to **arbitrate**."*Id. at 588.*Courts in this district have found that participation in EEOC procedures is not inconsistent with the right to **arbitrate**. *Medina v. Hispanic Broadcasting Corp.,* 2002 U.S. Dist. LEXIS 4059, at *11. The fact that Union Fidelity cooperated with plaintiff Washek's EEOC actions is not inconsistent with the right to **arbitrate**, nor is it an indication that Union Fidelity waived its right to compel **arbitration**. Once plaintiff filed her complaint in this court, Union Fidelity did not delay in raising the **RESOLVE** agreement to **arbitrate**. Thus, Union Fidelity did not waive its right to assert the use of **RESOLVEarbitration**.

III. Dismissal is the Proper Action to Take Regarding Plaintiff's Complaint

Finally, plaintiff Washek requests that the court stay her case and compel **arbitration** rather than dismiss the entire case. However, other courts have opted to dismiss, rather than stay, an action when the claims are subject to **arbitration**. *Medina v. Hispanic Broadcasting Corp.,* 2002 U.S. Dist. LEXIS 4059, at *12 (N.D.Ill. March 12, 2002). Since all of plaintiff Washek's claims are covered by the **RESOLVE** terms, and thus subject to **arbitration**, it is proper for the court to dismiss the case.

The **RESOLVEarbitration** of Washek's claims should proceed according to the representations made by Union Fidelity. The first three levels of the process should be considered to have been fulfilled by the EEOC proceedings, and Washek's claims must now be considered at level four **arbitration**. If defendant Union Fidelity fails to abide by its representations to allow Washek's claims to enter **RESOLVE** at level four, plaintiff Washek may seek recourse with this court.

*CONCLUSION*

*4 For the foregoing reasons, we grant the motion of defendant Union Fidelity to dismiss the plaintiff Washek's complaint for lack of subject matter jurisdiction.

It is so ordered.

N.D.Ill.,2005.
Washek v. Union Fidelity Life Ins. Co.
Not Reported in F.Supp.2d, 2005 WL 1563225 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.